**FITAPELLI & SCHAFFER, LLP**
Joseph A. Fitapelli
Brian S. Schaffer
Eric J. Gitig
475 Park Avenue South, 12th Floor
New York, New York 10016
Telephone:  (212) 300-0375

**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Jennifer L. Liu
Amber C. Trzinski
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000

**LEE LITIGATION GROUP, PLLC**
C.K. Lee
Anne Seelig
30 East 39th Street, Second Floor
New York, NY 10016
Telephone: (212) 465-1180

**SHAVITZ LAW GROUP, P.A.**
Gregg I. Shavitz (admitted *pro hac vice*)
Susan H. Stern (admitted *pro hac vice*)
1515 S. Federal Hwy, Suite 404
Boca Raton, FL 33432
Telephone:  (561) 447-8888

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

SHARON YUZARY, JON RACOW, HENRY HU, MINA DIMETRY, TERON HAUGHTON, DANIEL HAUER, BILLY TZEWA MUI, CALVIN MAZLUMYAN, and KIM LEBLEU, on behalf of themselves and all others similarly situated,

                Plaintiffs,

    -against-

HSBC BANK USA, N.A.; HSBC USA, INC.; and HSBC NORTH AMERICA HOLDINGS, INC.

                Defendants.

No. 12 Civ. 3693 (PGG)

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
## MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT,
## CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS,
## APPOINTMENT OF PLAINTIFFS' COUNSEL AS CLASS COUNSEL, AND
## APPROVAL OF PLAINTIFFS' PROPOSED NOTICES OF SETTLEMENT

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................ 1

I.   FACTUAL AND PROCEDURAL BACKGROUND ......................................... 1

    A.   Nature of Plaintiffs' Claims ................................................................ 1

    B.   The HSBC Overtime Litigation .......................................................... 2

    C.   Investigation and Discovery ............................................................... 3

    D.   Settlement Negotiations ...................................................................... 4

II.  SUMMARY OF THE SETTLEMENT TERMS .............................................. 5

    A.   The Settlement Fund .......................................................................... 5

    B.   Eligible Employees ............................................................................ 5

    C.   Releases ............................................................................................. 6

    D.   Allocation Formula ............................................................................ 6

    E.   Attorneys' Fees, Litigation Costs, and Service Awards ...................... 8

    F.   Settlement Claims Administrator ........................................................ 9

III. CLASS ACTION SETTLEMENT PROCEDURE ........................................... 9

IV.  PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE .............. 10

    A.   The Settlement is Fair, Reasonable, and Adequate .............................. 12

        1.   Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1) .................................................. 13

        2.   The Reaction of the Class Has Been Positive (*Grinnell* Factor 2) ........... 14

        3.   Discovery Has Advanced Far Enough to Allow the Parties To Resolve the Case Responsibly (*Grinnell* Factor 3) ................................ 14

        4.   Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5) ............................................................ 16

        5.   Maintaining the Class Through Trial Would Not Be Simple (*Grinnell* Factor 6) .................................................. 17

6.     Defendants' Ability to Withstand a Greater Judgment is Not Determinative (*Grinnell* Factor 7). .......................................................... 18

7.     The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)..................................................................... 18

V.     CONDITIONAL CERTIFICATION OF THE RULE 23 CLASS IS APPROPRIATE... 21

    A.     Numerosity.......................................................................................... 22

    B.     Commonality....................................................................................... 22

    C.     Typicality ............................................................................................ 23

    D.     Adequacy of the Named Plaintiffs..................................................... 24

    E.     Certification is Proper Under Rule 23(b)(3) ...................................... 25

        1.     Common Questions Predominate ............................................ 26

        2.     A Class Action is a Superior Mechanism ............................... 27

VI.     PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL .......... 28

VII.     THE NOTICE PLAN AND DISTRIBUTION PROCESS ARE APPROPRIATE.......... 29

VIII.     PLAINTIFFS WILL SEEK APPROVAL OF THE FLSA SETTLEMENT.................... 30

CONCLUSION..................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aber-Shukofsky v. JPMorgan Chase & Co.*,
   755 F. Supp. 2d 441 (S.D.N.Y. 2010)..................................................................................18

*Amaya v. 166 Park*,
   No. 11 Civ. 1081 (E.D.N.Y.) ..............................................................................................25

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)......................................................................................................26, 27

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000)..............................................................................13, 14

*Blackmon v. Brookshire Grocery Co.*,
   835 F.2d 1135 (5th Cir. 1988) ............................................................................................20

*Brinker Restaurant Corp. v. Superior Court*,
   139 Cal. Rptr. 3d 315 (Cal. 2012)........................................................................................17

*Cagan v. Anchor Sav. Bank FSB*,
   No. 88 Civ. 3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990)..............................................19

*Capsolas v. Pasta Res. Inc.*,
   No. 10 Civ. 5595, 2012 WL 1656920 (S.D.N.Y. May 9, 2012)............................................25

*Castagna v. Madison Square Garden, L.P.*,
   No. 09 Civ. 10211, 2011 WL 2208614 (S.D.N.Y. June 7, 2011)..........................................11

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974).....................................................................................12, 13, 19

*Clark v. Ecolab Inc.*,
   Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2009 WL 6615729 (S.D.N.Y. Nov.
   27, 2009) ...............................................................................................................11, 12, 25

*Clark v. Ecolab Inc.*,
   Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198 (S.D.N.Y. May
   11, 2010) .........................................................................................................................6, 23

*Clements v. Serco, Inc.*,
   530 F.3d 1224 (10th Cir. 2008) ...........................................................................................20

*Consol. Rail Corp. v. Town of Hyde Park*,
   47 F.3d 473 (2d Cir. 1995)...................................................................................................22

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
    502 F.3d 91 (2d Cir. 2007).................................................................................26

*County of Suffolk v. Long Island Lighting Co.*,
    710 F. Supp. 1422 (E.D.N.Y. 1989), 907 F.2d 1295 (2d Cir. 1990) ......................21

*Damassia v. Duane Reade, Inc.*,
    250 F.R.D. 152 (S.D.N.Y. 2008) (Lynch, J.).................................................25, 28

*Desmond v. PNGI Charles Town Gaming, LLC*,
    630 F.3d 351 (4th Cir. 2011) .............................................................................20

*Diaz v. E. Locating Serv., Inc.*,
    No. 10 Civ. 4082, 2010 WL 5507912 (S.D.N.Y. Nov. 29, 2010) ..............11, 15, 16

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
    Nos. 05 Civ. 10240, 05 Civ. 10287, 05 Civ. 10515, 05 Civ. 10610, 06 Civ. 304, 06
    Civ. 347, 06 Civ. 1684, 2007 WL 2230177 (S.D.N.Y. July 27, 2007).....................12

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005).................................................................. passim

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995).................................................................................21

*Gen. Tel. Co. of the Sw. v. Falcon*,
    457 U.S. 147 (1982)..........................................................................................22

*Girault v. Supersol 661 Amsterdam, LLC*,
    No. 11 Civ. 6835, 2012 WL 2458172 (S.D.N.Y. June 28, 2012)............................25

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000) ("*Grinnell*")........................................................12, 16

*Green v. Wolf Corp.*,
    406 F.2d 291 (2d Cir. 1968)..............................................................................27

*Hernandez v. Merrill Lynch & Co., Inc.*,
    No. 11 Civ. 8472, 2012 WL 5862749 (S.D.N.Y. Nov. 15, 2012) ................... passim

*In re Interpublic Sec. Litig.*,
    Nos. 02 Civ. 6527, 03 Civ. 1194, 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004)...................11

*In re Ira Haupt & Co.*,
    304 F. Supp. 917 (S.D.N.Y. 1969)......................................................................16

*Johnson v. Brennan*,
    No. 10 Civ. 4712, 2011 WL 1872405 (May 17, 2011)....................................25, 29

*Johnson v. Brennan*,
No. 10 Civ. 4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ................................8, 9, 15

*Kamean v. Local 363, Int'l Bhd. of Teamsters*,
109 F.R.D. 391 (S.D.N.Y. 1986) ........................................................................................23

*Lovaglio v. W&E Hospitality Inc.*,
No. 10 Civ. 7351, 2012 WL 2775019 (S.D.N.Y. July 6, 2012) .................................25

*Marisol A. v. Giuliani*,
126 F.3d 372 (2d Cir. 1997).............................................................................................23

*Marlo v. United Parcel Serv., Inc.*,
639 F.3d 942 (9th Cir. 2011) ...........................................................................................17

