**FITAPELLI & SCHAFFER, LLP**
Joseph A. Fitapelli
Brian S. Schaffer
Eric J. Gitig
475 Park Avenue South, 12th Floor
New York, New York 10016
Telephone: (212) 300-0375

**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Jennifer L. Liu
Amber C. Trzinski
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000

**LEE LITIGATION GROUP, PLLC**
C.K. Lee
Anne Seelig
30 East 39th Street, Second Floor
New York, NY 10016
Telephone: (212) 465-1180

**SHAVITZ LAW GROUP, P.A.**
Gregg I. Shavitz (admitted *pro hac vice*)
Susan H. Stern (admitted *pro hac vice*)
1515 S. Federal Hwy, Suite 404
Boca Raton, FL 33432
Telephone: (561) 447-8888

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHARON YUZARY, JON RACOW, HENRY HU, MINA DIMETRY, TERON HAUGHTON, DANIEL HAUER, BILLY TZEWA MUI, CALVIN MAZLUMYAN, and KIM LEBLEU, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br>HSBC BANK USA, N.A.; HSBC USA, INC.; and HSBC NORTH AMERICA HOLDINGS, INC.<br><br>Defendants. | No. 12 Civ. 3693 (PGG) |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR APPROVAL OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

I.  CLASS COUNSEL ARE ENTITLED TO A REASONABLE FEE OF 31.7%
    OF THE SETTLEMENT FUND ................................................................................. 2

II. THE PERCENTAGE METHOD IS THE PREFERRED METHOD
    OFAWARDING ATTORNEYS' FEES IN COMMON FUND CASES
     IN THE SECOND CIRCUIT ..................................................................................... 3

    A.  The *Goldberger* Factors Support an Award of 31.7% of the Fund. ...................... 6

    B.  Class Counsel's Time and Labor ......................................................................... 6

    C.  Magnitude and Complexity of the Litigation ...................................................... 11

    D.  Risk of Litigation ............................................................................................... 12

    E.  Quality of Representation. .................................................................................. 14

    F.  Fee in Relation to the Settlement. ...................................................................... 16

    G.  Public Policy Considerations. ............................................................................ 18

III. THE LODESTAR CROSS CHECK FURTHER SUPPORTS AN AWARD
     TO CLASS COUNSEL OF 31.7% OF THE SETTLEMENT FUND ........................... 19

IV. CLASS COUNSEL ARE ENTITLED TO REIMBURSEMENT OF
    EXPENSES UNDER THE SETTLEMENT AGREEMENT ........................................... 23

V.  CONCLUSION .......................................................................................................... 23

**TABLE OF AUTHORITIES**

PAGE(S)

**CASES**

*A.H. Phillips, Inc. v. Walling,*
    324 U.S. 490 (1945)....................................................................................................18

*In re Am. Bank Note Holographics, Inc.,*
    127 F. Supp. 2d 418 (S.D.N.Y. 2001).........................................................................4

*Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*
    522 F.3d 182 (2nd Cir. 2008)......................................................................................5

*Barrentine v. Arkansas-Best Freight Sys., Inc.,*
    450 U.S. 728 (1981)....................................................................................................11

*Beckman v. KeyBank, N.A.,*
    No. 12 Civ. 7836, 2013 WL 1803736 (S.D.N.Y. Apr. 29, 2013)..................... passim

*Bell v. Citizens Fin. Grp., Inc.,*
    No. 10 Civ. 320, Docket No. 260 (W.D. Pa. Apr. 21, 2013)....................................13

*Blackmon v. Brookshire Grocery Co.,*
    835 F.2d 1135 (5th Cir. 1988) ...................................................................................15

*In re Boesky Sec. Litig.,*
    888 F. Supp. 551 (S.D.N.Y. 1995).............................................................................20

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini,*
    258 F. Supp. 2d 254 (S.D.N.Y. 2003)..........................................................................4

*Buccellato v. AT&T Operations, Inc.,*
    No. 10 Civ. 463, 2011 WL 3348055 (N.D. Cal. Jun. 30, 2011) ...............................20

*In re Cardinal Health Inc. Sec. Litig.,*
    528 F. Supp. 2d 752 (S.D. Ohio 2007) ......................................................................21

*Castagna v. Madison Square Garden, L.P.,*
    No. 09 Civ. 10211, 2011 WL 2208614 (S.D.N.Y. Jun. 7, 2011)...............................22

*City of Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974).......................................................................................12

*Clark v. Ecolab Inc.*,
　　Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198
　　(S.D.N.Y. May 11, 2010)..................................................................................17

*Clements v. Serco, Inc.*,
　　530 F.3d 1224 (10th Cir. 2008) .......................................................................15

*In re Comverse Tech., Inc. Sec. Litig.*,
　　No. 06 Civ. 1825, 2010 WL 2653354 (E.D.N.Y. June 24, 2010)...........................17

*Cosgrove v. Sullivan*,
　　759 F. Supp. 166 (S.D.N.Y.1991).....................................................................21

*Davis v. J.P. Morgan Chase & Co.*,
　　827 F. Supp. 2d 172 (W.D.N.Y. 2011) ....................................................2, 17, 20

*deMunecas v. Bold Food, LLC*,
　　No. 09 Civ. 440, 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010) ......................5, 19

*Deposit Guar. Nat'l Bank v. Roper*,
　　445 U.S. 326 (1980)........................................................................................19

*Desmond v. PNGI Charles Town Gaming, LLC*,
　　630 F.3d 351 (4th Cir. 2011) ...........................................................................15

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
　　586 F. Supp. 2d 732 (S.D. Tex. 2008) ..............................................................21

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
　　No. 05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ..........................6

*Frank v. Eastman Kodak Co.*,
　　228 F.R.D. 174 (W.D.N.Y. 2005)...........................................................12, 16, 19

*In re Gilat Satellite Networks, Ltd.*,
　　No. 02 Civ. 1510, 2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007).........................16

*In re Global Crossing Sec. & ERISA Litig.*,
　　225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................................6

*Goldberger v. Integrated Res. Inc.*,
　　209 F.3d 43 (2d Cir. 2000).................................................................... passim

*Hauer v. HSBC Bank USA, N.A., et al.*,
　　No. 12 Civ. 61155 (KMW) .................................................................................7

*Henry v. Quicken Loans, Inc.*,
　　698 F.3d 897 (6th Cir. 2012) ...........................................................................13

*Hernandez v. Merrill Lynch & Co.*,
   No. 11 Civ. 8472, 2013 WL 1209563 (S.D.N.Y. Mar. 21, 2013) ....................................17, 22

*Hicks v. Stanley*,
   No. 01 Civ. 10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ...................................18, 19

*In re Indep. Energy Holdings PLC Sec. Litig.*,
   302 F. Supp. 2d 180 (S.D.N.Y. 2003)........................................................................................23

*In re Interpublic Sec. Litig.*,
   No. 02 Civ. 6527, 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) ......................................5, 22

*Johnson v. Brennan*,
   No. 10 Civ. 4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011)......................................3, 11

*Khait v. Whirlpool Corp.*,
   No. 06 Civ. 6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010)...............................17, 18, 19

*In re Lloyd's Am. Trust Fund Litig.*,
   No. 96 Civ. 1262, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) .........................................20

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. Jan. 29, 2002) .......................................................................21

