**FITAPELLI & SCHAFFER, LLP**
Joseph A. Fitapelli
Brian S. Schaffer
Eric J. Gitig
475 Park Avenue South, 12th Floor
New York, New York 10016
Telephone:  (212) 300-0375

**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Jennifer L. Liu
Amber C. Trzinski
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000

**LEE LITIGATION GROUP, PLLC**
C.K. Lee
Anne Seelig
30 East 39th Street, Second Floor
New York, NY 10016
Telephone: (212) 465-1180

**SHAVITZ LAW GROUP, P.A.**
Gregg I. Shavitz (admitted *pro hac vice*)
Susan H. Stern (admitted *pro hac vice*)
1515 S. Federal Hwy, Suite 404
Boca Raton, FL 33432
Telephone:  (561) 447-8888

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHARON YUZARY, JON RACOW, HENRY HU, MINA DIMETRY, TERON HAUGHTON, DANIEL HAUER, BILLY TZEWA MUI, CALVIN MAZLUMYAN, and KIM LEBLEU, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> -against- <br><br> HSBC BANK USA, N.A.; HSBC USA, INC.; and HSBC NORTH AMERICA HOLDINGS, INC. <br><br> Defendants. | No. 12 Civ. 3693 (PGG) |

## DECLARATION OF JUSTIN M. SWARTZ IN SUPPORT OF PLAINTIFFS' MOTION FOR APPROVAL OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES AND MOTION FOR APPROVAL OF SERVICE AWARDS

1

I, Justin M. Swartz, declare as follows:

1.      I am a partner in the firm of Outten & Golden LLP ("O&G") in New York, New York, Plaintiff's counsel herein, and co-chair of its Class Action Practice Group.  O&G is a 30+ attorney firm based in New York City that focuses on representing plaintiffs in a wide variety of employment matters, including individual and class action litigation that involve wage and hour, discrimination, and harassment claims, as well as contract and severance negotiations.

2.      Along with Fitapelli & Schaffer, LLP ("FLS"), Lee Litigation Group, PLLC ("LLG") Shavitz Law Group, P.A. ("SLG") (together with O&G, "Class Counsel"), I have been one of the lawyers primarily responsible for prosecuting Plaintiffs' claims on behalf of the proposed class.

3.      I make these statements based on personal knowledge and would so testify if called as a witness at trial.

**O&G's Experience**

4.      O&G has significant experience prosecuting wage and hour class and collective actions such as this one.  O&G is or was co-lead counsel on several wage and hour cases that district courts have certified as class actions and/or collective actions including *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. Sept. 29. 2006), in which the Court granted summary judgment in favor of Plaintiffs and a class of more than 300 grocery store workers, *see* 628 F. Supp. 2d 447 (S.D.N.Y. Aug. 28, 2008).  Others include *Beckman v. KeyBank, N.A.*, No. 12 Civ. 7863, 2013 WL 1803736, at *4 (S.D.N.Y. Apr. 29, 2013) (approving settlement of nationwide wage and hour class action); *Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472, 2013 WL 1209563, at *4 (S.D.N.Y. Mar. 21, 2013) (same); *Palacio v. E*Trade Fin. Corp.*, No. 10 Civ. 4030, 2012 WL 2384419, at *2 (S.D.N.Y. June 22,

2012) (same); *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *9

(S.D.N.Y. Apr. 16, 2012) (approving settlement of wage and hour class action brought under

New York and federal law); *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 1872405, at *1

(S.D.N.Y. May 17, 2011) (same); *Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271, 2011 WL

382200, at *3 (S.D.N.Y. Jan. 21, 2011) (same); *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143,

2010 WL 5509089, at *1 (E.D.N.Y. Nov. 29, 2010) (same); *Diaz v. Eastern Locating Serv. Inc.*,

No. 10 Civ. 4082, 2010 WL 2945556, at *2 (S.D.N.Y. July 22, 2010) (same); *Clark v. Ecolab*

*Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2009 WL 6615729, at *4 (S.D.N.Y. May

11, 2010) (approving settlement of nationwide wage and hour class action); *McMahon v. Olivier*

*Cheng Catering and Events, LLC*, No. 08 Civ. 8713, 2010 WL 2399328, at *3 (S.D.N.Y. Mar. 3,

2010) (approving settlement of wage and hour class action brought under New York and federal

law); *Westerfield v. Washington Mut. Bank*, Nos. 06 Civ. 2817, 08 Civ. 287, 2009 WL 6490084,

at *1-3 (E.D.N.Y. June 26, 2009) (approving settlement of nationwide wage and hour class

action); and *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 165 (S.D.N.Y. 2008) (granting

class certification and appointing O&G class counsel in multi-state wage and hour class action).