*Marriott v. Cnty. of Montgomery*,
227 F.R.D. 159 (N.D.N.Y. 2005).....................................................................................26

*Matheson v. T-Bone Rest., LLC*,
No. 09 Civ. 4214, 2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011)...........................15

*Matheson v. T-Bone Restaurant, LLC*,
No. 09 Civ. 4214, 2011 WL 6402303 (S.D.N.Y. Sept. 13, 2011)...........................25

*Maywalt v. Parker & Parsley Petroleum Co.*,
67 F.3d 1072 (2d Cir. 1995)..............................................................................................11

*McBean v. City of New York*,
228 F.R.D. 487 (S.D.N.Y. 2005) ......................................................................................26

*McMahon v. Olivier Cheng Catering and Events, LLC*,
No. 08 Civ. 8713, 2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) .................................... passim

*In re Michael Milken & Assocs. Sec. Litig.*,
150 F.R.D. 57 (S.D.N.Y. 1993) ........................................................................................29

*Morris v. Affinity Health Plan, Inc.*,
859 F. Supp. 2d 611 (S.D.N.Y. 2012)............................................................................. passim

*Myers v Hertz Corp.*,
624 F.3d 537 (2d Cir. 2010).............................................................................................17

*Noble v. 93 Univ. Place Corp.*,
224 F.R.D. 330 (S.D.N.Y. 2004) ......................................................................................26

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982) ...........................................................................................19

*In re Painewebber Ltd. P'ships Litig.,*
  171 F.R.D. 104 (S.D.N.Y. 1997) ....................................................................16

*Palacio v. E\*TRADE Fin. Corp.,*
  No. 10 Civ. 4030, 2012 WL 1058409 (S.D.N.Y. Mar. 12, 2012) ....................................12, 25

*Palacio v. E\*TRADE Fin. Corp.,*
  No. 10 Civ. 4030, 2012 WL 2384419 (S.D.N.Y. June 22, 2012)............................................6

*Perkins v. S. New England Tel., Co.,*
  No. 3:07 Civ. 967, 2011 WL 4460248 (D. Conn. Sept. 27, 2011) ........................................20

*Port Auth. Police Benevolent Ass'n v. Port Auth. of N.Y. & N.J.,*
  698 F.2d 150 (2d Cir. 1983)............................................................................22

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.,*
  237 F.R.D. 26 (E.D.N.Y. 2006) .......................................................................22

*Robidoux v. Celani,*
  987 F.2d 931 (2d Cir. 1993)...........................................................................24

*Sewell v. Bovis Lend Lease, Inc.,*
  No. 09 Civ. 6548, 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012)......................................6, 9

*Torres v. Gristede's Corp.,*
  No. 04 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006) ........................................27

*Toure v. Cent. Parking Sys.,*
  No. 05 Civ. 5237, 2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007) ........................................24

*In re Traffic Exec. Ass'n E. R.Rs.,*
  627 F.2d 631 (2d Cir. 1980)...........................................................................12

*Trinidad v. Breakaway Courier Sys., Inc.,*
  No. 05 Civ. 4116, 2007 WL 103073 (S.D.N.Y. Jan. 12, 2007)............................................24

*Urnikis-Negro v. Am. Family Prop. Servs.,*
  616 F.3d 665 (7th Cir. 2010) .........................................................................20

*Valerio v. Putnam Assocs. Inc.,*
  173 F.3d 35 (1st Cir. 1999).............................................................................20

*Velez v. Majik Cleaning Serv., Inc.,*
  No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007)............................................16

*In re Visa Check/MasterMoney Antitrust Litig,*
  280 F.3d 124 (2d Cir. 2001)............................................................................27

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005).....................................................................................10

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004)...............................................................................10, 14

*Zivali v. AT&T Mobility, LLC*,
    784 F. Supp. 2d 456 (S.D.N.Y. 2011)...................................................................18

**STATUTES**

29 U.S.C. § 216(b) .................................................................................................2, 18

NYLL § 198(1-a) ..........................................................................................................7

**RULES**

Fed. R. Civ. P. 23 ............................................................................................... passim

Fed. R. Civ. P. 54(d) ....................................................................................................8

**OTHER AUTHORITIES**

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*"), §§ 11.22
    (4th ed. 2002) ................................................................................................. passim

## INTRODUCTION

Subject to Court approval, Plaintiffs and Defendants HSBC Bank USA, N.A.; HSBC USA, Inc.; and HSBC North America Holdings, Inc. ("HSBC" or "Defendants") (together with Plaintiffs, "Parties") have settled this wage and hour class and collective action for $15,625,000.

The proposed settlement satisfies all of the criteria for preliminary approval.  Plaintiffs respectfully request that the Court (1) grant preliminary approval of the Joint Stipulation of Settlement and Release ("Settlement Agreement"), Decl. of Justin M. Swartz ("Swartz Decl.") Ex. A; (2) certify the proposed classes for settlement purposes; (3) appoint Outten & Golden LLP ("O&G"), Fitapelli & Schaffer, LLP ("F&S"), the Lee Litigation Group, PLLC ("Lee Litigation Group"), and the Shavitz Law Group, P.A. ("SLG") (collectively, "Plaintiffs' Counsel") as Class Counsel; and (4) approve the proposed Notice of Class Action Settlement ("Rule 23 Notice"), Swartz Decl. Ex. B, and Notice of Collective Action Settlement ("FLSA Notice"), Swartz Decl. Ex. C (collectively, "Notices").  Defendants do not oppose this motion.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.    Nature of Plaintiffs' Claims

Plaintiffs are current and former employees of HSBC who have worked as Personal Bankers, Branch Relationship Bankers, Premier Relationship Managers, Small Business Specialists, and Business Banking Specialists (the "Covered Positions") at HSBC branches nationwide.  Plaintiffs allege that HSBC violated the Fair Labor Standards Act ("FLSA") and the wage and hour laws of New York, California, Connecticut, and New Jersey by improperly classifying them as exempt from federal and state overtime requirements and failing to pay them

---

[1]     Plaintiffs' Counsel are aware of the Court's order in *McMahon v. Olivier Cheng Catering and Events, LLC*, No. 08 Civ. 8713, Docket No. 18 (S.D.N.Y. July 8, 2009), Swartz Decl. Ex. D, in which the Court requested further information related to a motion for preliminary settlement approval.  Plaintiffs' Counsel has attempted to provide this information in the first instance, throughout this brief.

and other employees in Covered Positions overtime wages.  Swartz Decl. ¶ 13.

B.     **The HSBC Overtime Litigation**

On February 7, 2012, Plaintiff Mui filed a lawsuit in the United States District Court for the Southern District of New York, *Mui v. HSBC Bank USA, N.A., et al.*, No. 12 Civ. 961 (BSJ) ("*Mui*"), bringing FLSA collective action claims and Federal Rule of Civil Procedure 23 ("Rule 23") class claims under the New York Labor Law ("NYLL").  Swartz Decl. ¶ 14.  On March 26, 2012, Mui filed an amended complaint.  *Id.*  On April 20, 2012, the defendants in *Mui* answered. *Id.*  On April 27, 2012, Mui filed a Motion for Conditional Collective Certification and for Court Facilitation of Notice Pursuant to 29 U.S.C. § 216(b).  *Id.*

On May 9, 2012, Plaintiff Yuzary filed a class and collective action overtime lawsuit in the United States District Court for the Southern District of New York, *Yuzary v. HSBC Bank USA, N.A., et al.*, No. 12 Civ. 3693 (PGG) ("*Yuzary*").  Swartz Decl. ¶ 15.  On June 8, 2012, Plaintiff Hauer filed a collective action overtime lawsuit in the United States District Court for the Southern District of Florida, *Hauer v. HSBC Bank USA, N.A., et al.*, No. 12 Civ. 61155 (KMW) ("*Hauer*").  *Id.* ¶ 16.  On June 20, 2012, Yuzary filed an amended class and collective action complaint in *Yuzary*, adding Plaintiffs Racow, Hu, Dimetry, and Haughton as plaintiffs and Rule 23 class claims under New Jersey and Connecticut law.  *Id.* ¶ 17.