*Marlo v. United Parcel Serv., Inc.*,
   639 F.3d 942 (9th Cir. 2011) ...................................................................................................14

*McDaniel v. County of Schenectady*,
   595 F.3d 411 (2d Cir. 2010)..................................................................................................3, 4

*McMahon v. Olivier Cheng Catering & Events, LLC*,
   No. 08 Civ. 8713, 2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) .................................... passim

*Mui v. HSBC Bank USA, N.A., et al.*,
   No. 12 Civ. 961 (BSJ)................................................................................................................6

*Myers v Hertz Corp.*,
   624 F.3d 537 (2d Cir. 2010)....................................................................................................14

*New England Carpenters Health Benefits Fund v. First Databank, Inc.*,
   No. 05 Civ. 11148, 2009 WL 2408560 (D. Mass. Aug. 3, 2009)...........................................20

*In re Nigeria Charter Flights Litig.*,
   MD 2004-1613, 2011 WL 7945548 (E.D.N.Y. Aug. 25, 2011)...............................................10

*In re Oil Spill By Oil Rig Deepwater Horizon*,
   MDL 2179, 2013 WL 144042 (E.D. La. Jan. 11, 2013)........................................................10

*Parker v. Jekyll & Hyde Entm't Holdings*,LLC,
    No. 08 Civ. 7670, 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010) ...................................10, 19, 20

*Perkins v. S. New Eng. Tel. Co.*,
    No. 07 Civ. 967, 2011 WL 4460248 (D. Conn. Sept. 27, 2011) ............................................15

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985)...........................................................................................................19

*In re Polaroid ERISA Litig.*,
    No. 03 Civ. 8335, 2007 WL 2116398 (S.D.N.Y. July 19, 2007) ........................................4, 5

*In re Prudential Sec. Inc. Ltd. P'ship Litig.*,
    912 F. Supp. 97 (S.D.N.Y. 1996)........................................................................................11

*Ramirez v. Lovin' Oven Catering Suffolk, Inc.*,
    No. 11 Civ. 520, 2012 WL 651640 (S.D.N.Y. Feb. 24, 2012) .............................................20

*In re Ramp Corp. Sec. Litig.*,
    No. 05 Civ. 6521, 2008 WL 58938 (S.D.N.Y. Jan. 3, 2008)............................................4, 5, 6

*In re Rite Aid Sec. Litig.*,
    362 F. Supp. 2d 587 (E.D. Pa. 2005) ..................................................................................21

*In re RJR Nabisco, Inc. Sec. Litig.*,
    No. 88 Civ. 7905, 1992 WL 210138 (S.D.N.Y. Aug. 24, 1992) ..........................................21

*Sand v. Greenberg*,
    No. 08 Civ. 7840, 2010 WL 69359 (S.D.N.Y. Jan. 7, 2010)........................................3, 18, 19

*Savoie v. Merchants Bank*,
    166 F.3d 456 (2d Cir. 1999).........................................................................................5, 20, 21

*Sewell v. Bovis Lend Lease, Inc.*,
    No. 09 Civ. 6548, 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012)................................... *passim*

*Spicer v. Pier Sixty LLC*,
    No. 08 Civ.10240, 2012 WL 4364503 (S.D.N.Y. Sept. 14, 2012).......................................17

*Steiner v. Am. Broad. Co.*,
    248 Fed. Appx. 780 (9th Cir. 2007)....................................................................................20

*In re Sumitomo Copper Litig.*,
    74 F. Supp. 2d 393 (S.D.N.Y. 1999)................................................................................4, 18

*Taft v. Ackermans*,
    No. 02 Civ. 7951, 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007)........................................14, 17

*Urnikis–Negro v. Am. Family Prop. Servs.*,
    616 F.3d 665 (7th Cir. 2010) ...............................................................15

*Valerio v. Putnam Assocs. Inc.*,
    173 F.3d 35 (1st Cir. 1999)...................................................................15

*Varljen v. H.J. Meyers & Co.*,
    No. 97 Civ. 6742, 2000 WL 1683656 (S.D.N.Y. Nov. 8, 2000) .............................6

*In re Veeco Instruments Inc. Sec. Litig.*,
    No. 05 MDL 1695, 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ..........................17

*Velez v. Majik Cleaning Serv., Inc.*,
    No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007).....................4, 5, 16

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ...........................................................20, 21

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)............................................................3, 4, 5, 21

*Westerfield v. Washington Mut. Bank*,
    No. 06 Civ. 2817, 2009 WL 5841129 (E.D.N.Y. Oct. 8, 2009) ...........................17

*Willix v. Healthfirst Inc.*,
    No. 07 Civ. 1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011)........................3, 17

*Yuzary v. HSBC Bank USA, N.A., et al.*,
    No. 12 Civ. 3693 (PGG) .......................................................................7

*Zivali v. AT&T Mobility, LLC*,
    784 F. Supp. 2d 456 (S.D.N.Y. 2011)......................................................14

## INTRODUCTION

In connection with Plaintiffs' Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of FLSA Settlement ("Motion for Final Approval"), filed simultaneously with this motion,[1] Class Counsel, Fitapelli & Schaffer, LLP ("F&S"), Outten & Golden LLP ("O&G"), Lee Litigation Group, PLLC ("LLG"), and Shavitz Law Group, P.A. ("SLG"), respectfully move this Court for an award of attorneys' fees in the amount of $4,953,125, or 31.7% of the Settlement Fund (the "Fund"), and reimbursement of $33,155.56 in out-of-pocket expenses that Class Counsel incurred in successfully prosecuting this action.

Over the past two years, Class Counsel has spent approximately 1,636 attorney, paralegal, and support staff hours prosecuting this case. Decl. of Justin M. Swartz in Supp. of Pls.' Mot. for Approval of Att'ys' Fees and Reimbursement of Expenses and Mot. for Class Representative Service Awards ("Swartz Decl.") ¶¶ 6, 9; Decl. of C.K. Lee in Supp. of Pls.' Mot. for Approval of Att'ys' Fees and Reimbursement of Expenses ("Lee Decl.") ¶ 8; Decl. of Gregg I. Shavitz in Supp. of Pls.' Mot. for Approval of Att'ys' Fees and Reimbursement of Expenses ("Shavitz Decl.") ¶ 14; Decl. of Brian S. Schaffer in Supp. of Pls.' Mot. for Approval of Att'ys' Fees and Reimbursement of Expenses ("Schaffer Decl.") ¶ 10. Multiplying these hours by the hourly rate of each attorney, paralegal, and staff member results in a lodestar amount of $651,043. Swartz Decl. ¶ 9.

Class Counsel's efforts to date have been without compensation, and their entitlement to payment has been wholly contingent upon achieving a good result. Swartz Decl. ¶ 16. For the

---

[1]     For a detailed account of the factual and procedural background of this case, Class Counsel refer the Court to the Memorandum of Law in Support of Plaintiffs' Motion for Final Approval, and the supporting Declaration of Justin M. Swartz.

reasons set forth below, Class Counsel respectfully submit that the attorneys' fees and expense

reimbursement they seek are fair and reasonable under the applicable legal standards, and should

be awarded in light of the contingency risk undertaken and the result achieved in this case.