     5.     Class Counsel's experience was directly responsible for bringing about the

positive settlement and weighs in favor of granting the requested fees.

**Time Spent on the Litigation**

     6.     As of July 16, 2013, O&G has spent more than 764 hours litigating and settling

this litigation, including time spent by attorneys, paralegals, law clerks, and administrative

assistants.  Although O&G is relatively large for a plaintiffs' side employment law firm, a small

team of attorneys were utilized at any one time in order to minimize duplication of efforts and

maximize billing judgment.  O&G also made every effort to have work performed by the

attorney or paralegal with the lowest hourly rate who was able to perform the work effectively. Attached as **Exhibit A** are summaries of the time spent by each O&G attorney, paralegal, and support staff member as of July 16, 2013, and the costs incurred.  According to Class Counsel's declarations, as of July 16, 2013, Class Counsel's total hours spent on this litigation are 1,636.95.

7.     The hours reported are reasonable for a case of this complexity and size and were compiled from contemporaneous time records maintained by each attorney, paralegal, and support staff person participating in the case.

8.     Attached as **Exhibit B** are O&G's contemporaneous time records.

9.     As of July 16, 2013, O&G's total lodestar on the case was $282,950.50. According to Class Counsel's declarations, as of July 16, 2013, Class Counsel's total lodestar on the case was $651,043.00.  Class Counsel's request for 31.7% of the fund, or $4,953,125, is 7.6 times their lodestar.

10.     As of July 16, 2013, O&G has incurred approximately $30,321.05 in out-of-pocket costs prosecuting this litigation.  According to Class Counsel's declarations, as of July 16, 2013, Class Counsel has incurred approximately $33,155.56 in out-of-pocket costs prosecuting this litigation.  These costs were incidental and necessary to the prosecution of this lawsuit and include electronic research, court fees, court reporters, document hosting and retrieval, postage and courier fees, working meals, photocopies, telephone calls, travel, and Plaintiffs' portion of the mediator's fees.  A summary of O&G's itemized costs is attached as **Exhibit C**.

11.     In our experience, New York City law firms that represent plaintiffs in employment matters typically charge their clients at least one-third of their gross recoveries when they represent them on a contingency basis.  In Plaintiffs' retainer agreements with Class Counsel, Plaintiffs agreed that Class Counsel could apply to the Court for 33% of a class-wide

recovery and that they would pay Class Counsel 33% of any individual recovery.

12.     The requested attorneys' fees are not based solely on time and effort already expended; they are also meant to compensate Class Counsel for time that they will be required to spend administering the settlement in the future.  In our experience, administering class settlements of this nature and size requires a substantial and ongoing commitment.  For example, since the Notices were mailed, Class Counsel and staff have responded to dozens of inquiries from Class Members requesting information regarding the terms of the settlement and the amount of their settlement award.  Class Counsel expects to respond to more Class Member inquiries after final approval, especially after checks are issued.  Class Counsel also expects to spend additional time working on this case, including preparing for and attending the final fairness hearing, answering Class Member questions, answering questions from the claims administrator, and negotiating and possibly litigating disagreements with Defendants about administering the settlement and distributing the fund.

13.     Class Counsel undertook to prosecute this action without any assurance of payment for their services, litigating the case on a wholly contingent basis in the face of tremendous risk.  Wage and hour cases of this type are, by their very nature, complicated and time-consuming.  Lawyers undertaking representation of large numbers of affected employees in wage and hour actions inevitably must be prepared to make a tremendous investment of time, energy and resources.  Due also to the contingent nature of the customary fee arrangement, lawyers are asked to be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind.  Class Counsel stood to gain nothing in the event the case was unsuccessful.

14.     O&G ordinarily and regularly bills clients on an hourly fee basis, based upon each

attorney's standard hourly rate.  Currently, O&G's rates range from $550 to $1,000 per partner's hour, $575 to $650 per counsel's hour, $250 to $450 per associate's hour, $220 per law clerk's hour, and $170 to $215 per paralegal's hour.  The firm's clients regularly accept and pay O&G's hourly rates.