In June 2012, Plaintiffs in *Mui*, *Yuzary*, and *Hauer* agreed to consolidate their claims in order to pool their resources and preserve judicial resources.  *Id.* ¶ 18.  This required several procedural steps before three different Judges, as well as Defendants' cooperation.  *Id.*  The parties in *Mui* entered into a stipulation dismissing *Mui* without prejudice, which was so ordered on July 27, 2012.  *Id.*  The parties in *Hauer* entered into a similar stipulation, which was so ordered on July 23, 2012.  *Id.*  On August 15, 2012, Plaintiffs filed a second amended complaint

2

in *Yuzary*, adding Mui and Hauer as plaintiffs. *Id.* ¶ 19. On October 17, 2012, Plaintiffs filed a

third amended complaint in *Yuzary*, adding Mazlumyan and LeBleu as plaintiffs and Rule 23

class claims under California law. *Id.* ¶ 20.

### C.  Investigation and Discovery

Before initiating their respective actions, Plaintiffs' Counsel in each case conducted

thorough investigations. Swartz Decl. ¶ 21; Decl. of C.K. Lee ("Lee Decl.") ¶ 7; Decl. of Gregg

I. Shavitz ("Shavitz Decl.") ¶ 8; Decl. of Brian S. Schaffer ("Schaffer Decl.") ¶ 7. This included

investigation and legal research on the underlying merits of the class claims, the likelihood of

obtaining liquidated damages and an extended FLSA statute of limitations, the proper measure of

damages, and the likelihood of class certification. Swartz Decl. ¶ 22; Lee Decl. ¶ 8; Shavitz

Decl. ¶ 9; Schaffer Decl. ¶ 8. They also researched Defendants' likely affirmative defenses: the

FLSA's administrative, outside sales, and highly-paid exemptions, and their counterparts under

state law. Swartz Decl. ¶ 23; Lee Decl. ¶ 8; Shavitz Decl. ¶ 9; Schaffer Decl. ¶ 8.

After filing, Plaintiffs' Counsel conducted in-depth interviews with approximately 50

Class Members who worked in all of the Covered Positions to determine hours worked, wages

paid, the nature of their duties, and other relevant information. Swartz Decl. ¶ 24; Lee Decl. ¶ 9;

Shavitz Decl. ¶ 10; Schaffer Decl. ¶ 9. Plaintiffs' Counsel also obtained and reviewed hundreds

of pages of documents from their clients including pay stubs, compensation reports,

compensation plans, offer letters, performance reviews, and job descriptions. Swartz Decl. ¶ 25;

Lee Decl. ¶ 10; Shavitz Decl. ¶ 11; Schaffer Decl. ¶ 10. Plaintiffs' Counsel reviewed HSBC's

SEC filings and other public documents to learn about HSBC's corporate structure and facilities,

and obtained publicly-available job postings to determine job duties and to support class

certification. *Id.* They also drafted a motion for conditional certification under the FLSA and

obtained 14 supporting declarations.  Swartz Decl. ¶ 26; Lee Decl. ¶ 11; Shavitz Decl. ¶ 12;

Schaffer Decl. ¶ 11.

Plaintiffs also obtained documents and data from Defendants that helped Plaintiffs

evaluate the risks of the case and calculate damages.  Defendants produced comprehensive data

for over 2,000 Class Members, showing relevant job titles, average pay rates, incentive pay,

weeks worked, and locations.  Swartz Decl. ¶ 27; Lee Decl. ¶ 12; Shavitz Decl. ¶ 13; Schaffer

Decl. ¶ 12.  Defendants also produced documents showing branch hours by location and several

hundred pages of Plaintiffs' emails.  *Id.*  Plaintiffs also conducted a half-day interview with a

high-level corporate representative as part of the informal discovery process, which included

questions regarding the job titles at issue, the job duties of each position, compensation ranges,

HSBC's compensation policies, and hours worked.  Swartz Decl. ¶ 28; Lee Decl. ¶ 13; Shavitz

Decl. ¶ 14; Schaffer Decl. ¶ 13.

### D. Settlement Negotiations

After consolidation, the Parties agreed to attempt to resolve the consolidated actions at

mediation with Michael Young, an experienced JAMS employment mediator.  Swartz Decl. ¶

29.  Plaintiffs' Counsel did significant work to prepare for the mediation.  *Id.* ¶ 30.  They held

several pre-mediation conference calls with the mediator, and hired a labor economist, Dr. David

Crawford of Econsult in Philadelphia, to process data and create damages models.  *Id.*  Dr.

Crawford and his staff also participated in the mediation by telephone, answering questions and

providing analysis. *Id.*  Plaintiffs' Counsel also submitted a detailed mediation statement, which

explained the claims, noted Defendants' vulnerabilities, acknowledged risk, and explained the

damage calculations. *Id.*

On August 22, 2012, the Parties attended mediation at JAMS in New York, which began

at 9:30 a.m. and did not end until after 3:00 a.m. the following day.  *Id.* ¶ 31.  The Parties made

progress toward a settlement and, during the next three months, exchanged more information and

ultimately reached an agreement on all terms, which they memorialized in the Settlement

Agreement.  *Id.*

## II.   SUMMARY OF THE SETTLEMENT TERMS

### A.   The Settlement Fund

The Settlement Agreement creates a common fund of $15,625,000 (the "Fund"), Ex. A

(Settlement Agreement) § 3.1(A), which covers Class Members' awards, service payments,

attorneys' fees and costs, and the settlement administrator's fees.  Ex. A (Settlement Agreement)

§ 3.1(A).  Defendants will pay employer payroll taxes.  Ex. A (Settlement Agreement) § 3.5(C).

### B.   Eligible Employees

Two groups of HSBC employees will receive payments from the Fund.  First, the "Rule

23 Classes" consists of the following four sub-classes of individuals ("Rule 23 Class Members"):

1.   New York Sub-Class:  The "New York Sub-Class" consists of all individuals who were
     employed in Covered Positions by Defendants in New York from February 7, 2006
     through November 15, 2012;

2.   California Sub-Class:  The "California Sub-Class" consists of all individuals who were
     employed in Covered Positions by Defendants in California from May 9, 2008 through
     November 15, 2012;

3.   Connecticut Sub-Class:  The "Connecticut Sub-Class" consists of all individuals who
     were employed in Covered Positions by Defendants in Connecticut from May 9, 2010
     through November 15, 2012; and

4.   New Jersey Sub-Class:  The "New Jersey Sub-Class" consists of all individuals who were
     employed in Covered Positions by Defendants in New Jersey from May 9, 2010 through
     November 15, 2012.  Ex. A (Settlement Agreement) § 1.28.

Second, the "FLSA Class Members" consist of all individuals who were employed in

Covered Positions by Defendants from May 9, 2009 through November 15, 2012 (together with

Rule 23 Class Members, "Class Members").  Ex. A (Settlement Agreement) § 1.14.

C.     **Releases**

All Rule 23 Class Members who do not timely opt out of the settlement will release their state wage and hour law claims.  Ex. A (Settlement Agreement) § 4.1(B).  Rule 23 Class Members and FLSA Class Members who timely sign and negotiate their settlement checks ("Opt-in Plaintiffs") will release their federal, state, and local wage and hour claims by signing and negotiating their settlement checks.  Ex. A (Settlement Agreement) § 4.1(A).

D.     **Allocation Formula**

Class Members will be paid pursuant to an allocation formula based on the number of weeks that they were employed during the relevant limitations periods, the state in which they worked, and whether they opted into the lawsuit prior to November 26, 2012, the execution date of the Settlement Agreement.  Ex. A (Settlement Agreement) § 3.4(B).  Courts have approved similar allocation formulas in other wage and hour class action settlements that included nationwide FLSA claims and multiple state law class claims.[2]

The following is a brief explanation of the proposed allocation formula: Each New York Sub-Class Member will be assigned four points for each week worked in New York from February 7, 2006 through April 8, 2011, and five points for each week worked in New York from April 9, 2011 through November 15, 2012.  Ex. A (Settlement Agreement) § 3.4(B)(1). The additional points allocated to New York Sub-Class Members, relative to Class Members who worked in other states, reflect the fact that New York Sub-Class Members are entitled to

---

[2]     *See, e.g.*, *Palacio v. E*TRADE Fin. Corp.*, No. 10 Civ. 4030, 2012 WL 2384419, at *2-4 (S.D.N.Y. June 22, 2012) (granting final approval to settlement including nationwide FLSA claims and California and New York state law Rule 23 claims); *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *6-9 (S.D.N.Y. Apr. 16, 2012) (approving settlement including nationwide FLSA claims and New York and New Jersey state law Rule 23 claims); *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198, at *4-7 (S.D.N.Y. May 11, 2010) (approving settlement of nationwide FLSA claims and Rule 23 claims in four states).