## I.   CLASS COUNSEL ARE ENTITLED TO A REASONABLE FEE OF 31.7% OF THE SETTLEMENT FUND

Class Counsel are entitled to reasonable attorneys' fees to compensate them for their

work in recovering unpaid overtime wages on behalf of the class.  The Settlement Agreement,

which has been preliminarily approved by the Court, provides that "Class Counsel will petition

the Court for an award of attorneys' fees of no more than one-third of the Settlement Amount,

and, in addition, for reimbursement of their actual litigation costs and expenses . . . ."  Ex. D

(Settlement Agreement) ¶ 3.2(A).[2]  In addition, the Court-approved Notice that was sent to all

Class Members stated the following:

> Class Counsel will ask the Court to approve payment of up to one-third of the
> settlement fund for attorneys' fees.  These fees would compensate Class Counsel
> for investigating the facts, litigating the case, and negotiating the settlement.
> Class Counsel will also ask the Court to approve payment of up to $50,000 for
> their out-of-pocket costs, excluding the cost of the settlement administrator.  The
> cost of the settlement administrator will also come from the settlement fund.

Ex. F (Decl. of Jenny Cudworth ("Cudworth Decl."), Ex. A (Rule 23 Notice) ¶ 16; Ex. F

(Cudworth Decl.), Ex. B (FLSA Notice) ¶ 13.  No Class Member has objected to the requested

attorneys' fees or expense reimbursement.  Ex. F (Cudworth Decl.) ¶ 15.  The lack of objections

to Class Counsel's fee and cost reimbursement request is some indication of the reasonableness

of the requested award and weighs in favor of approving it.  *Sewell v. Bovis Lend Lease, Inc.*,

No. 09 Civ. 6548, 2012 WL 1320124, at *10 (S.D.N.Y. Apr. 16, 2012); *Davis v. J.P. Morgan*

*Chase & Co.*, 827 F. Supp. 2d 172, 183 (W.D.N.Y. 2011); *Johnson v. Brennan*, No. 10 Civ.

---

[2]      Unless otherwise indicated, all exhibits are attached to the Swartz Declaration.

4712, 2011 WL 4357376, at *9 (S.D.N.Y. Sept. 16, 2011).  Although the Settlement Agreement

allows Class Counsel to seek up to one-third of the Fund for attorneys' fees, Class Counsel has

voluntarily reduced their request to 31.7% to absorb the shortfall in funds caused by Defendants'

inadvertent omission of several dozen Class Members from the initial data provided to the

Claims Administrator and under-calculation of other Class Members' awards.  Swartz Decl. ¶ 34,

Ex. E (Letter to the Court dated July 15, 2013).  The request for 31.7% of the Fund plus expenses

is reasonable and within the range approved by courts in similar cases.

## II.   THE PERCENTAGE METHOD IS THE PREFERRED METHOD FOR AWARDING ATTORNEYS' FEES IN COMMON FUND CASES IN THE SECOND CIRCUIT

In wage and hour class action lawsuits, public policy favors a common fund attorneys'

fee award.  *McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010); *Wal-Mart*

*Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *Beckman v. KeyBank, N.A.*, No.

12 Civ 7836, 2013 WL 1803736, at *8 (S.D.N.Y. Apr. 29, 2013); *Johnson*, 2011 WL 4357376,

at *13; *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713, 2010 WL

2399328, at *7 (S.D.N.Y. Mar. 3, 2010).  Where relatively small claims can only be prosecuted

through aggregate litigation, and the law relies on prosecution by "private attorneys general,"

attorneys who fill that role must be adequately compensated for their efforts.  *McMahon*, 2010

WL 2399328, at *7; *see also Sand v. Greenberg*, No. 08 Civ. 7840, 2010 WL 69359, at *3

(S.D.N.Y. Jan. 7, 2010) (statutory attorneys' fees are meant to "encourage members of the bar to

provide legal services to those whose wage claims might otherwise be too small to justify the

retention of able, legal counsel").  "If not, wage and hour abuses would go without remedy

because attorneys would be unwilling to take on the risk."  *Willix v. Healthfirst Inc.*, No. 07 Civ.

1143, 2011 WL 754862, at *6 (E.D.N.Y. Feb. 18, 2011); *Sand*, 2010 WL 69359, at *3 ("But for

the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected.").

Although there are two ways to compensate attorneys for successful prosecution of statutory claims – the lodestar method and the percentage of the fund method, *McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010) – the trend in this Circuit is to use the percentage of the fund method in common fund cases like this one, *Wal-Mart Stores*, 396 F.3d at 121; *Sewell*, 2012 WL 1320124, at *10; *Beckman*, 2013 WL 1803736, at *8.

There are several reasons that courts prefer the percentage method.  First, the percentage method "directly aligns the interests of the class and its counsel" because it provides an incentive to attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made.  *Wal-Mart Stores*, 396 F.3d at 121 (internal quotation marks omitted); *In re Ramp Corp. Sec. Litig.*, No. 05 Civ. 6521, 2008 WL 58938, at *2 n.2 (S.D.N.Y. Jan. 3, 2008); *In re Polaroid ERISA Litig.*, No. 03 Civ. 8335, 2007 WL 2116398, at *2 (S.D.N.Y. July 19, 2007); *Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007).

The percentage method is also closely aligned with market practices because it "mimics the compensation system actually used by individual clients to compensate their attorneys."  *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999); *see also Sewell*, 2012 WL 1320124, at *10 ("[The percentage] method is similar to private practice where counsel operates on a contingency fee, negotiating a reasonable percentage of any fee ultimately awarded."); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (the percentage method "is consistent with and, indeed, is intended to mirror, practice in the private marketplace where contingent fee attorneys typically negotiate percentage fee

4

arrangements with their clients"); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418,

432 (S.D.N.Y. 2001) (the court should "determine what the lawyer would receive if he were

selling his services in the market rather than being paid by court order").  This rationale is

consistent with the Second Circuit's decision in *Arbor Hill Concerned Citizens Neighborhood*

*Ass'n v. County of Albany*, where the Court held that a "presumptively reasonable fee" takes into

account what a "reasonable, paying client" would pay.  522 F.3d 182, 191 (2d Cir. 2008).  While

*Arbor Hill* is not controlling because it does not address a common fund fee petition, it supports

use of the percentage of the fund method.  *McMahon*, 2010 WL 2399328, at *8; *deMunecas v.*

*Bold Food, LLC*, No. 09 Civ. 440, 2010 WL 3322580, at *9 (S.D.N.Y. Aug. 23, 2010).