15.     Based upon O&G's records, in 2011, approximately 30% of the hours lawyers spent on client matters were billed to paying clients. There is no shortage of hourly work at O&G.  Thus, when O&G lawyers spend time on contingency matters, they do so at significant opportunity cost for the firm.  Indeed, O&G frequently turns away hourly matters, including hourly litigation matters, in order to enable its attorneys to work on contingency matters, primarily (though not exclusively) class actions.

16.     To date, Class Counsel has worked without compensation of any kind, and the fee has been wholly contingent upon the result achieved.

**History of Litigation**

17.     On February 7, 2012, Plaintiff Mui filed a lawsuit in the United States District Court for the Southern District of New York, *Mui v. HSBC Bank USA, N.A., et al.*, No. 12 Civ. 961 (BSJ)  ("*Mui*"), bringing FLSA collective action Rule 23 class claims under the NYLL.  On May 9, 2012, Plaintiff Yuzary filed a class and collective action overtime lawsuit in the United States District Court for the Southern District of New York, *Yuzary v. HSBC Bank USA, N.A., et al.*, No. 12 Civ. 3693 (PGG) ("*Yuzary*").  On June 8, 2012, Plaintiff Hauer filed a collective action overtime lawsuit in the United States District Court for the Southern District of Florida, *Hauer v. HSBC Bank USA, N.A., et al.*, No. 12 Civ. 61155 (KMW) ("*Hauer*").  In June 2012, Plaintiffs in *Mui*, *Yuzary*, and *Hauer* agreed to consolidate their claims in order to pool their resources and preserve judicial resources.

**Overview of Investigation**

18.     Before initiating their respective actions, Class Counsel in each case conducted

thorough investigations.  This included investigation and legal research on the underlying merits

of the class claims, the likelihood of obtaining liquidated damages and an extended FLSA statute

of limitations, the proper measure of damages, and the likelihood of class certification.  They

also researched Defendants' likely affirmative defenses: the FLSA's administrative, outside

sales, and highly-paid exemptions, and their counterparts under state law.

19.     Both before and after filing, Class Counsel conducted in-depth interviews with

approximately 50 Class Members who worked in all of the Covered Positions to determine hours

worked, wages paid, the nature of their duties, and other relevant information.   Class Counsel

also obtained and reviewed hundreds of pages of documents from their clients including pay

stubs, compensation reports, compensation plans, offer letters, performance reviews, and job

descriptions.  Class Counsel reviewed HSBC's SEC filings and other public documents to learn

about HSBC's corporate structure and facilities, and obtained publicly-available job postings to

determine job duties and to support class certification.

20.     Class Counsel also drafted a motion for conditional certification under the FLSA

and obtained fourteen supporting declarations from the named Plaintiffs and several opt-ins.

21.     Class Counsel also obtained documents and data from Defendants that helped

Plaintiffs evaluate the risks of the case and calculate damages.  Defendants produced

comprehensive data for over 2,000 Class Members, showing relevant job titles, average pay

rates, incentive pay, weeks worked, and locations.  Defendants also produced documents

showing branch hours by location and several hundred pages of Plaintiffs' emails, as purported

evidence of hours worked.  Class Counsel also conducted a half-day interview with a high-level

corporate representative as part of the informal discovery process, which included questions

regarding the job titles at issue, the job duties of each position, compensation ranges, HSBC's

compensation policies, and hours worked.

**Settlement Negotiations**

22.     After consolidation, the parties agreed to attempt to resolve the consolidated

actions at mediation with Michael Young, an experienced JAMS employment mediator.  Class

Counsel did significant work to prepare for the mediation.  They held several pre-mediation

conference calls with the mediator, and hired a labor economist, Dr. David Crawford of Econsult

in Philadelphia, to process data and create damages models.  Dr. Crawford and his staff also

participated in the mediation by telephone, answering questions and providing analysis.  Class

Counsel also submitted a detailed mediation statement, which explained the claims, noted

Defendants' vulnerabilities, acknowledged risk, and explained the damage calculations.

23.     On August 22, 2012, the parties attended mediation at JAMS in New York, which

began at 9:30 a.m. and did not end until after 3:00 a.m. the following day.  The parties made

progress toward a settlement and, during the next three months, exchanged more information and

ultimately reached an agreement on all terms, which they memorialized in the Settlement

Agreement.  A true and correct copy of the Settlement Agreement is attached hereto as **Exhibit

D**.

24.     At all times during the settlement negotiation process, negotiations were vigorous

and conducted on an arm's-length basis.