6

liquidated damages under the NYLL in addition to liquidated damages under the FLSA.[3]

Each California Sub-Class Member will be assigned six points for each week worked in California from May 9, 2008 through November 15, 2012.  Ex. A (Settlement Agreement) § 3.4(B)(2).  The additional three points reflect the value of additional claims and monetary remedies available under California law not available under other states' laws, as well as the greater likelihood of prevailing on the merits under California law, because of the requirement under California law that exempt employees perform exempt duties more than 50% of the time.

Each Connecticut and New Jersey Sub-Class Member will be assigned three points for each week worked from May 9, 2010 through November 15, 2012.  Ex. A (Settlement Agreement) § 3.4(B)(3) & (4).  Each FLSA Class Member will be assigned three points for each week worked in any state other than New York, California, Connecticut, and New Jersey from May 9, 2009 through November 15, 2012, and in Connecticut and New Jersey from May 9, 2009 to May 8, 2010.  Ex. A (Settlement Agreement) § 3.4(B)(5).

Each FLSA Class Member who opted into the lawsuit on or before November 26, 2012, the execution date of the Settlement Agreement, will be assigned one additional point for each week worked between the date three years before the date on which they first opted into *Yuzary*, *Mui*, or *Hauer*, and November 15, 2012.  Ex. A (Settlement Agreement) § 3.4(B)(6).  The additional point reflects the relatively greater value of their claims had the litigation continued and conditional or class certification had been denied.[4]

---

[3]     New York Sub-Class Members are entitled to 25% additional liquidated damages prior to April 9, 2011 and 100% liquidated damages on or after April 9, 2011.  NYLL § 198(1-a).

[4]     The Parties considered allocating more points to Premier Relationship Managers than to employees in the other Covered Positions to reflect the fact that Premier Relationship Managers earned significantly higher salaries and likely would have had greater damages than the other job titles.  However, this was nearly if not entirely offset by the fact that Plaintiffs also faced greater risk proving that Premier Relationship Managers were not exempt administrators than with the

The Claims Administrator will divide the total number of points for each Class Member by the total number of points for all Class Members to determine each Class Member's portion of the Fund.  Ex. A (Settlement Agreement) § 3.4(B)(7).  The Claims Administrator will then multiply each Class Member's portion of the Fund by the Fund to determine the amount to be paid to each Class Member.  Ex. A (Settlement Agreement) § 3.4(B)(8).

If settlement checks remain uncashed 180 days after Final Approval, the funds attributable to Rule 23 claims will be redistributed among the Rule 23 Class Members who have timely cashed their checks or, if such distribution is not sensible, distributed to charity under the *cy pres* doctrine.  Ex. A (Settlement Agreement) § 3.1(E)(1).  Unclaimed funds attributable to FLSA claims will revert to Defendants.  Ex. A (Settlement Agreement) § 3.1(E)(2).

### E. Attorneys' Fees, Litigation Costs, and Service Awards

Plaintiffs' Counsel will apply for up to one-third of the Fund as attorneys' fees.[5] Plaintiffs' Counsel will also seek reimbursement of their reasonable litigation costs and expenses from the Fund, in an amount not to exceed $50,000.  Ex. A (Settlement Agreement) § 3.2(A). The Court need not decide attorneys' fees and costs now.  Pursuant to Fed. R. Civ. P. 23(h) and 54(d)(2), Plaintiffs' Counsel will move for attorneys' fees and costs along with their Motion for Final Approval of the Settlement.

---

other Covered Positions, because Plaintiffs anticipated that Defendants would argue that the Premier Relationship Manager position was more senior and involved greater discretion and independent judgment than the other Covered Positions.  To reflect this offset and to avoid unnecessary complexity in the allocation formula, the Parties ultimately agreed to allocate the same number of points for each of the Covered Positions.

[5]     This is a typical fee award in the Second Circuit.  *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 623 (S.D.N.Y. 2012) ("Class and Plaintiff's Counsel's request for one-third of the Fund is reasonable and consistent with the norms of class litigation in this circuit.") (internal quotation marks and citation omitted); *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 4357376, at *19 (S.D.N.Y. Sept. 16, 2011) ("A fee of 33% of the Settlement Fund is reasonable and consistent with the norms of class litigation in this circuit.") (internal quotation marks and citation omitted).

Plaintiffs will apply for service awards of $10,000 to each of the nine Named Plaintiffs in recognition of the services they rendered on behalf of the class ("Service Awards").  Ex. A (Settlement Agreement) § 3.3(A).[6]  The Court need not rule on the proposed Service Awards now.  Plaintiffs will move for Court approval of the Service Awards simultaneously with Plaintiffs' Motion for Final Approval of the Settlement.

###### F.      Settlement Claims Administrator

After soliciting competitive bids, Plaintiffs have selected Kurtzman Carson Consultants to serve as the Settlement Claims Administrator ("Claims Administrator"), and Defendants have approved the selection.  Swartz Decl. ¶ 38.  The Claims Administrator's fees will be paid from the Fund.  Ex. A (Settlement Agreement) § 1.30.  The Claims Administrator estimates the cost of administration to be $20,000.  Swartz Decl. ¶ 39.

### III.    CLASS ACTION SETTLEMENT PROCEDURE

The well-defined class action settlement procedure includes three distinct steps:

1.      Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval;

2.      Dissemination of mailed and/or published notice of settlement to all affected class members; and

3.      A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*"), §§ 11.22, *et seq.* (4th ed. 2002).  Plaintiffs request that the Court take the first step – granting preliminary approval of the Settlement Agreement, conditionally certifying the

---

[6]      These are typical service awards in the Second Circuit.  *See, e.g.*, *Sewell*, 2012 WL 1320124, at *14-15 (granting service awards of $15,000 and $10,000 to class representatives in wage and hour class action settlement, and listing supporting cases); *Johnson*, 2011 WL 4357376, at *21 (granting service awards of $10,000 to class representatives in wage and hour settlement).

settlement class, approving Plaintiffs' Proposed Notices, and authorizing Plaintiffs to send them.

The Parties respectfully submit the following proposed schedule for final resolution of this matter for the Court's consideration and approval:

1.   The Notices will be mailed to Class Members within 20 days after the Court grants Plaintiffs' Motion for Preliminary Approval of Settlement.  Ex. A (Settlement Agreement) §§ 2.4(B)-(C).

2.   Rule 23 Class Members will have 30 days after the date the Settlement Notices are mailed to opt out of the settlement or object to it ("Notice Period").  Ex. A (Settlement Agreement) §§ 2.5(A), 2.6(A).

3.   A final fairness hearing will be held as soon as is convenient for the Court.

4.   Plaintiffs will file a Motion for Final Approval of Settlement no later than 15 days before the Fairness Hearing.  Ex. A (Settlement Agreement) § 2.7.

5.   After the final fairness hearing, if the Court grants Plaintiffs' Motion for Final Approval of the Settlement, the Court will issue a Final Order and Judgment.  If no party appeals the Court's Final Order and Judgment, the "Effective Date" of the settlement will be 5 days after the Court enters its Final Order and Judgment.  Ex. A (Settlement Agreement) § 1.10(A).

6.   If an individual or party appeals the Court's Final Order and Judgment, the "Effective Date" of Settlement shall be the day after all appeals are resolved in favor of final approval. Ex. A (Settlement Agreement) § 1.10(B).

7.   The Settlement Claims Administrator will disburse settlement checks to the class members, as well as Class Counsel's attorneys' fees and costs, 3 days after the time to appeal the Final Order and Judgment has expired.  Ex. A (Settlement Agreement) § 2.10(C).

## IV.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

The law favors compromise and settlement of class action suits.  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotation marks and citation omitted); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."); *see also Newberg* § 11.41 ("The compromise of complex litigation is encouraged

10

by the courts and favored by public policy.").

Courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere. *See Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472, 2012 WL 5862749, at *2 (S.D.N.Y. Nov. 15, 2012) (endorsing early settlement of wage and hour class action); *Castagna v. Madison Square Garden, L.P.*, No. 09 Civ. 10211, 2011 WL 2208614, at *10 (S.D.N.Y. June 7, 2011) (commending Plaintiffs' attorneys for negotiating early settlement); *Diaz v. E. Locating Serv., Inc.*, No. 10 Civ. 4082, 2010 WL 5507912 (S.D.N.Y. Nov. 29, 2010) (granting final approval of pre-suit class settlement in wage and hour case); *In re Interpublic Sec. Litig.*, Nos. 02 Civ. 6527, 03 Civ. 1194, 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004) (early settlements should be encouraged when warranted by the circumstances of the case). The parties here acted responsibly in reaching an early settlement in this case. *See Hernandez*, 2012 WL 5862749, at *2; *In re Interpublic Sec. Litig.*, 2004 WL 2397190, at *12.