Second, the percentage of the fund method promotes early resolution, and removes the

incentive for plaintiffs' lawyers to engage in wasteful litigation in order to increase their billable

hours.  It "provides a powerful incentive for the efficient prosecution and early resolution of

litigation." *Wal-Mart Stores*, 396 F.3d at 121 (internal quotation marks omitted); *see also In re*

*Ramp Corp. Sec. Litig.*, 2008 WL 58938, at *2 n.2; *In re Polaroid ERISA Litig.*, 2007 WL

2116398, at *2; *Velez*, 2007 WL 7232783, at *7.  The percentage method discourages plaintiffs'

lawyers from running up their billable hours, one of the most significant downsides of the

lodestar method.  *Savoie v. Merchants Bank*, 166 F.3d 456, 460-61 (2d Cir. 1999) ("It has been

noted that once the fee is set as a percentage of the fund, the plaintiffs' lawyers have no incentive

to run up the number of billable hours for which they would be compensated under the lodestar

method."); *Karpus v. Borelli* ("*In re Interpublic Sec. Litig.*"), Nos. 02 Civ. 6527, 03 Civ. 1194,

2004 WL 2397190, at *11 (S.D.N.Y. Oct. 26, 2004).

Third, the percentage method preserves judicial resources because it "relieves the court of

the cumbersome, enervating, and often surrealistic process of evaluating fee petitions."  *Id.*

(quoting *Savoie*, 166 F.3d at 461 n.4).  The "primary source of dissatisfaction [with the lodestar method] was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits."  *Goldberger v. Integrated Res. Inc.,* 209 F.3d 43, 48-49 (2d Cir. 2000); *see also In re Ramp Corp. Sec. Litig.*, 2008 WL 58938, at *2 n.2; *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *16 (S.D.N.Y. July 27, 2007).  While courts still use the lodestar method as a "cross check" when applying the percentage of the fund method, they are not required to scrutinize the fee records as rigorously.  *Goldberger,* 209 F.3d at 50; *see In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) (using an "implied lodestar" for the lodestar cross check); *Varljen v. H.J. Meyers & Co.*, No. 97 Civ. 6742, 2000 WL 1683656, at *5 (S.D.N.Y. Nov. 8, 2000) (using an "unexamined lodestar figure" for the lodestar cross check).

## A.    The *Goldberger* Factors Support an Award of 31.7% of the Fund.

Reasonableness is the touchstone for determining attorneys' fees.  In *Goldberger*, the Second Circuit articulated six factors for courts to consider in determining the reasonableness of fee applications:

(1)    the time and labor expended by counsel;
(2)    the magnitude and complexities of the litigation;
(3)    the risk of litigation;
(4)    the quality of representation;
(5)    the requested fee in relation to the settlement; and
(6)    public policy considerations.

209 F.3d at 50 (internal quotation marks omitted).  All of the *Goldberger* factors weigh in favor of granting approval of Class Counsel's fee application.

## B.    Class Counsel's Time and Labor

Class Counsel spent significant effort to achieve the $15,625,000 settlement.  On February 7, 2012, Plaintiff Mui filed a lawsuit in the United States District Court for the

Southern District of New York, *Mui v. HSBC Bank USA, N.A., et al.*, No. 12 Civ. 961 (BSJ) ("*Mui*"), bringing FLSA collective action and Rule 23 class claims under the NYLL.  Swartz Decl. ¶ 17.  On May 9, 2012, Plaintiff Yuzary filed a class and collective action overtime lawsuit in the United States District Court for the Southern District of New York, *Yuzary v. HSBC Bank USA, N.A., et al.*, No. 12 Civ. 3693 (PGG) ("*Yuzary*").  *Id.*  On June 8, 2012, Plaintiff Hauer filed a collective action overtime lawsuit in the United States District Court for the Southern District of Florida, *Hauer v. HSBC Bank USA, N.A., et al.*, No. 12 Civ. 61155 (KMW) ("*Hauer*").  *Id.*  In June 2012, Plaintiffs in *Mui*, *Yuzary*, and *Hauer* agreed to consolidate their claims in order to pool their resources and preserve judicial resources.  *Id.*

Before initiating their respective actions, Class Counsel in each case conducted thorough investigations.  Swartz Decl. ¶ 18.  This included investigation and legal research on the underlying merits of the class claims, the likelihood of obtaining liquidated damages and an extended FLSA statute of limitations, the proper measure of damages, and the likelihood of class certification.  *Id.*  Class Counsel also researched Defendants' likely affirmative defenses: the FLSA's administrative, outside sales, and highly-paid exemptions, and their counterparts under state law.  *Id.*

Both before and after filing, Class Counsel conducted in-depth interviews with approximately 50 Class Members who worked in all of the Covered Positions to determine hours worked, wages paid, the nature of their duties, and other relevant information.   Swartz Decl. ¶ 19.  Class Counsel also obtained and reviewed hundreds of pages of documents from their clients including pay stubs, compensation reports, compensation plans, offer letters, performance reviews, and job descriptions.  *Id.*  Class Counsel reviewed HSBC's SEC filings and other public documents to learn about HSBC's corporate structure and facilities, and obtained publicly-

available job postings to determine job duties and to support class certification.  *Id.*  They also

drafted a motion for conditional certification under the FLSA and obtained fourteen supporting

declarations from the named Plaintiffs and several opt-ins.  *Id.* ¶ 20.

Class Counsel also obtained documents and data from Defendants that helped Plaintiffs

evaluate the risks of the case and calculate damages.  Defendants produced comprehensive data

for over 2,000 Class Members, showing relevant job titles, average pay rates, incentive pay,

weeks worked, and locations.  *Id.* ¶ 21.  Defendants also produced documents showing branch

hours by location and several hundred pages of Plaintiffs' emails, as purported evidence of hours

worked.  *Id.*  Class Counsel also conducted a half-day interview with a high-level corporate

representative as part of the informal discovery process, which included questions regarding the

job titles at issue, the job duties of each position, compensation ranges, HSBC's compensation

policies, and hours worked.  *Id.*

After consolidation, the parties agreed to attempt to resolve the consolidated actions at

mediation with Michael Young, an experienced JAMS employment mediator.  *Id.* ¶ 22.  Class

Counsel did significant work to prepare for the mediation.  *Id.*  They held several pre-mediation

conference calls with the mediator, and hired a labor economist, Dr. David Crawford of Econsult

in Philadelphia, to process data and create damages models.  *Id.*  Dr. Crawford and his staff also

participated in the mediation by telephone, answering questions and providing analysis.  *Id.*

Class Counsel also submitted a detailed mediation statement, which explained the claims, noted

Defendants' vulnerabilities, acknowledged risk, and explained the damage calculations.  *Id.*

On August 22, 2012, the parties attended mediation at JAMS in New York, which began

at 9:30 a.m. and did not end until after 3:00 a.m. the following day.  *Id.* ¶ 23.  The parties made

progress toward a settlement and, during the next three months, exchanged more information and

ultimately reached an agreement on all terms, which they memorialized in the Settlement Agreement.  *Id.*

In performing these tasks, Class Counsel expended approximately 1,636 hours of attorney, paralegal, and staff member time – an aggregate lodestar of $651,043.  Swartz Decl. ¶¶ 6, 9; Lee Decl. ¶¶ 8-9; Shavitz Decl. ¶¶ 14-15; Schaffer Decl. ¶¶ 10-11.  These hours are reasonable for a case like this one and were compiled from contemporaneous time records maintained by each attorney, paralegal, and support staff participating in the case.   Swartz Decl. ¶ 7; Lee Decl. ¶ 12; Shavitz Decl. ¶ 18; Schaffer Decl. ¶ 14.  Class Counsel used a small team of attorneys at any one time in order to minimize duplication of efforts and maximize billing judgment and made every effort to have the work performed by the attorney or paralegal with the lowest hourly rate who was able to effectively perform it.   Swartz Decl. ¶ 6; Lee Decl. ¶ 11; Shavitz Decl. ¶ 17; Schaffer Decl. ¶ 13.