**The Settlement Fund**

25.     By Plaintiffs' Counsel's estimation, the $15,625,000 settlement represents

approximately 95% of the class's lost wages ($16,371,163), assuming that Class Members

worked an average of 40 overtime weeks per year and 7.5 overtime hours per week, if

Defendants were to prevail on a fluctuating workweek argument.  This estimate of 40 overtime

weeks per year takes into account the number of weeks in which there fell a bank holiday or in

which Class Members likely took paid days off, thus making it unlikely that they would have

worked overtime in that week.  Defendants estimated even fewer overtime weeks.  In interviews

with Plaintiffs' Counsel, Plaintiffs, opt-ins, and other Class Members reported working an

average of 7.5 hours, although Defendants disputed that figure as too high.  The maximum

potential lost wages of $58 million assumes that each Class Member should have been entitled to

lost wages of $42 per overtime hour worked, exclusive of interest and liquidated damages.

26.     Even if Plaintiffs defeated Defendants' fluctuating workweek argument, the

settlement would still represent approximately 27% of the class's lost wages ($57,853,905).  The

settlement represents a substantial recovery for Class Members, particularly in light of the risks

of litigation.  These risks included the risk of losing both collective and class certification,

having a collective action decertified, losing on the merits, and losing on appeal, in addition to

the risk of Defendants prevailing on a fluctuating workweek argument.

27.     Here, Class Members will each receive an average net settlement payment (net of

attorneys' fees and costs, service awards, claims administration fees, and reserve for errors and

omissions) of approximately $4,600.  This is substantially more than average settlement

payments achieved in other comparable class action settlements involving similar job titles.  *See,

e.g.*, *Beckman*, 2013 WL 1803736 (average net settlement payment of approximately $1,500 in

nationwide misclassification case involving bank employees); *Hernandez*, 2013 WL 1209563

(average net settlement payment of $2,918 in nationwide misclassification case involving retail

brokerage employees); *Palacio*, 2012 WL 2384419 (average net settlement payment of

approximately $2,000 in nationwide misclassification case involving retail brokerage employees).

28.     According to Class Members who have contacted Class Counsel since the execution of the Settlement Agreement, Defendants have reclassified employees in the Covered Positions as non-exempt employees eligible for overtime.

**Plaintiffs' Motion for Preliminary Approval**

29.     On November 26, 2012, Plaintiffs filed their Motion for Preliminary Approval. On April 29, 2013, the Court granted Plaintiffs' Motion for Preliminary Approval.

**Efforts of the Named Plaintiffs**

30.     Named Plaintiffs Sharon Yuzary, Jon Racow, Henry Hu, Mina Dimetry, Teron Haughton, Daniel Hauer, Billy Tzewa Mui, Calvin Mazlumyan, and Kim LeBleu ("Named Plaintiffs") have made important contributions to the prosecution and fair resolution of this action on behalf of Class Members.

31.     The named Plaintiffs assisted Class Counsel's investigation and prosecution of the claims by providing Class Counsel with detailed factual information regarding their job duties, HSBC's policies, and other information relevant to their claims, assisting with the preparation and review of the complaint, and regularly making themselves available to communicate with Class Counsel when necessary, including throughout the mediation.  Each of the named Plaintiffs also prepared and executed a declaration attesting to their hours worked, job duties, and other relevant information.

32.     The named Plaintiffs also helped gather support for the case by informing other Class Members about the case and their right to participate in it.  They also helped disseminate important information and updates to Class Members throughout the case.

10

**Claims Administration**

33.     The parties jointly selected Kurtzman Carson Consultants LLC ("Claims Administrator"), an experienced wage and hour claims administrator, to administer the settlement.

34.     Although the Settlement Agreement allows Class Counsel to seek up to one-third of the Fund for attorneys' fees, Class Counsel has voluntarily reduced their request to 31.7% to absorb the shortfall in funds caused by Defendants' inadvertent omission of several dozen Class Members from the initial data provided to the Claims Administrator and under-calculation of other Class Members' awards.  Attached as **Exhibit E** is a copy of Class Counsel's July 15, 2013 letter to the Court addressing these data issues.

35.     Attached as **Exhibit F** is the Declaration of Jenny Cudworth, dated July 16, 2013, who supervised the administration of the settlement notices in this case ("Cudworth Declaration").

I declare under penalty of perjury, under 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed this 16th day of July, 2013
New York, New York.

 /s/ Justin M. Swartz
Justin M. Swartz
**Outten & Golden LLP**
3 Park Avenue, 29th Floor
New York, NY 10016
(212) 245-1000

11