The approval of a proposed class action settlement is a matter of discretion. *See Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995). "[C]ourts should give proper deference to the private consensual decision of the parties . . . [and] should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation . . . ." *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (internal quotation marks and citations omitted).

Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. *Clark*, 2009 WL 6615729, at *3 (citing *Newberg* § 11.25). To grant preliminary approval, the court need only find that there is "'probable cause' to submit the [settlement] to

11

class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n E. R.Rs.*, 627 F.2d 631, 634 (2d Cir. 1980); *Newberg* § 11.25 (noting that "[i]f the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members) (quoting *Manual for Complex Litigation* (Third) § 30.41).[7]

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, Nos. 05 Civ. 10240, 05 Civ. 10287, 05 Civ. 10515, 05 Civ. 10610, 06 Civ. 304, 06 Civ. 347, 06 Civ. 1684, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

Preliminary approval is the first step in the settlement process. It simply allows notice to issue and for Class Members to object or opt out of the settlement. After the notice period, the Court will be able to evaluate the settlement with the benefit of Class Members' input.

## A.    The Settlement is Fair, Reasonable, and Adequate.

In evaluating a class action settlement, courts in the Second Circuit generally consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ("*Grinnell*"). Although the Court's task on a motion for preliminary approval is merely to perform an "initial evaluation," *Newberg* § 11.25, to determine whether the settlement falls

---

[7]     Courts often grant preliminary settlement approval without requiring a hearing or a court appearance. *See, e.g., Hernandez*, 2012 WL 5862749, at *1 (granting preliminary approval based on plaintiffs' memorandum of law, attorney declaration, and exhibits); *Palacio v. E*TRADE Fin. Corp.*, No. 10 Civ. 4030, 2012 WL 1058409, at *1 (S.D.N.Y. Mar. 12, 2012) (same).

within the range of possible final approval, or "the range of reasonableness," *id*. at § 11.26, it is useful for the Court to consider the criteria on which it will ultimately judge the settlement.

The *Grinnell* factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial;  (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *Grinnell*, 495 F.2d at 463.  All of the *Grinnell* factors weigh in favor of approval of the Settlement Agreement, and certainly in favor of preliminary approval.

### 1.   Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1).

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class.  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).  This case is no exception, with more than 2,000 Class Members and claims under federal law and the laws of four states.

Further litigation here would cause additional expense and delay.  Extensive discovery would be required to establish liability and damages.  In addition, the Parties likely would have filed cross-motions for summary judgment on Defendants' exemption defenses.  If the Court denied the motions, a fact-intensive trial would be necessary to determine Plaintiffs' and Class

Members' exemption status. A trial would be lengthy and complex and would consume tremendous time and resources for the Parties and the Court. Any judgment would likely be appealed, further extending the litigation. The settlement, on the other hand, makes monetary relief available to Class Members in a prompt and efficient manner. Therefore, the first *Grinnell* factor weighs in favor of approval.

### 2. The Reaction of the Class Has Been Positive (*Grinnell* Factor 2).

Notice of the settlement and its details has not yet issued to the class. The Court should more fully analyze this factor after notice issues and Class Members are given the opportunity to opt out or object. At this early stage in the process, all nine Plaintiffs have expressed their approval of the settlement by signing the Settlement Agreement. Swartz Decl. ¶ 40. In addition, those opt-ins who have learned of the settlement have reacted very positively to the settlement. *Id.* Therefore, this factor weighs in favor of approval.

### 3. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3).

The Parties have completed enough informal discovery to recommend settlement. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin*, 391 F.3d at 537. "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [, but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian*, 80 F. Supp. 2d at 176 (internal quotation marks and citation omitted). The Parties' discovery here meets this standard. Plaintiffs' Counsel conducted in-depth interviews with approximately 50 Plaintiffs, opt-ins, and Class Members, reviewed numerous HSBC documents, conducted in-depth background research on HSBC, reviewed job postings for the Covered Positions, and

conducted a half-day interview with a high-level corporate representative, in order to assess the

strengths and weaknesses of the case.  Swartz Decl. ¶¶ 21-28; Lee Decl. ¶¶ 7-13; Shavitz Decl.

¶¶ 8-14; Schaffer Decl. ¶¶ 7-13.  Defendants produced data allowing Plaintiffs to calculate

damages, including data on each Class Member's job title, average rate of pay, incentive pay

earned, weeks worked, and locations of employment, as well as documents showing branch

hours by location and a sampling of Plaintiffs' emails.  Swartz Decl. ¶¶ 27.

The thoroughness of the informal discovery performed here favors preliminary approval.

*See Diaz*, 2010 WL 2945556, at *3 (finding, in case settled prior to filing of complaint, that

"Class Counsel did substantial work identifying, investigating, and settling Plaintiffs' and the

class members' claims."); *McMahon v. Olivier Cheng Catering and Events, LLC*, No. 08 Civ.

8713, 2010 WL 2399328, at *5 (S.D.N.Y. Mar. 3, 2010) (finding that the parties' "efficient,

informal exchange of information" was enough discovery to recommend settlement approval);

*Frank*, 228 F.R.D. at 185 (approving settlement of case "in the relatively early stages of

discovery" where parties had exchanged extensive information pertaining to the identities of

class members and defendant's time and pay practices and where counsels' negotiations, while

"cooperative," had "been in no way collusive").

Courts often grant final approval of class settlements in cases where the parties conducted

the same amount or even less discovery than the amount accomplished in this case.  *See, e.g.*,

*Matheson v. T-Bone Rest., LLC*, No. 09 Civ. 4214, 2011 WL 6268216, at *5 (S.D.N.Y. Dec. 13,

2011) (granting final approval where parties engaged in informal information exchange and no

depositions were taken); *Johnson v. Brennan*, 2011 WL 4357376, at *9-10 (finding that parties

were "well-equipped to evaluate the strengths and weaknesses of the case" and granting final

approval where parties engaged in informal discovery and no depositions were taken); *Diaz*,

2010 WL 5507912, at *5 (granting final approval of pre-suit class settlement, where informal

discovery consisted of pre-suit document exchange); *McMahon*, 2010 WL 2399328, at *5

(granting final approval where parties conducted informal discovery but no depositions); *Khait*,

2010 WL 2025106, at *6 (approving settlement where parties conducted informal discovery but

no depositions).  Here, in addition to the Parties' informal information exchange, Plaintiffs were

able to conduct an in-depth interview with a high-level corporate representative knowledgeable

about the positions, policies, and practices at issue, which assisted Plaintiffs' assessment of the

merits of the case and damages calculations.  This factor therefore favors preliminary approval.

### 4.     Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5).

Although Plaintiffs believe their case is strong, it is subject to considerable risk.

"Litigation inherently involves risks."  *In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104,

126 (S.D.N.Y. 1997).  Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the

merits because of the uncertainty of the outcome."  *In re Ira Haupt & Co.,* 304 F. Supp. 917, 934

(S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.,* No. 03 Civ. 8698, 2007 WL

7232783, at *6 (S.D.N.Y. June 25, 2007).

A trial on the merits would involve significant risks for Plaintiffs as to both liability and

damages.  Plaintiffs would have to overcome HSBC's defense that Plaintiffs and Class Members

were subject to the administrative, outside sales, and highly-paid exemptions to the FLSA, and

the corresponding exemptions under applicable state laws.  Defendants also asserted that

Plaintiffs could not prove several of their claims under California law because they could not

show that plaintiffs were actually injured by receiving incomplete wage statements or that HSBC

had a policy or practice of making meal and rest breaks unavailable.  Swartz Decl. ¶ 33.

Defendants also argued that HSBC's branch hours as well as Plaintiffs' emails did not support

Plaintiffs' estimates of the number of hours they and Class Members worked.  *Id.*  While

Plaintiffs believe that they could ultimately establish both liability and damages, this would

require significant factual development.  Plaintiffs' Counsel are experienced and realistic, and

understand that the resolution of liability issues, the outcome of the trial, and the inevitable

appeals process are inherently uncertain in terms of outcome and duration.  The proposed

settlement alleviates these uncertainties.  This factor therefore weighs in favor of approval.