In addition, Class Counsel's agreement to consolidate the *Mui*, *Yuzary*, and *Hauer* cases into a single action eliminated substantial duplication and unnecessary litigation.  If the four law firms involved in this action had not voluntarily cooperated, the prosecution of the separate actions in different forums or in multi-district litigation would likely have resulted in substantially higher attorneys' fees and expenses, and potentially in prolonged disputes over the appointment of lead counsel and division of attorneys' fees as well.  *See, e.g.*, *In re Nigeria Charter Flights Litig.*, MD 2004-1613, 2011 WL 7945548 (E.D.N.Y. Aug. 25, 2011), *report and recommendation adopted*, No. 04 Civ. 304, 2012 WL 1886352 (E.D.N.Y. May 23, 2012), *appeal dismissed* (Sept. 17, 2012) (order granting attorneys' fees in MDL vacated and remanded, where law firm for other plaintiff disputed award of attorneys' fees only to class counsel); *In re Oil*

*Spill By Oil Rig Deepwater Horizon*, MDL 2179, 2013 WL 144042 (E.D. La. Jan. 11, 2013)

(multiple law firms involved in MDL attempted to collect fees from the fund).

Moreover, the requested fee is not based solely on time and effort already expended,

rather, it is also meant to compensate Class Counsel for time that will be spent administering the

settlement in the future.   Swartz Decl. ¶ 12; Lee Decl. ¶ 14; Shavitz Decl. ¶ 20; Schaffer Decl. ¶

16.  *See Beckman*, 2013 WL 1803736, at *14 ("Class Counsel is often called upon to perform

work after the final approval hearing, including answering class member questions, answering

questions from the claims administrator, and negotiating and sometimes litigating disagreements

with defendants about administering the settlement and distributing the fund"); *McMahon*, 2010

WL 2399328, at *8 ("The fact that Class Counsel's fee award will not only compensate them for

time and effort already expended, but for time that they will be required to spend administering

the settlement going forward also supports their fee request" of 33% of the fund) (citation

omitted); *Parker v. Jekyll & Hyde Entm't Holdings*, LLC, No. 08 Civ. 7670, 2010 WL 532960,

at *2 (S.D.N.Y. Feb. 9, 2010) ("[A]s class counsel is likely to expend significant effort in the

future implementing the complex procedure agreed upon for collecting and distributing the

settlement funds, the multiplier will diminish over time.").  In Class Counsel's experience,

administering class settlements of this nature and size requires a substantial and ongoing

commitment.   Swartz Decl. ¶ 12; Lee Decl. ¶ 14; Shavitz Decl. ¶ 20; Schaffer Decl. ¶ 16.  For

example, since the Notice was sent out, Class Counsel and staff have responded to numerous

Class Members' questions about the terms of the settlement and the amount of their settlement

award.  Swartz Decl. ¶ 12.  As is common in wage and hour class actions, Class Counsel expects

to respond to more Class Member inquiries after final approval, especially after checks are

issued.  Swartz Decl. ¶ 12; Lee Decl. ¶ 14; Shavitz Decl. ¶ 20; Schaffer Decl. ¶ 16.

### C.      **Magnitude and Complexity of the Litigation.**

The size and difficulty of the issues in a case are significant factors to be considered in making a fee award.  *Goldberger*, 209 F.3d at 50; *In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 912 F. Supp. 97, 100 (S.D.N.Y. 1996).  Courts have recognized that wage and hour cases involve complex legal issues.  "FLSA claims typically involve complex mixed questions of fact and law . . .  These statutory questions must be resolved in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981).

Among FLSA cases, the most complex type is the "hybrid" action brought here, where state wage and hour violations are brought as an "opt out" class action pursuant to Federal Rule of Civil Procedure 23 in the same action as the FLSA "opt in" collective action pursuant to 29 U.S.C. § 216(b).  *See Johnson*, 2011 WL 4357376, at *17.  "Because the same set of operative facts is being applied and analyzed under both statutory frameworks, justice is served and consistency and efficiency are achieved by having the litigation in one forum." *Id.* (citing *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 89 (S.D.N.Y. 2001)).

This case hinged on several mixed questions of fact and law.  In particular, the parties disputed the facts surrounding the job duties of employees in Covered Positions whom Plaintiffs alleged were misclassified under the FLSA and state law.  These mixed factual and legal questions support approval of Class Counsel's attorneys' fee request.  *See Sewell*, 2012 WL 1320124, at *12; *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 189 (W.D.N.Y. 2005) (mixed questions of fact and law supported court's award of attorneys' fees representing 40% of the common fund).

### D.      <u>Risk of Litigation.</u>

The risk of litigation is also an important factor in determining a fee award.  Uncertainty that an ultimate recovery will be obtained is highly relevant in determining the reasonableness of an award.  *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 470 (2d Cir. 1974), *abrogated by Goldberger,* 209 F.3d 43 (2d Cir. 2000).  "[D]espite the most vigorous and competent of efforts, success is never guaranteed."  *Id.* at 471.

Class Counsel undertook to prosecute this action without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of significant risk. Swartz Decl. ¶ 13; Lee Decl. ¶ 15; Shavitz Decl. ¶ 21; Schaffer Decl. ¶ 17.  Class and collective wage and hour cases of this type are, by their very nature, complicated and time-consuming. Swartz Decl. ¶ 13; Lee Decl. ¶ 15; Shavitz Decl. ¶ 21; Schaffer Decl. ¶ 17.  Any lawyer undertaking representation of large numbers of affected employees in such actions inevitably must be prepared to make a tremendous investment of time, energy, and resources.  Swartz Decl. ¶ 13; Lee Decl. ¶ 15; Shavitz Decl. ¶ 21; Schaffer Decl. ¶ 17.  Due also to the contingent nature of the customary fee arrangement, lawyers are asked to be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind.  Swartz Decl. ¶ 13; Lee Decl. ¶ 15; Shavitz Decl. ¶ 21; Schaffer Decl. ¶ 17.  Class Counsel stood to gain nothing in the event the case was unsuccessful.  Swartz Decl. ¶ 13; Lee Decl. ¶ 15; Shavitz Decl. ¶ 21; Schaffer Decl. ¶ 17.

Moreover, the circumstances of this case presented hurdles to a successful recovery. Plaintiffs' misclassification claim hinged on their ability to prove that workers in Covered Positions performed duties that made them eligible for overtime and therefore not exempt under the FLSA and relevant state laws.  Plaintiffs would have to overcome HSBC's defense that

Plaintiffs and Class Members were subject to the administrative, outside sales, and highly-paid exemptions to the FLSA, and the corresponding exemptions under applicable state laws. Defendants also asserted that Plaintiffs could not prove several of their claims under California law because they could not show that plaintiffs were actually injured by receiving incomplete wage statements or that HSBC had a policy or practice of making meal and rest breaks unavailable. Defendants also argued that HSBC's branch hours as well as Plaintiffs' emails did not support Plaintiffs' estimates of the number of hours they and Class Members worked.

While Plaintiffs believe that they could ultimately establish both liability and damages, this would require significant factual development. For example, after seven years of litigation and a five-week trial, a jury in a similar misclassification case involving financial services employees classified as exempt administrative employees reached a defense verdict, which was upheld by both the district court and the Sixth Circuit Court of Appeals. *Henry v. Quicken Loans, Inc.*, 698 F.3d 897 (6th Cir. 2012). Another similar misclassification case involving bank employees classified as exempt administrative and executive employees also reached a defense verdict after three years of litigation. *Bell v. Citizens Fin. Grp., Inc.*, No. 10 Civ. 320, Docket No. 260 (W.D. Pa. Apr. 21, 2013).