> **5.** **Maintaining the Class Through Trial Would Not Be Simple (*Grinnell* Factor 6).**

The risk of obtaining class certification and maintaining it through trial is also present.

The Court has not certified the Rule 23 Sub-Classes yet, and the Parties anticipate that such a

determination would be reached only after further discovery and intense, exhaustive briefing.  In

opposing class certification, Defendants would likely argue that the differences among the

various job titles and locations and other individualized questions preclude class certification.

Although Plaintiffs disagree with these agreements, Defendants have prevailed on arguments like

these.  *See, e.g.*, *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 949 (9th Cir. 2011) (affirming

decertification, citing "variations in job duties that appear to be a product of employees working

at different facilities, under different managers, and with different customer bases"); *Myers v*

*Hertz Corp.*, 624 F.3d 537, 549-51 (2d Cir. 2010) (affirming denial of class certification in

misclassification case based on evidence that class members' duties varied by location).  In

addition, with respect to the California law claims, Defendants would likely argue that *Brinker*

*Restaurant Corp. v. Superior Court*, 139 Cal. Rptr. 3d 315 (Cal. 2012) (holding that California

meal and rest break laws do not require employers to ensure employees take required breaks),

precludes certification.  Risk, expense, and delay permeate such processes.  Settlement

eliminates this risk, expense, and delay.  This factor favors preliminary approval.

In addition, the Court has not yet authorized Plaintiffs to send notice of the litigation to the FLSA collective pursuant to 29 U.S.C. § 216(b).  If the Court did authorize notice to the FLSA collective, Defendants would likely challenge that determination at a later date, after the close of discovery.  *See, e.g.*, *Zivali v. AT&T Mobility, LLC*, 784 F. Supp. 2d 456, 470 (S.D.N.Y. 2011) (granting motion to decertify collective action).  Settlement eliminates the risk and delay inherent in this process.

### 6.      Defendants' Ability to Withstand a Greater Judgment is Not Determinative (*Grinnell* Factor 7).

There is no evidence here that Defendants could not withstand a greater judgment. Swartz Decl. ¶ 34.  In recent years, however, even some of the largest financial institutions have failed, leaving the class with no recourse.  *See, e.g.*, *Aber-Shukofsky v. JPMorgan Chase & Co.*, 755 F. Supp. 2d 441, 446-51 (S.D.N.Y. 2010) (finding plaintiffs' wage and hour claims against Washington Mutual's successors in interest to be barred).  However, even if Defendants could withstand a greater judgment, a "defendant['s] ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair."  *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178 n.9).  Therefore, this factor is neutral and does not preclude the Court from granting preliminary approval.

### 7.      The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9).

Defendants have agreed to settle this case for a substantial amount, $15,625,000.  The amount represents substantial value given the attendant risks of litigation, even though recovery could be greater if Plaintiffs attained both collective and class certification, overcame motions to decertify any class or collective, succeeded on all claims at trial, and survived an appeal.

The determination of whether a settlement amount is reasonable "does not involve the

18

use of a 'mathematical equation yielding a particularized sum.'"  *Frank*, 228 F.R.D. at 186

(quoting *In re Austrian*, 80 F. Supp. 2d at 178).  "Instead, 'there is a range of reasonableness

with respect to a settlement – a range which recognizes the uncertainties of law and fact in any

particular case and the concomitant risks and costs necessarily inherent in taking any litigation to

completion.'"  *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).  "[T]here is no

reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even

a thousandth part of a single percent of the potential recovery."  *Grinnell Corp.*, 495 F.2d at 455

n.2.  "It is well-settled law that a cash settlement amounting to only a fraction of the potential

recovery will not *per se* render the settlement inadequate or unfair."  *Officers for Justice v. Civil

Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982) (emphasis added); *see also Cagan v. Anchor

Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423, at *12-13 (E.D.N.Y. May 22, 1990)

(approving $2.3 million class settlement over objections that the "best possible recovery would

be approximately $121 million").

      Here, the settlement provides much more than "a fraction of the potential recovery."  By

Plaintiffs' Counsel's estimation, the $15,625,000 settlement represents approximately 95% of the

class's lost wages ($16,371,163), assuming that Class Members worked an average of 40

overtime weeks per year and 7.5 overtime hours per week,[8] if Defendants were to prevail on a

fluctuating workweek argument.  Even if Plaintiffs defeated Defendants' fluctuating workweek

argument, which would be contrary to the holdings of all of the Circuit Courts of Appeal that

---

[8]     Plaintiffs' Counsel's estimate of 40 overtime weeks per year takes into account the
number of weeks in which there fell a bank holiday or in which Class Members likely took paid
days off, thus making it unlikely that they would have worked overtime in that week.  Swartz
Decl. ¶ 35.  Defendants estimated even fewer overtime weeks.  *Id.*  In interviews Plaintiffs'
Counsel conducted, the Plaintiffs, opt-ins, and other Class Members reported working an average
of 7.5 hours.  *Id.*  The maximum potential lost wages of $58 million assumes that each Class
Member is entitled to lost wages of $42 per overtime hour worked, exclusive of interest and
liquidated damages.  *Id.*

have considered the issue,[9] the settlement would still represent approximately 27% of the class's

lost wages ($57,853,905).  The settlement represents a substantial recovery for Class Members,

particularly in light of the risks of litigation.  These risks included the risk of losing both

collective and class certification, having a collective action decertified, losing on the merits, and

losing on appeal, in addition to the risk of Defendants prevailing on a fluctuating workweek

argument.  Swartz Decl. ¶ 36.

Here, Class Members will each receive an average net settlement payment (net of

attorneys' fees and costs, service awards, claims administration fees, and reserve for errors and

omissions) of approximately $4,900.  Swartz Decl. ¶ 37.  This is more than twice as much as

average settlement payments achieved in other comparable class action settlements involving

similar job titles.  *Id.* (listing cases).  Weighing the benefits of the settlement against the

available evidence and the risks associated with proceeding in the litigation, the settlement

amount is reasonable.

*     *     *

The *Grinnell* factors all weigh in favor of issuing preliminary approval of the settlement.

In the event that a substantial number of objectors come forward with meritorious objections, the

Court can reevaluate its determination.  Because the settlement, on its face, is "'fair, adequate,

and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v.

Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)), the Court should grant preliminary approval.

---

[9]     Although there is authority among district courts in this Circuit for applying time and a
half in a misclassification case, *see, e.g.*, *Perkins v. S. New England Tel., Co.*, No. 3:07 Civ. 967,
2011 WL 4460248, at *4 (D. Conn. Sept. 27, 2011), every federal appellate court that has
considered the issue has endorsed the fluctuating workweek method of calculating damages.  *See
Desmond v. PNGI Charles Town Gaming, LLC*, 630 F.3d 351, 357 (4th Cir. 2011); *Urnikis–
Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 681-83 (7th Cir. 2010); *Clements v. Serco, Inc.*,
530 F.3d 1224, 1230-31 (10th Cir. 2008); *Valerio v. Putnam Assocs. Inc.*, 173 F.3d 35, 39-40
(1st Cir. 1999); *Blackmon v. Brookshire Grocery Co.*, 835 F.2d 1135, 1138-39 (5th Cir. 1988).

## V.     CONDITIONAL CERTIFICATION OF THE RULE 23 CLASS IS APPROPRIATE.

Plaintiffs respectfully request that the Court conditionally certify the four sub-classes as defined in Section II.B above under Federal Rule of Civil Procedure 23(e) for purposes of effectuating the settlement.  As discussed below, the settlement sub-classes meet all of the requirements for class certification for settlement purposes, and Defendants do not oppose provisional certification for settlement purposes only.  Ex. A (Settlement Agreement) § 2.3(C); *see also Newberg* § 11.27 ("When the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only."); *County of Suffolk v. Long Island Lighting Co*., 710 F. Supp. 1422, 1424 (E.D.N.Y. 1989) ("It is appropriate for the parties to a class action suit to negotiate a proposed settlement of the action prior to certification of the class."), *aff'd in part, rev'd in part on other grounds*, 907 F.2d 1295 (2d Cir. 1990).