Furthermore, when taking on this case, Class Counsel faced the risk that the Court would not grant conditional certification under Section 216(b) of the FLSA or class certification under Rule 23, and such a determination would likely be reached only after extensive briefing. Defendant would likely have argued, both in its opposition to conditional and class certification and on a decertification motion, that individual questions preclude certification because differences among various job positions and branches and other individualized questions preclude class certification. Although Plaintiffs disagree with these arguments, defendants have

prevailed on arguments like these.  *See Beckman*, 2013 WL 1803736, at *11 (listing numerous

cases in the Southern District of New York where courts have denied Rule 23 motions and

decertified FLSA collectives in misclassification cases); *see also Marlo v. United Parcel Serv.,

Inc.*, 639 F.3d 942, 949 (9th Cir. 2011) (affirming decertification, citing "variations in job duties

that appear to be a product of employees working at different facilities, under different managers,

and with different customer bases"); *Myers v Hertz Corp.*, 624 F.3d 537, 549-51 (2d Cir. 2010)

(affirming denial of class certification in misclassification case based on evidence that class

members' duties varied by location); *Zivali v. AT&T Mobility, LLC*, 784 F. Supp. 2d 456, 470

(S.D.N.Y. 2011) (granting defendant's motion to decertify a FLSA collective action).

### E.    Quality of Representation.

"To determine the 'quality of the representation,' courts review, among other things, the

recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft v.

Ackermans*, No. 02 Civ. 7951, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007) (citing *In re

Global Crossing*, 225 F.R.D. at 467).

The recovery obtained was substantial.  Defendants agreed to pay a total of $15,625,000

to settle this litigation.  By Class Counsel's estimation, the settlement amount represents

approximately 95% of the class's lost wages ($16,371,163), assuming that Class Members

worked an average of 40 overtime weeks per year and 7.5 overtime hours per week,[3] if

Defendants were to prevail on a fluctuating workweek argument.  Swartz Decl. ¶ 25.  Even if

---

[3]    Class Counsel's estimate of 40 overtime weeks per year takes into account the number of
weeks in which there fell a bank holiday or in which Class Members likely took paid days off,
thus making it unlikely that they would have worked overtime in that week.  Swartz Decl. ¶ 25.
Defendants estimated even fewer overtime weeks.  *Id.*  In interviews Class Counsel conducted,
the Plaintiffs, opt-ins, and other Class Members reported working an average of 7.5 hours,
although Defendants disputed that figure as too high.  *Id.*  The maximum potential lost wages of
$58 million assumes that each Class Member is entitled to lost wages of $42 per overtime hour
worked, exclusive of interest and liquidated damages.  *Id.*

Plaintiffs defeated Defendants' fluctuating workweek argument, which would be contrary to the holdings of all of the Circuit Courts of Appeal that have considered the issue,[4] the settlement would still represent approximately 27% of the class's lost wages ($57,853,905).  *Id.* ¶ 26.  The settlement represents a substantial recovery for Class Members, particularly in light of the risks of litigation.  *Id.*  These risks included the risk of losing both collective and class certification, having a collective action decertified, losing on the merits, and losing on appeal, in addition to the risk of Defendants prevailing on a fluctuating workweek argument.  *Id.*

Here, Class Members will each receive an average net settlement payment (net of attorneys' fees and costs, service awards, claims administration fees, and reserve for errors and omissions) of approximately $4,600.  Cudworth Decl. ¶ 7.  This is substantially more than average settlement payments achieved in other comparable class action settlements involving similar job titles.  Swartz Decl. ¶ 27 (listing cases).  Weighing the benefits of the settlement against the available evidence and the risks associated with proceeding in the litigation, the settlement amount is reasonable.

Class Counsel has substantial experience prosecuting large-scale wage and hour class and collective actions.   Swartz Decl. ¶ 4 (listing cases); Lee Decl. ¶ 6 (listing cases); Shavitz Decl. ¶ 6 (listing cases); Schaffer Decl. ¶¶ 4-5 (listing cases).  Class Counsel's skill and experience litigating wage and hour cases were directly responsible for the favorable settlement and weigh in favor of granting the requested fees.  Swartz Decl. ¶ 5; Lee Decl. ¶ 7; Shavitz Decl. ¶ 13;

---

[4]      Although there is authority among district courts in this Circuit for applying time and a half in a misclassification case, *see, e.g.*, *Perkins v. S. New Eng. Tel. Co.*, No. 07 Civ. 967, 2011 WL 4460248, at *4 (D. Conn. Sept. 27, 2011), every federal appellate court that has considered the issue has endorsed the fluctuating workweek method of calculating damages.  *See Desmond v. PNGI Charles Town Gaming, LLC*, 630 F.3d 351, 356-57 (4th Cir. 2011); *Urnikis–Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 681-83 (7th Cir. 2010); *Clements v. Serco, Inc.*, 530 F.3d 1224, 1230-31 (10th Cir. 2008); *Valerio v. Putnam Assocs. Inc.*, 173 F.3d 35, 39-40 (1st Cir. 1999); *Blackmon v. Brookshire Grocery Co.*, 835 F.2d 1135, 1138-39 (5th Cir. 1988).

Schaffer Decl. ¶ 9; *Velez*, 2007 WL 7232783, at *7 (holding that "Lead Counsel's experience representing plaintiffs in class actions" supported a 33.33% contingency fee award); *Frank*, 228 F.R.D. at 189 (citing Class Counsel's experience as one factor supporting an attorneys' fee award of 40% of the fund).

     **F.**     **<u>Fee in Relation to the Settlement.</u>**

Courts also consider the size of the settlement to ensure that the percentage awarded does not constitute a "windfall." *See, e.g., In re Gilat Satellite Networks, Ltd.*, No. 02 Civ. 1510, 2007 WL 2743675, at *16 n.41 (E.D.N.Y. Sept. 18, 2007). "[T]he percentage used in calculating any given fee award must follow a sliding-scale and must bear an inverse relationship to the amount of the settlement." *Id.* (quoting *In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689, 2003 WL 22244676, at *6 (S.D.N.Y. Sept. 29, 2003)) (internal quotation marks omitted). Where the size of the fund is relatively small, courts typically find that requests for a greater percentage of the fund are reasonable. *See, e.g., In re Gilat Satellite Networks, Ltd.*, 2007 WL 2743675, at *16 n.41 (finding a 30% fee would not constitute a windfall "[g]iven the modest size of the [$20 million] settlement").