Provisional settlement class certification and appointment of class counsel have several practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of all Class Members of the terms of the proposed Settlement Agreement, and setting the date and time of the final approval hearing.  *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 790-92 (3d Cir. 1995) (noting practical purposes of provisionally certifying settlement class); *Dorn*, 2011 WL 382200, at *1-2 (conditionally certifying wage and hour settlement class and granting preliminary approval of settlement).

Under Rule 23(a), a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b).  Rule 23(a) requires that:

(1)     the class is so numerous that joinder of all members is impracticable;

21

(2)     there are questions of law or fact common to the class;

(3)     the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)     the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Rule 23(b)(3) requires the court to find that "questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  *Id.* at (b)(3).  In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in evaluating class certification.  *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).

### A.   **Numerosity**

"[N]umerosity is presumed at a level of 40 members."  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  Plaintiffs easily satisfy this requirement because there are approximately 1,950 Rule 23 Class Members.  Swartz Decl. ¶ 41.

### B.   **Commonality**

The proposed settlement sub-classes also satisfy the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  Although the claims need not be identical, they must share common questions of fact or law.  *Port Auth. Police Benevolent Ass'n v. Port Auth. of N.Y. & N.J.*, 698 F.2d 150, 153-54 (2d Cir. 1983).  The proper question is whether there is a "unifying thread" among the claims to warrant class certification.  *Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y.

22

1986).  Courts construe the commonality requirement liberally.  *Frank*, 228 F.R.D. at 181

(citation omitted).

This case involves numerous common issues.  Plaintiffs and Class Members all bring the

identical claims that Defendants misclassified them as exempt employees and failed to pay them

overtime wages in violation of state wage and hour laws and failed to keep accurate time records

of the hours they worked.  *See Morris*, 859 F. Supp. 2d at 615-16 (commonality satisfied where,

among other allegations, plaintiffs claimed that defendant had policy of not paying all class

members overtime pay); *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672,

2010 WL 1948198, at *3 (S.D.N.Y. May 11, 2010) (common issues included "whether

[defendant] failed to pay [p]laintiffs and the . . . [c]lass [m]embers overtime premium pay for all

hours they worked over 40 in a workweek; and . . . whether [defendant] maintained accurate time

records of the hours [p]laintiffs and the state settlement [c]lass [m]embers worked")).

### C.      <u>Typicality</u>

Rule 23 requires that the claims of the representative party be typical of the claims of the

class.  "Like the commonality requirement, typicality does not require the representative party's

claims to be identical to those of all class members."  *Frank*, 228 F.R.D. at 182.  Typicality is

satisfied "when each class member's claim arises from the same course of events, and each class

member makes similar legal arguments to prove the defendant's liability."  *Marisol A.*, 126 F.3d

at 376 (internal quotations omitted).  "[M]inor variations in the fact patterns underlying

individual claims" do not defeat typicality when the defendants direct "the same unlawful

conduct" at the named plaintiff and the class.  *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir.

1993).  Courts evaluate typicality "with reference to the company's actions, not with respect to

particularized defenses it might have against certain class members."  *Trinidad v. Breakaway*

*Courier Sys., Inc.*, No. 05 Civ. 4116, 2007 WL 103073, at *6 (S.D.N.Y. Jan. 12, 2007) (quoting *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996)).

Plaintiffs' claims arise from the same factual and legal circumstances that form the bases of the Rule 23 Class Members' claims. Defendants classified all Plaintiffs and Class Members as exempt from overtime pursuant to the same company policy and pattern or practice. Plaintiffs also claim the same injuries as do Class Members – that Defendants failed to properly pay them for overtime hours worked. Accordingly, Plaintiffs satisfy the typicality requirement. *See Hernandez*, 2012 WL 5862749, at *3 (typicality satisfied where "[p]laintiffs' claims for overtime pay [arose] from the same factual and legal circumstances that form[ed] the bases of the [c]lass [m]embers' claims"); *Morris*, 859 F. Supp. 2d at 616 (same).

### D.      Adequacy of the Named Plaintiffs

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy requirement exists to ensure that the named representative will 'have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members.'" *Toure v. Cent. Parking Sys.*, No. 05 Civ. 5237, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) (quoting *Denney v. Deutsche Bank AG,* 443 F.3d 253, 268 (2d Cir. 2006)). Plaintiffs meet the adequacy requirement because there is no evidence that Plaintiffs have interests that are antagonistic to or at odds with those of Class Members. *See Morris*, 859 F. Supp. 2d at 616 (no evidence that named plaintiffs' and class members' interests were at odds). Plaintiffs' Counsel also meet the adequacy requirement of Rule 23(a)(4).[10]

---

[10]      O&G attorneys "have substantial experience prosecuting and settling employment class actions, including wage and hour class actions[,] and are well-versed in wage and hour and class action law," *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 1872405, at *2 (S.D.N.Y. May 17,

### E.    Certification is Proper Under Rule 23(b)(3)

Rule 23(b)(3) requires that common questions of law or fact "predominate over any

questions affecting only individual members, and that a class action is superior to other available

---

2011) (internal quotation marks omitted); *see also Capsolas v. Pasta Res. Inc.*, No. 10 Civ. 5595, 2012 WL 1656920, at *2 (S.D.N.Y. May 9, 2012) (O&G attorneys "have years of experience prosecuting and settling wage and hour class actions, and are well-versed in wage and hour law and in class action law"); *McMahon*, 2010 WL 2399328, at *6 (O&G "are experienced employment lawyers with good reputations among the employment law bar . . . [and] have prosecuted and favorably settled many employment law class actions, including wage and hour class actions"); *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008) (Lynch, J.) (O&G lawyers have "an established record of competent and successful prosecution of large wage and hour class actions, and the attorneys working on the case are likewise competent and experienced in the area"); and have served as lead counsel on numerous class and collective actions, including *Hernandez*, 2012 WL 5862749, at *4 (appointing O&G and SLG as class counsel, noting both firms' "years of experience prosecuting and settling wage and hour class actions"); *Capsolas*, 2012 WL 1656920, at *2 (appointing O&G as class counsel); *Palacio*, 2012 WL 1058409, at *2 (appointing O&G and SLG as class counsel and noting both firms' extensive experience litigating and settlement wage and hour class and collective actions); *Matheson v. T-Bone Restaurant, LLC*, No. 09 Civ. 4214, 2011 WL 6402303, at *3 (S.D.N.Y. Sept. 13, 2011) (appointing O&G and F&S as class counsel, finding that they "have substantial experience prosecuting and settling . . . wage and hour class actions, and are well-versed in wage and hour law and in class action law"); *Johnson*, 2011 WL 1872405, at *2 (appointing O&G as class counsel); and *Clark*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2009 WL 6615729, at *5 (appointing O&G as class counsel), among others.  F&S is experienced in representing workers in wage and hour class actions and has served as lead counsel in numerous wage and hour class and collective actions, including *Lovaglio v. W&E Hospitality Inc.*, No. 10 Civ. 7351, 2012 WL 2775019, at *2, 4 (S.D.N.Y. July 6, 2012) (F&S has "extensive experience in litigating wage and hour class actions" and "achieved an excellent result for the class"); *Girault v. Supersol 661 Amsterdam, LLC*, No. 11 Civ. 6835, 2012 WL 2458172, at *2 (S.D.N.Y. June 28, 2012) (appointing F&S as class counsel because they "have years of experience prosecuting and settling wage and hour class actions, and are well-versed in wage and hour law and in class action law"); and *Matheson*, 2011 WL 6402303, at *2-3, among others.  C.K. Lee has served as lead counsel in numerous wage and hour class and collective actions, including *Han v. AB Gansevoort*, No. 11 Civ. 2423 (S.D.N.Y.); *Marte v. Energy Resources*, No. 11 Civ. 2490 (S.D.N.Y.); *Han v. Sterling National Mortgage*, No. 09 Civ. 5589 (E.D.N.Y.); *Amaya v. 166 Park*, No. 11 Civ. 1081 (E.D.N.Y.), among others. SLG has been lead counsel or co-counsel on dozens of wage and hour class and collective actions, including *Hernandez*, 2012 WL 5862749, at *4; *Palacio*, 2012 WL 1058409, at *2; *Saliford v. Regions Financial Corp.*, No. 10 Civ. 61031 (S.D. Fla.); *Stewart v. Prince Telecom, Inc.*, No. 10 Civ. 4881 (S.D.N.Y.); *Hosier v. Mattress Firm, Inc.*, No. 10 Civ. 294 (M.D. Fla.); *Briscoe-Grey v. Sears Holding Corp.*, No. 09 Civ. 81408 (S.D. Fla.); *Lewis v. Iowa College Acquisition Corp.*, No. 08 Civ. 61011 (S.D. Fla.); *Brooks v. First Data Corp.*, No. 11-18202 (Fla. 17th Cir.); and *Romero v. Florida Power and Light Co.*, No. 09 Civ. 1401 (M.D. Fla.), among others.

methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

### 1.      <u>Common Questions Predominate</u>

To establish predominance, Plaintiffs must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof."  *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 108 (2d Cir. 2007).  The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues."  *Marriott v. Cnty. of Montgomery*, 227 F.R.D. 159, 173 (N.D.N.Y. 2005) (quoting *In re Visa Check/MasterMoney Antitrust Litig*, 280 F.3d 124, 139 (2d Cir. 2001)).  Simply because a defense may arise and affect different class members differently does not defeat predominance.  *See Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 339 (S.D.N.Y. 2004) (quoting *In re Visa Check/MasterMoney*, 280 F.3d at 138).  Where plaintiffs are "unified by a common legal theory" and by common facts, predominance is satisfied.  *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).  The predominance requirement is "designed to determine whether 'proposed classes are sufficiently cohesive to warrant adjudication by representation.'"  *Frank*, 228 F.R.D. at 183 (quoting *Amchem*, 521 U.S. at 623).

Here, Class Members' common factual allegations and legal theory – that Defendants violated federal and state law by misclassifying them as exempt employees and failing to pay them overtime wages – predominate over any variations among Class Members.  *See Hernandez*, 2012 WL 5862749, at *4 (common factual allegations and legal theory predominated over variations in wage and hour misclassification case); *Torres v. Gristede's Corp.*, No. 04 Civ.

3316, 2006 WL 2819730, at *16 (S.D.N.Y. Sept. 29, 2006) (plaintiffs "introduced sufficient proof that Defendants engaged in a common practice to deny employees overtime pay," and "this issue predominates over any individual calculations of overtime wages").

### 2.    A Class Action is a Superior Mechanism

The second part of the Rule 23(b)(3) analysis compares whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968); *Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.") (internal citation omitted).  Rule 23(b)(3) sets forth a non-exclusive list of factors pertinent to judicial inquiry into the superiority of a class action, including: the class members' interests in individually controlling the prosecution or defense of separate actions; whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum.  Fed. R. Civ. P. 23(b)(3).[11]

Concentrating the litigation in this Court is desirable because much of the allegedly wrongful conduct occurred within its jurisdiction, and Defendants' headquarters are based here. The class device will achieve economies of scale, conserve judicial resources, preserve public confidence in the integrity of the judicial system by avoiding the waste and delay of repetitive

---

[11]      Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement.  *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a [trial] court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial."); *Frank*, 228 F.R.D. at 183 ("The court need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of settlement.").  Moreover, denying class certification on manageability grounds is "disfavored" and "should be the exception rather than the rule."  *In re Visa Check/MasterMoney*, 280 F.3d at 140.

proceedings, and prevent inconsistent adjudications of similar claims.  *See Morris*, 859 F. Supp.

2d at 617; *Damassia*, 250 F.R.D. at 161, 164.  A class action is the best mechanism to fairly and

efficiently resolve Class Members' claims.[12]

## VI.    PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Plaintiffs' Counsel should be appointed as Class Counsel under Rule 23(g), which

governs the standards and framework for appointing class counsel.  Rule 23 (g) sets forth four

criteria: (1) "the work counsel has done in identifying or investigating potential claims in the

action;" (2) "counsel's experience in handling class actions, other complex litigation, and the

types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law; and" (4)

"the resources that counsel will commit to representing the class".  Fed. R. Civ. P. 23(g)(1)(A).

The Court may also consider any other matter pertinent to counsel's ability to fairly and

adequately represent the class.  Fed. R. Civ. P. 23(g)(1)(B).

Plaintiffs' Counsel meet all of these criteria.  Plaintiffs' Counsel have done substantial

work identifying, investigating, prosecuting, and settling Plaintiffs' and Class Members' claims.

Swartz Decl. ¶¶ 21-28.  They have provided a benefit to the class and the judicial system by

agreeing to cooperate in the prosecution and settlement of this case, which began as three

separate cases.  *Id.*  Plaintiffs' Counsel have substantial experience prosecuting and settling

employment class actions, including wage and hour class actions, and the lawyers assigned to

this matter are well-versed in class action and wage and hour law and are well-qualified to

represent the class.  *Id.* ¶ 12.  Accordingly, courts have repeatedly found Plaintiffs' Counsel to be

adequate class counsel in wage and hour class actions.[13]

---

[12]    Defendants support certification of a settlement class without waiving their position and arguments that, settlement class aside, certification of a collective or class action in this case is unwarranted.

[13]    *See supra* note 13.

## VII.   THE NOTICE PLAN AND DISTRIBUTION PROCESS ARE APPROPRIATE

The Proposed Notices, which are attached to the Swartz Declaration as Exhibits B and C,

comply with due process and Federal Rule of Civil Procedure 23.  Notice must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language:
>
> (i)      the nature of the action;
> (ii)     the definition of the class certified;
> (iii)    the class claims, issues, or defenses;
> (iv)    that a class member may enter an appearance through an attorney if the member so desires;
> (v)     that the court will exclude from the class any member who requests exclusion;
> (vi)    the time and manner for requesting exclusion; and
> (vii)   the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The Proposed Notices satisfy each of these requirements.  They also describe the terms of

the settlement, inform the class about the allocation of attorneys' fees, and provide specific

information regarding the date, time, and place of the final approval hearing.  Courts have

approved class notices even when they provided only general information about a settlement.

*See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (class notice

"need only describe the terms of the settlement generally"); *see also Johnson*, 2011 WL

1872405, at *3.  The detailed information in the Proposed Notices far exceeds this bare

minimum and fully complies with the requirements of Rule 23(c)(2)(B).

The Settlement Agreement provides that the Notices will be mailed by the Claims

Administrator to the last known address of each Class Member within 20 days of preliminary

approval.  Ex. A (Settlement Administrator) §§ 2.4(B)-(C).  The Claims Administrator will take

reasonable steps to obtain the correct addresses of any Class Member whose notice is returned as

29

undeliverable and will attempt re-mailing.  Ex. A (Settlement Agreement) § 2.4(D).  As discussed above, the Proposed Rule 23 Notice contains information about how to exclude oneself or object to the settlement.  Rule 23 Class Members will have 30 days from the date of mailing to submit opt-out requests or to comment on or object to the settlement.  Ex. A (Settlement Agreement) §§ 2.5(A), 2.6(A).   No Class Members will be required to complete a claim form to participate in the settlement.  Ex. A (Settlement Agreement) § 2.10(A).  The Claims Administrator will mail Class Members their payments three days after the time to appeal the Final Order and Judgment has expired.  Ex. A (Settlement Agreement) § 2.10(C).

## VIII.   PLAINTIFFS WILL SEEK APPROVAL OF THE FLSA SETTLEMENT

Plaintiffs will seek approval of the settlement of the FLSA claims with their final approval motion.  The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns.  *See McMahon*, 2010 WL 2399328, at *6 ("The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement.").  When Plaintiffs file their motion for final approval of the settlement, they will seek approval of the FLSA settlement.

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Motion for Preliminary Approval of Settlement and enter the Proposed Order.

Dated: November 26, 2012
       New York, New York

Respectfully submitted,
**OUTTEN & GOLDEN LLP**

/s/ Justin M. Swartz
Justin M. Swartz
Jennifer L. Liu
Amber C. Trzinski
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000
Facsimile:  (212) 977-4005

**FITAPELLI & SCHAFFER, LLP**
Joseph A. Fitapelli
Brian S. Schaffer
Eric J. Gitig
475 Park Avenue South, 12th Floor
New York, New York 10016
Telephone:  (212) 300-0375

**LEE LITIGATION GROUP, PLLC**
C.K. Lee
Anne Seelig
30 East 39th Street, Second Floor
New York, NY 10016
Telephone: (212) 465-1180

**SHAVITZ LAW GROUP, P.A.**
Gregg I. Shavitz (admitted *pro hac vice*)
Susan H. Stern (admitted *pro hac vice*)
1515 S. Federal Highway, Suite 404
Boca Raton, Florida 33432
Telephone: (561) 447-8888

**Attorneys for Plaintiffs and the Putative Class and Collective**