The size of the $15,625,000 settlement weighs in favor of granting the requested fee award of 31.7% of the common fund. Courts in this Circuit have routinely granted requests for one-third of the fund in cases with settlement funds similar to or substantially larger than this one. *See, e.g., Hernandez v. Merrill Lynch & Co.*, No. 11 Civ. 8472, 2013 WL 1209563, at *8-10 (S.D.N.Y. Mar. 21, 2013) (awarding 33% of a $7 million settlement in a FLSA and NYLL misclassification case); *Spicer v. Pier Sixty LLC,* No. 08 Civ.10240, 2012 WL 4364503, at *4 (S.D.N.Y. Sept. 14, 2012) (awarding 33% fee in $8.5 million settlement; lodestar multiplier of 3.36 approved); *Davis,* 827 F. Supp. 2d at 178, 187 (awarding 33% fee in $42 million settlement;

lodestar multiplier of 5.3 approved); *Willix*, 2011 WL 754862, at *6-7 (awarding one-third of $7.675 million settlement fund in FLSA and NYLL wage and hour action); *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106, at *8-9 (E.D.N.Y. Jan. 20, 2010) (awarding class counsel 33% of $9.25 million settlement fund in FLSA and multi-state wage and hour case); *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198, at *8-9 (S.D.N.Y. May 11, 2010) (awarding 33% of $6 million settlement fund in FLSA and multi-state wage and hour case); *Westerfield v. Washington Mut. Bank,* No. 06 Civ. 2817, 2009 WL 5841129 (E.D.N.Y. Oct. 8, 2009) (awarding 30% of $38 million settlement).

While courts sometimes apply a "sliding-scale" approach by lowering the percentage awarded in "megafund" cases, in order to prevent a windfall to plaintiffs' attorneys, the $15,625,000 fund in this case does not trigger such an issue.  *See In re Comverse Tech., Inc. Sec. Litig.*, No. 06 Civ. 1825, 2010 WL 2653354, at *3-4 (E.D.N.Y. June 24, 2010) (noting that some courts apply "sliding-scale" approach in megafund cases, but declining to apply it in case involving $225 million settlement); *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 1695, 2007 WL 4115808, at *7 (S.D.N.Y. Nov. 7, 2007) ("[A] fee of 30% of the $5.5 million settlement fund is consistent with fees awarded in . . . similar class action settlements of comparable value . . . [and] does not create a windfall."); *Taft*, 2007 WL 414493, at *10 ("Thirty percent of a larger settlement fund could constitute a windfall; however, a settlement fund of [$15.175 million] does not create such an issue."); *Hicks v. Stanley*, No. 01 Civ. 10071, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) ("A settlement amount of $10 million does not raise the windfall issue in the same way as would a $100 million settlement, and a 30% fee does not produce such a windfall.").  A fee of 31.7% of the Fund is reasonable and "consistent with the norms of class litigation in this circuit." *McMahon*, 2010 WL 2399328, at *7.

### G.   **Public Policy Considerations.**

Public policy considerations weigh in favor of granting Class Counsel's requested fees. In rendering awards of attorneys' fees, "the Second Circuit and courts in this district also have taken into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation."  *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d at 399.

The FLSA and the NYLL are remedial statutes designed to protect the wages of workers. *See A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945) (recognizing the FLSA's objective – ensuring that every employee receives "a fair day's pay for a fair day's work") (internal quotation marks and citation omitted).  Adequate compensation for attorneys who protect those rights by taking on such litigation furthers the remedial purpose of those statutes.  *Khait*, 2010 WL 2025106, at *8 ("Attorneys who fill the private attorney general role must be adequately compensated for their efforts.  If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk."); *Sand*, 2010 WL 69359, at *3 ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected.").

Courts have recognized that fee awards in cases like this serve the dual purposes of encouraging "private attorneys general" to seek redress for violations and discouraging future misconduct of a similar nature.  *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980); *McMahon*, 2010 WL 2399328, at *7; *Khait*, 2010 WL 2025106, at *8.  Class actions are also an invaluable safeguard of public rights.  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).  Particularly where, as here, the settlement fund is relatively small, an award of attorneys' fees ensures that "plaintiffs' claims [will] likely . . . be heard."  *Frank*, 228 F.R.D. at

189.  If courts denied sufficient attorneys' fees "no attorneys . . . would likely be willing to take on . . . small-scale class actions[.]"  *Id.*; *deMunecas*, 2010 WL 3322580, at *8; *Sand*, 2010 WL 69359, at *3.

Here, Class Counsel successfully negotiated a settlement agreement that obtains significant monetary compensation for Class Members, and that has resulted in new policies within HSBC's organization.  Swartz Decl. ¶¶ 27-28.  These considerations also weigh in favor of granting the fee request.  *Beckman*, 2013 WL 1803736, at *13 (33% fee award reasonable where settlement redressed substantial portion of monetary damage suffered by class members and resulted in new policies within defendant's organization).

## III.   THE LODESTAR CROSS CHECK FURTHER SUPPORTS AN AWARD TO CLASS COUNSEL OF 31.7% OF THE SETTLEMENT FUND

Following *Goldberger*, the trend in the Second Circuit has been to apply the percentage method and loosely use the lodestar method as a "baseline" or as a "cross check."  *Goldberger*, 209 F.3d at 50.  The Second Circuit "encourage[s] the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage."  *Id.* (internal citation omitted); *see also Parker*, 2010 WL 532960, at *2.  As part of the cross check, the lodestar is determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate.  *Hicks*, 2005 WL 2757792, at *8.  In calculating the lodestar for cross check purposes, the "hours documented by counsel need not be exhaustively scrutinized by the district court."  *Goldberger*, 209 F.3d at 50.  Rather, "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case . . . ."  *Id.*

Courts then consider whether a multiplier is warranted based on factors, such as: (1) the contingent nature of the expected compensation for services rendered; (2) the consequent risk of non-payment viewed as of the time of filing the suit; (3) the quality of representation; and (4) the

results achieved.  *In re Boesky Sec. Litig.*, 888 F. Supp. 551, 562 (S.D.N.Y. 1995); *see also*

*Goldberger*, 209 F.3d at 47; *Savoie*, 166 F.3d at 460; *Parker*, 2010 WL 532960, at *2.

 "Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some

cases, even higher multipliers."  *Beckman*, 2013 WL 1803736, at *13; *see also Vizcaino v.*

*Microsoft Corp.*, 290 F.3d 1043, 1052-54 (9th Cir. 2002) (listing nationwide class action

settlements where multiplier ranged up to 8.5 times); *Sewell*, 2012 WL 1320124, at *13 ("Courts

commonly award lodestar multipliers between two and six."); *In re Lloyd's Am. Trust Fund*

*Litig.*, No. 96 Civ. 1262, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002) (a "multiplier of

2.09 is at the lower end of the range of multipliers awarded by courts within the Second

Circuit"); s*ee, e.g., Steiner v. Am. Broad. Co.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007)

(multiplier of 6.85 "falls well within the range of multipliers that courts have allowed"); *Ramirez*

*v. Lovin' Oven Catering Suffolk, Inc.*, No. 11 Civ. 520, 2012 WL 651640, at *4 (S.D.N.Y. Feb.

24, 2012) (granting attorneys' fees equal to 6.8 times lodestar);  *Davis*, 827 F. Supp. 2d at 184-86

(awarding multiplier of 5.3 in wage and hour class action); *Buccellato v. AT&T Operations, Inc.*,

No. 10 Civ. 463, 2011 WL 3348055, at *2 (N.D. Cal. Jun. 30, 2011) (awarding multiplier of 4.3

in wage and hour class action); *New England Carpenters Health Benefits Fund v. First*

*Databank, Inc.*, No. 05 Civ. 11148, 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009) (awarding

multiplier of 8.3); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 803

(S.D. Tex. 2008) (awarding multiplier of 5.2); *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp.

2d 752, 768 (S.D. Ohio 2007) (awarding multiplier of six times); *In re Rite Aid Sec. Litig.*, 362 F.

Supp. 2d 587, 589-90 (E.D. Pa. 2005) (awarding multiplier of seven times); *Maley v. Del Global*

*Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. Jan. 29, 2002) ("modest multiplier" of 4.65 in

wage and hour class action was "fair and reasonable"); *In re RJR Nabisco, Inc. Sec. Litig.*, No.

88 Civ. 7905, 1992 WL 210138, at *5 (S.D.N.Y. Aug. 24, 1992) (awarding multiplier of 6);

*Cosgrove v. Sullivan*, 759 F. Supp. 166, 167 n. 1 (S.D.N.Y.1991) (awarding multiplier of 8.74).

Class Counsel's request for 31.7% of the Fund – $4,953,125 – is approximately 7.6 times

"lodestar."  While this multiplier is near the high end of the range of multipliers that courts have

allowed, "this should not result in penalizing [Class Counsel] for achieving an early settlement,

particular[ly] where, as here, the settlement amount is substantial."  *Beckman*, 2013 WL

1803736, at *14; *see also Wal-Mart Stores*, 396 F.3d at 121 ("[T]he lodestar create[s] an

unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and

compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits."); *Vizcaino*,

290 F.3d at 1050 n. 5 (noting that "the lodestar method does not reward early settlement" and

that "class counsel should [not] necessarily receive a lesser fee for settling a case quickly");

*Savoie*, 166 F.3d at 461 ("[T]he percentage-of-the-fund method also removes disincentives to

prompt settlement, because [Class Counsel], whose fee does not increase with delay, have no

reason to drag their feet.").

Moreover, "where 'class counsel will be required to spend significant additional time on

this litigation in connection with implementing and monitoring the settlement, the multiplier will

actually be significantly lower' because the award includes not only time spent prior to the

award, but after in enforcing the settlement."  *Sewell*, 2012 WL 1320124, at *13 (quoting

*Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207, 2010 WL 3119374, at *6 (S.D.N.Y.

Aug. 6, 2010)); *see also Beckman*, 2013 WL 1803736, at *14.  The multiplier that Class Counsel

seeks will diminish over time as Class Counsel spends additional time working on this case,

including preparing for and attending the final fairness hearing, answering class member

questions, answering questions from the claims administrator, and negotiating and possibly

litigating disagreements with Defendants about administering the settlement and distributing the fund. Swartz Decl. ¶ 12. In light of the fact that Class Counsel will likely perform substantial work after the final approval hearing, which will further reduce the lodestar multiplier, the 7.6 multiplier is "even more reasonable than it appears at first glance." *Beckman*, 2013 WL 1803736, at *14.

Finally, the lodestar cross-check should not discourage early settlements of class actions when they are warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere. *See id.* (approving early settlement); *Hernandez*, 2013 WL 1209563, at *5 (endorsing early settlement of wage and hour class action); *Castagna v. Madison Square Garden, L.P.*, No. 09 Civ. 10211, 2011 WL 2208614, at *6 (S.D.N.Y. Jun. 7, 2011) (commending plaintiffs' attorneys for negotiating early settlement); *In re Interpublic Sec. Litig.*, No. 02 Civ. 6527, 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004) (early settlements should be encouraged when warranted by the circumstances of the case). The parties here acted responsibly in reaching an early settlement. *See Hernandez*, 2013 WL 1209563, at *5; *In re Interpublic Sec. Litig.*, 2004 WL 2397190, at *12.

Class Counsel spent approximately 1,636 hours litigating and settling this matter. Swartz Decl. ¶ 6; Lee Decl. ¶ 8; Shavitz Decl. ¶ 14; Schaffer Decl. ¶ 10. The time spent by Class Counsel is described in Class Counsel's Declarations and Class Counsel's contemporaneous time records attached thereto. *See* Ex. A (O&G Fee Summary); Ex. B (O&G Time Records); Lee Decl., Ex. A (LLG Fee and Costs Summary); Lee Decl., Ex. B (LLG Time Records); Shavitz Decl., Ex. A (SLG Fee and Costs Summary); Shavitz Decl., Ex. B (SLG Time Records); Schaffer Decl., Ex. A (F&S Fee Summary); Schaffer Decl., Ex. B (F&S Time Records and Cost

Summary).  The hours worked by Class Counsel result in a lodestar of approximately $651,043.

Swartz Decl. ¶ 9; Lee Decl. ¶ 9; Shavitz Decl. ¶ 15; Schaffer Decl. ¶ 11.  Class Counsel's request

for approximately 7.6 times their lodestar is reasonable, particularly in light of the excellent

result achieved for the class.

## IV.    CLASS COUNSEL ARE ENTITLED TO REIMBURSEMENT OF EXPENSES UNDER THE SETTLEMENT AGREEMENT

Class Counsel request reimbursement of $33,155.56 in out-of-pocket expenses to be paid

from the Fund.  "Attorneys may be compensated for reasonable out-of-pocket expenses incurred

and customarily charged to their clients, as long as they were 'incidental and necessary to the

representation' of those clients."  *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d

180, 183 n.3 (S.D.N.Y. 2003) (internal citation and quotation marks omitted).  Here, Class

Counsel's actual expenses of $33,155.56 were incidental and necessary to the representation of

the Class.  Swartz Decl. ¶ 10; Lee Decl. ¶ 9; Shavitz Decl. ¶ 15; Schaffer Decl. ¶ 11.  These

expenses include court and process server fees, postage and courier fees, transportation, working

meals, photocopies, electronic research, expert fees, and Plaintiffs' share of the mediator's fees.

*Id.*, Ex. C (O&G Costs); Lee Decl., Ex. A (LLG Fee and Costs Summary); Shavitz Decl., Ex. A

(SLG Fee and Costs Summary); Schaffer Decl., Ex. B (F&S Time Records and Costs Summary).

## V.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their

Motion for Attorneys' Fees and Reimbursement of Expenses, and enter an Order: (i) awarding

attorneys' fees in the amount of $4,953,125, which represents 31.7% of the Fund; and (ii)

reimbursing $33,155.56 in out-of-pocket expenses that Class Counsel incurred in this action.

Dated: July 16, 2013
        New York, New York

Respectfully submitted,
**OUTTEN & GOLDEN LLP**

/s/ Justin M. Swartz
Justin M. Swartz
Jennifer L. Liu
Amber C. Trzinski
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000
Facsimile:  (212) 977-4005

**FITAPELLI & SCHAFFER, LLP**
Joseph A. Fitapelli
Brian S. Schaffer
Eric J. Gitig
475 Park Avenue South, 12th Floor
New York, New York 10016
Telephone:  (212) 300-0375

**LEE LITIGATION GROUP, PLLC**
C.K. Lee
Anne Seelig
30 East 39th Street, Second Floor
New York, NY 10016
Telephone: (212) 465-1180

**SHAVITZ LAW GROUP, P.A.**
Gregg I. Shavitz (admitted *pro hac vice*)
Susan H. Stern (admitted *pro hac vice*)
1515 S. Federal Highway, Suite 404
Boca Raton, Florida 33432
Telephone: (561) 447-8888

**Attorneys for Plaintiffs and the Class and Collective**