# EXHIBIT D

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHARON YUZARY, JON RACOW, HENRY HU, MINA DIMETRY, TERON HAUGHTON, DANIEL HAUER, BILLY TZEWA MUI, CALVIN MAZLUMYAN, and KIM LEBLEU, on behalf of themselves and all others similarly situated, | No. 12 Civ. 3693 (PGG) |
| Plaintiffs, | **JOINT STIPULATION OF SETTLEMENT AND RELEASE** |
| -against- | |
| HSBC BANK USA, N.A.; HSBC USA, INC.; and HSBC NORTH AMERICA HOLDINGS, INC. | |
| Defendants. | |

This Joint Stipulation of Settlement and Release (the "Agreement") is entered into by and between Sharon Yuzary, Jon Racow, Henry Hu, Mina Dimetry, Teron Haughton, Daniel Hauer, Billy Tzewa Mui, Calvin Mazlumyan, and Kim LeBleu (collectively the "Named Plaintiffs"), individually and on behalf of the classes of individuals that they seek to represent ("Class Members"), as well as opt-in the plaintiffs (collectively with Named Plaintiffs and Class Members, the "Plaintiffs") and HSBC Bank USA, N.A., HSBC USA, Inc., and HSBC North America Holdings, Inc. (collectively "HSBC" or "Defendants") (together with Plaintiffs, the "Parties").

### RECITALS

WHEREAS, on February 7, 2012, Plaintiff Billy Tzewa Mui ("Mui") filed a class and collective action lawsuit in the United States District Court for the Southern District of New York, No. 12 Civ. 961 (BSJ), captioned *Mui v. HSBC Bank USA, N.A., et al.*, on behalf of current and former employees who engaged in inside sales and/or promotional activities with HSBC's retail clients (including Consumer Bankers and Branch Relationship Bankers), in which he claimed that Defendants owe them overtime compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §216(b), and also asserted Rule 23 class claims against Defendants under the wage and hour laws of New York for the alleged failure to pay them overtime compensation ("*Mui*");

WHEREAS, on May 9, 2012, Plaintiff Sharon Yuzary ("Yuzary") filed a class and collective action lawsuit in the United States District Court for the Southern District of New York, No. 12 Civ. 3693 (PGG), captioned *Yuzary v. HSBC Bank USA, N.A., et al.*, on behalf of current and former Premier Relationship Managers, Personal Banking Officers, Business Banking Specialists, and Small Business Specialists, in which she claimed that Defendants owe them overtime compensation under the FLSA, and also asserted Rule 23 class claims against Defendants under the wage and hour laws of New York for the alleged failure to pay them overtime compensation ("*Yuzary*" or the "Litigation");

RESTRICTED

WHEREAS, on June 20, 2012, Plaintiff Yuzary filed a first amended class and collective action complaint in *Yuzary*, adding Jon Racow ("Racow"), Henry Hu ("Hu"), Mina Dimetry ("Dimetry"), and Teron Haughton ("Haughton") as named plaintiffs and Rule 23 class claims under the wage and hour laws of New Jersey and Connecticut, and further amending the complaint to include current and former Branch Relationship Bankers;

WHEREAS, on June 8, 2012, Plaintiff Daniel Hauer ("Hauer") filed a collective action lawsuit in the United States District Court for the Southern District of Florida, No. 12 Civ. 61155 (KMW), captioned *Hauer v. HSBC Bank USA, N.A., et al.*, on behalf of current and former Relationship Bankers, Relationship Managers, and Premier Relationship Managers, in which he claimed that Defendants owe them overtime compensation under the FLSA ("*Hauer*");

WHEREAS, on July 20, 2012, Mui and the defendants in *Mui* entered into a stipulation voluntarily dismissing the action without prejudice, which was so ordered by the Court on July 27, 2012, and Hauer and the defendants in *Hauer* entered into a stipulation voluntarily dismissing the action without prejudice, which was so ordered by the Court on July 23, 2012;

WHEREAS, on August 15, 2012, Plaintiffs filed a second amended class and collective action complaint in *Yuzary*, adding Mui and Hauer as named plaintiffs, and further amending the complaint to include current and former Consumer Bankers;

WHEREAS, on October 17, 2012, Plaintiffs filed a third amended class and collective complaint in Yuzary, adding Calvin Mazlumyan ("Mazlumyan") and Kim LeBleu ("LeBleu") as named plaintiffs and Rule 23 class claims under the wage and hour laws of California, and further amended the complaint to exclude current and former Consumer Bankers;

WHEREAS, the purpose of this Agreement is to settle fully and finally all Released Claims (as hereinafter defined) between Plaintiffs and Defendants, including all claims asserted in the Litigation; and

WHEREAS, Defendants deny all of the allegations made by Named Plaintiffs in the Litigation and deny that they are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation. Nonetheless, without admitting or conceding any liability or damages whatsoever, Defendants have agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation; and

WHEREAS, on or around July 20, 2012, Named Plaintiffs and Defendants agreed to toll the limitations period for putative class members to file consents to join pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b) from April 27, 2012 until August 22, 2012, and on July 22, 2012, the Court so ordered such stipulation; and

WHEREAS, on or around July 20, 2012, Named Plaintiffs and Defendants agreed to toll the limitations period for class claims arising under the New York Labor Law to the same extent those claims were tolled by the filling of *Mui*, and on July 22, 2012, the Court so ordered such stipulation; and

WHEREAS, on August 22, 2012, the Parties participated in a mediation session of this matter in New York, New York, which was conducted by experienced JAMS mediator Michael Young, and after subsequent negotiations, including multiple conversations and another in-person negotiating session, subsequently reached an accord resulting in this Agreement; and

WHEREAS, without admitting or conceding any liability or damages whatsoever, Defendants agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation; and

WHEREAS, Plaintiffs' Counsel analyzed and evaluated the merits of the claims made against Defendants in the Litigation, conducted interviews with putative class and collective members, conducted an informal 30(b)(6) interview of Defendants' corporate representative, obtained and reviewed documents relating to Defendants' compensation policies, and analyzed payroll data and time records, and based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of litigation, including the possibility that the Litigation, if not settled now, might not result in any recovery or might result in a recovery less favorable, and that any recovery would not occur for several years, and that there was a risk of future decertification if certification was granted, Plaintiffs' Counsel are satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the Plaintiffs.

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

## 1.    DEFINITIONS

The defined terms set forth in this Agreement have the meanings ascribed to them below.

1.1    **Agreement.**  "Agreement" means this Joint Stipulation of Settlement and Release.

1.2    **Acceptance Period.**  "Acceptance Period" means the 90 days that a Class Member has to sign and cash a Settlement Check.

1.3    **Charity.**  "Charity" means the National Employment Law Project.

1.4    **Class Counsel.**  "Class Counsel" or "Plaintiffs' Counsel" means Outten & Golden LLP; Fitapelli & Schaffer, LLP; Lee Litigation Group PLLC; and Shavitz Law Group, P.A.

1.5    **Class Members.**  "Class Members" are the FLSA Class Members and the Rule 23 Class Members.

1.6    **Court.**  "Court" means the United States District Court for the Southern District of New York, the Honorable Paul G. Gardephe presiding.

1.7    **Covered Positions.**  "Covered Positions" refers to Premier Relationship Managers, Branch Relationship Bankers, Personal Bankers, Business Banking Specialists, Small

Business Specialists, and substantially similar positions in HSBC's branches with comparable titles according to HSBC's business records, which were classified as exempt.

1.8 **Days.** "Days" means business days if the specified number is less than 10, and calendar days if the specified number is 10 or greater.

1.9 **Defendants.** "Defendants" means HSBC Bank USA, N.A., HSBC USA, Inc., and HSBC North America Holdings, Inc..

1.10 **Defendants' Counsel.** "Defendants' Counsel" means Allan S. Bloom of Paul Hastings LLP. For purposes of providing any notices required under this Agreement, Defendants' Counsel shall refer to Allan S. Bloom.

1.11 **Effective Date.** "Effective Date" shall be the last of the following dates:

(A) If there is no appeal of the Court's Order Granting Final Approval of the Settlement, the day after the deadline for taking an appeal has passed; or

(B) If there is an appeal of the Court's Order Granting Final Approval of the Settlement, the day after all appeals are resolved in favor of final approval.

1.12 **Employer Payroll Taxes.** "Employer Payroll Taxes" means all taxes and withholdings an employer is required to make arising out of or based upon the payment of employment compensation in this Litigation, including FICA, FUTA, and SUTA obligations.

1.13 **Fairness Hearing.** "Fairness Hearing" means the hearing before the Court relating to the Motion for Final Approval.

1.14 **Final Approval Order.** "Final Approval Order" means the Order entered by the Court after the Fairness Hearing, approving the terms and conditions of this Agreement, distribution of the Settlement Checks and Service Awards, and Dismissal of the Litigation.

1.15 **FLSA Class Members.** "FLSA Class Members" means all individuals who were employed in Covered Positions during the period from May 9, 2009 through November 15, 2012.

1.16 **Gross Settlement Amount.** "Gross Settlement Amount" means the Fifteen Million Six Hundred Twenty-Five Thousand and No/100ths Dollars ($15,625,000.00), which Defendants have agreed to pay to the Settlement Claims Administrator to settle the Litigation as set forth in this Agreement.

1.17 **Litigation.** "Litigation," as set forth in the Introduction, means the claims represented in the Third Amended Complaint alleging violations of the FLSA and the wage and hour laws of New York, California, Connecticut, and New Jersey captioned *Yuzary, et al., v. HSBC Bank USA, N.A., et al.,* No. 12 Civ. 3693 (PGG).

1.18 **Named Plaintiffs.** "Named Plaintiffs," as set for in the Introduction, means Sharon Yuzary, Jon Racow, Henry Hu, Mina Dimetry, Teron Haughton, Daniel Hauer, Billy Tzewa Mui, Calvin Mazlumyan, and Kim LeBleu.

1.19 **Net Settlement Fund.** "Net Settlement Fund" means the remainder of the Gross Settlement Amount after deductions for: (1) the Settlement Claim Administrator's fees and costs; (2) Court-approved attorneys' fees and costs for Class Counsel; (3) Court-approved Service Awards to Named and Opt-in Plaintiffs as more specified herein; and (4) a $60,000.00 reserve fund to cover errors and omissions.

1.20 **Notice or Notices.** "Notice" or "Notices" means the Court-approved Notice of Proposed Settlement of Class Action and Collective Action Lawsuit and Fairness Hearing and the Court-approved Notice of Proposed Settlement of FLSA Collective Action Lawsuit and Fairness Hearing.

1.21 **Objector.** "Objector" means an individual who files an objection to this Agreement, and does not include any individual who opts-out of this Agreement.

1.22 **Opt-in Plaintiffs.** "Opt-in Plaintiffs" means those individuals who filed consent-to-join forms in the Litigation and those individuals who opt into the Litigation by negotiating their Settlement Checks before the end of the ninety (90) day Acceptance Period, and who do not timely opt out of the Litigation pursuant to this Agreement.

1.23 **Opt-out Statement.** "Opt-out Statement" is a written signed statement that an individual Rule 23 Class Member has decided to opt out and not be included in this Agreement.

1.24 **Parties.** "Parties," as set forth in the Introduction, shall mean, collectively, Named Plaintiffs, Opt In Plaintiffs, Rule 23 Class Members, FLSA Class Members, and Defendants.

1.25 **Plaintiffs.** "Plaintiffs" shall mean Named Plaintiffs, Opt In Plaintiffs, Rule 23 Class Members, and FLSA Class Members.

1.26 **Preliminary Approval Order.** "Preliminary Approval Order" means the Order entered by the Court preliminarily approving the terms and conditions of this Agreement, and directing the manner and timing of providing Notices to the Class Members.

1.27 **Qualified Settlement Fund or QSF.** "Qualified Settlement Fund" or "QSF" means the account established by the Settlement Claims Administrator for the Settlement Amount paid by Defendant. The QSF will be controlled by the Settlement Claims Administrator subject to the terms of this Agreement and the Court's Orders for Preliminary Approval and Final Approval. Interest, if any, earned on the QSF will become part of the Settlement Amount.

1.28 **Rule 23 Class Members; State Sub-Classes.** "Rule 23 Class Members" are individuals who were employed in Covered Positions who fit within the definitions set forth in subparagraphs (A) through (D) below (the "State Sub-Classes").

RESTRICTED                              - 5-

(A)   **New York Class Members.** "New York Class Members" means all individuals who were employed in Covered Positions in the State of New York from February 7, 2006 through November 15, 2012 (the "New York Class Period").

(B)   **California Class Members.** "California Class Members" means all individuals who were employed in Covered Positions in the State of California from May 9, 2008 through November 15, 2012 (the "California Class Period").

(C)   **Connecticut Class Members.** "New Jersey Class Members" means all individuals who were employed in Covered Positions in the State of New Jersey during the period from May 9, 2010 through November 15, 2012 (the "Connecticut Class Period").

(D)   **New Jersey Class Members.** "New Jersey Class Members" means all individuals who were employed in Covered Positions in the State of New Jersey during the period from May 9, 2010 through November 15, 2012 (the "New Jersey Class Period").

1.29   **Settlement Award.** The "Settlement Award" is the portion of the Net Settlement Fund attributable to each Class Member based on the allocation formula for work weeks in a Covered Position during the relevant Class Period(s) as described in Paragraph 3.4 herein.  Work weeks shall be calculated using HSBC's business records.

1.30   **Settlement Claims Administrator.** The "Settlement Claims Administrator" will be Kurtzman Carson Consultants, which was selected by Class Counsel and approved by Defendants.  The Settlement Claims Administrator's fees shall be borne by the QSF. Class Counsel will attempt to negotiate with the Settlement Claims Administrator a reasonable flat fee for administration of the settlement.  If Class Counsel is unable to negotiate what it believes to be a reasonable flat fee by the time of preliminary approval of the settlement, the Parties will select another settlement administrator candidate, with whom Class Counsel will attempt to negotiate a reasonable flat fee.

1.31   **Settlement Checks.** "Settlement Checks" means checks issued to Class Members for their share of the Net Settlement Fund calculated in accordance with this Agreement.

2.   **APPROVAL AND CLASS NOTICE**

2.1   **Binding Agreement.** This Agreement is a binding agreement and contains all material agreed-upon terms for the Parties to seek a full and final settlement of the Litigation.

2.2   **Retention of the Settlement Claims Administrator.** Class Counsel will be responsible for selecting and retaining the Settlement Claims Administrator.  The Settlement Claims Administrator will be responsible for all aspects of the claims administration process, including:  locating Class Members; calculating Class Members' Settlement Awards based on Defendants' business records; responding to Class Member inquiries; resolving disputes relating to Class Members' workweeks worked and Settlement Awards; promptly reporting to the Parties the substance and status of any challenges or disputes raised by Class Members; mailing Notices to Class Members in accordance with the

Court's Preliminary Approval Order; distributing Service Awards to Named Plaintiffs; distributing Settlement Checks withholding Class Members' share of taxes and remitting such taxes to the appropriate taxing authorities; providing the original Settlement Checks signed by the Class Members to Defendants' Counsel; providing copies of the Settlement Checks to Class Counsel for filing with the Court; preparing a declaration regarding its due diligence in the claims administration process; and performing such other duties as the Parties may jointly direct or as are specified herein.

(A)    The Parties will have equal access to the Settlement Claims Administrator and all information related to the administration of the settlement. The Settlement Claims Administrator will provide weekly reports to the Parties regarding the status of the mailing of the Notices to Class Members; the claims administration process (including the number of Opt-out Statements received, as well as the percentage of the Net Settlement Fund that was apportioned to the Class Members who submitted Opt-out Statements); the substance and status of disputes raised by Class Members regarding the calculation of Settlement Awards; and distribution of the Settlement Checks.

(B)    In the event of a dispute of a Class Member's Settlement Award or work weeks worked, the Settlement Claims Administrator shall promptly report the nature of the dispute to Class Counsel and Defendants' Counsel, who will confer in good faith with the Settlement Claims Administrator in an effort to resolve the dispute. In the event counsel are unable to reach agreement, the Settlement Claims Administrator shall decide the dispute, and its decision shall be final.

(C)    Defendants agree to cooperate with the Settlement Claims Administrator, provide accurate information necessary to calculate the amounts of the Settlement Checks, assist the Settlement Claims Administrator in locating Class Members, and provide other information related to the administration of the settlement.

## 2.3    Preliminary Approval Motion.

(A)    Within twenty-one (21) days after the execution of this Agreement, Plaintiffs will file the Preliminary Approval Motion. In connection with the Preliminary Approval Motion, Plaintiffs will submit to the Court a proposed Notice of Settlement of Class and Collective Action Lawsuit and Fairness Hearing in the form attached hereto as Exhibit A; a proposed Notice of Settlement of Collective Action Lawsuit and Fairness Hearing in the form attached hereto as Exhibit B; a proposed distribution method for the Settlement Amount and calculation of the Settlement Checks as described in Paragraph 3.4 herein; and a proposed Preliminary Approval Order.

(B)    The proposed Preliminary Approval Order will include the findings required by Federal Rule of Civil Procedure 23(a) and 23(b)(3). The Preliminary Approval Motion also will seek the setting of date(s) for individuals to opt out of this Agreement, or provide objections to this Agreement, which date will be

thirty (30) days from the mailing of the Notice to the Class Member but no later than sixty (60) days from the Preliminary Approval Order, and for a Fairness Hearing for Final Approval of the settlement before the Court at the earliest practicable date.

(C)     In the Preliminary Approval Motion, Class Counsel will inform the Court of the intended process to obtain a "Final Approval Order" and a "Judgment of Dismissal" that will, among other things: (1) approve the settlement as fair, adequate and reasonable; (2) incorporate the terms of the Release, as described herein; (3) dismiss the Litigation with prejudice; (4) award Class Counsel fees and costs; and (5) award Service Awards to Named Plaintiffs as more fully set forth herein.  Defendants will not oppose the Preliminary Approval Motion.

(D)     If the Court denies the Preliminary Approval Motion, unless the Parties jointly agree to seek reconsideration of the ruling or to seek Court approval of a renegotiated settlement, the Litigation will resume as if no settlement had been attempted.  Defendants retain the right to contest whether the Litigation should be certified and maintained as a collective and/or class action and to contest the merits of the claims being asserted in the Litigation.

(E)     The Parties will work together, diligently and in good faith, to obtain expeditiously a Preliminary Approval Order, Final Approval Order, and Final Judgment and Dismissal.

**2.4     Notice to Class Members**

(A)     Within ten (10) days of the Court's issuance of a Preliminary Approval Order, Defendants will provide the Settlement Claims Administrator, in electronic form, for all Class Members the following information:  name, Social Security Number, last known addresses, telephone numbers, dates of employment, job titles, with dates, and workweeks within the applicable liability periods set forth in paragraphs 1.15 and 1.28 above as that information exists on file with Defendants ("Class List").  The parties share a mutual interest in maximizing participation in the settlement.  If, in the view of the parties, participation in the settlement is not robust and/or in event the Claims Administrator is not able to obtain current contact information for class members whose notices are returned as undeliverable, the parties will cooperate in addressing the issue, including discussing whether to provide the Claims Administrator with supplemental information and to ask the claims administrator to engage in additional outreach efforts.  Nothing in this provision restricts Defendants' rights pursuant to Section 3.6 herein.

(B)     Within twenty (20) days of the Court's issuance of the Preliminary Approval Order, the Settlement Claims Administrator will mail to all Rule 23 Class Members, via First Class United States Mail, postage prepaid, the Court-approved Notice of Settlement of Class and Collective Action Lawsuit and Fairness Hearing.

(C)    Within twenty (20) days of the Court's issuance of the Preliminary Approval Order, the Settlement Claims Administrator will mail to all FLSA Class Members who are not also Rule 23 Class Members, via First Class United States Mail, postage prepaid, the Court-approved Notice of Settlement of Collective Action Lawsuit and Fairness Hearing.

(D)    The Settlement Claims Administrator will take reasonable steps to obtain the correct address of any Class Members for whom a Notice is returned by the post office as undeliverable and shall attempt re-mailings as described in this Agreement. The Settlement Claims Administrator will notify Class Counsel and Defendants' Counsel of any Notice sent to a Class Member that is returned as undeliverable after the first mailing, as well as any such Notice returned as undeliverable after any subsequent mailing(s) as set forth in this Agreement.

## 2.5    Rule 23 Class Member Opt-outs.

(A)    Rule 23 Class Members who choose to opt out of the settlement as set forth in this Agreement must mail via First Class United States Mail, postage prepaid, a written, signed statement to the Settlement Claims Administrator that states he or she is opting out of the settlement, and include his or her name, job title, address, and telephone numbers and states, "I opt out of the HSBC wage and hour settlement" ("Opt-out Statement"). To be effective, an Opt-out Statement must be postmarked within thirty (30) days from the mailing of the Notice to the Class Member and no later than sixty (60) days from the Preliminary Approval Order.

(B)    Rule 23 Class Members whose first mailing was returned to the Settlement Claims Administrator as undeliverable will be allowed to opt out or object up to thirty (30) days from the date of the second mailing but no later than sixty (60) days from the Preliminary Approval Order. The Settlement Claims Administrator shall not attempt more than two (2) mailings of the Notice to any Class Member, and no mailing shall occur more than thirty (30) days after the first mailing to Class Members.

(C)    The Settlement Claims Administrator shall keep accurate records of the dates on which it sends Notices to Rule 23 Class Members.

(D)    The Settlement Claims Administrator will stamp the postmark date on the original of each Opt-out Statement that it receives and shall serve copies of each Opt-out Statement on Class Counsel and Defendants' Counsel not later than three (3) days after receipt thereof. The Settlement Claims Administrator will also, within three (3) days of the end of the Opt-out Period, provide to Class Counsel, who will promptly file with the Clerk of Court, stamped copies of any Opt-out Statements. The Settlement Claims Administrator will, within twenty-four (24) hours of the end of the Opt-out Period, send a final list of all Opt-out Statements to Class Counsel and Defendants' Counsel by both email and overnight delivery. The Settlement Claims Administrator will retain the

stamped originals of all Opt-out Statements and originals of all envelopes accompanying Opt-out Statements in its files until such time as the Settlement Claims Administrator is relieved of its duties and responsibilities under this Agreement.

(E)  Any Rule 23 Class Member who does not properly submit an Opt-out Statement pursuant to this Agreement, will be deemed to have accepted the settlement and the terms of this Agreement and will be issued a Settlement Check, which will contain a release of both their FLSA and state law claims, and a consent-to-join the Litigation, as set forth in this Agreement.

**2.6    Objections to Settlement.**

(A)  Rule 23 Class Members who wish to object to the proposed settlement must do so in writing.  To be considered, a written objection must be mailed to the Settlement Claims Administrator via First-Class United States Mail, postage prepaid, and be received by the Settlement Claims Administrator by a date certain thirty (30) days from the mailing of the Notice to the Rule 23 Class Member and no later than sixty (60) days from the Preliminary Approval Order.  The written objection must include the words, "I object to the settlement in the HSBC overtime case" as well as all reasons for the objection.  Any reasons not included in the written objection will not be considered.  The written objection must also include the name, job title, address, and telephone numbers for the Rule 23 Class Member making the objection.  The Settlement Claims Administrator will stamp the date received on the original and send copies of each objection to Class Counsel and Defendants' Counsel by email and overnight delivery no later than three (3) days after receipt thereof.  The Settlement Claims Administrator will also provide to Class Counsel, who will promptly file with the Clerk of Court, the date-stamped originals of any and all objections with the Court within three (3) days after the end of the Opt-out Period.

(B)  A Rule 23 Class Member who files objections to the settlement ("Objector") also has the right to appear at the Fairness Hearing either in person or through counsel hired by the Objector.  An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her written objections at the time he or she submits his or her written objections by including the words, "I intend to appear at the Fairness Hearing" in his or her written objection.  An Objector may withdraw his or her objections at any time.  No Rule 23 Class Member may appear at the Fairness Hearing unless he or she has filed a timely objection that complies with all procedures provided in this section and the previous section.  No Rule 23 Class Member may present an objection at the Fairness Hearing based on a reason not stated in his or her written objections.  A Rule 23 Class Member who has submitted an Opt-out Statement may not submit objections to the Settlement.

(C)    The Parties may file with the Court written responses to any filed objections no later than three (3) days before the Fairness Hearing.

**2.7**    **Motion for Judgment and Final Approval.**  Not later than fifteen (15) days before the Fairness Hearing, Plaintiffs will submit a Motion for Judgment and Final Approval.

**2.8**    **Entry of Judgment.**  At the Fairness Hearing, the Parties will request that the Court, among other things, (a) certify the State Sub-Classes for purposes of settlement, (b) enter Judgment in accordance with this Agreement, (c) approve the settlement and Agreement as final, fair, reasonable, adequate, and binding on all Rule 23 Class Members who have not timely opted out pursuant to Section 2.5, (d) approve the FLSA settlement, and (e) dismiss the Litigation with prejudice.

**2.9**    **Effect of Failure to Grant Final Approval.**  If there is not Final Approval, then the Settlement will become null and void, provided that the failure by the Court or an appellate court to award or sustain the full amount of the Service Awards to Named Plaintiffs or Class Counsel's attorneys' fees and expenses will not constitute a failure to approve the Settlement or a material modification of the Settlement, and provided that the Parties do not jointly agree to: (1) seek reconsideration or appellate review of the decision denying entry of Judgment, or (2) attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement.  If the Settlement becomes null and void:

(A)    The Litigation will proceed as if no settlement had been attempted, no portion of the Settlement Amount will be distributed, and the entire Settlement Amount will revert to Defendants.  In that event, the class certified for purposes of settlement shall be decertified, and Defendants may contest whether this Litigation should be maintained as a class action and contest the merits of the claims being asserted by Plaintiffs in this action.

(B)    Class Counsel will provide notice to Class Members that the Agreement did not receive final approval and that, as a result, no payments will be made to Class Members under the Agreement.  Such notice shall be mailed by the Settlement Claims Administrator via First Class United States Mail, postage prepaid, to the addresses used by the Settlement Claims Administrator in mailing the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing and Notice of Proposed Settlement of Collective Action Lawsuit and Fairness Hearing.

(C)    The Parties agree to share jointly the costs of the Settlement Claims Administrator fees incurred through the date the Court denies Final Approval.

**2.10**    **Releases and Consents to Join.**

(A)    A Class Member who does not timely return an Opt-out Statement will be issued a Settlement Check by the Settlement Claims Administrator from the QSF in accordance with the Final Approval Order.

(B)     All Settlement Checks shall contain on the back of the check, the following
limited endorsement:

**"CONSENT TO JOIN AND FINAL RELEASE OF CLAIMS:**

I understand that I have up to 90 days from the date I was mailed this Settlement
Check to sign and cash this Settlement Check.

By endorsing this check, I consent to join in the case entitled *Yuzary, et al., v.
HSBC Bank USA, N.A., et al.,* No. 12 Civ. 3693 (PGG), now pending in the
United States District Court for the Southern District of New York, and agree to
be bound by the Settlement Agreement negotiated by Class Counsel in that case.

I irrevocably and unconditionally waive, release, and forever discharge any claim
I might have against HSBC Bank USA, N.A., HSBC USA Inc., HSBC North
America Holdings Inc., and HSBC Securities (USA) Inc., and their former and
present parents and subsidiaries and their officers, directors, employees, partners,
shareholders and agents, and any other successors, assigns, or legal
representatives, for any and all wage-and-hour claims, rights, and causes of
action, whether known or unknown, under any federal, state, or local wage and
hour law, including but not limited to the Fair Labor Standards Act, the California
Labor Code, the California Business & Professions Code, the Connecticut Wage
Payment Law, New York Labor Law, the New Jersey Wage and Hour Law, and
all applicable state and local wage-and-hour laws, and including without
limitation statutory, constitutional, contractual, and common law claims for wages
and any damages, costs, penalties, liquidated damages, punitive damages, interest,
attorneys' fees, restitution, or equitable relief to the extent relating to or deriving
from a wage-and-hour claim (including claims for overtime wages or any other
wages) relating to my employment at HSBC as a Personal Banker, Premier
Relationship Manager, Branch Relationship Banker, Business Banking Specialist,
and/or Small Business Specialist (or a substantially similar position with a
comparable titles according to HSBC's business records) up to and including
February 15, 2013.

_____     Dated:_____ "
Signature

(C)     The Settlement Checks will be mailed to Class Members and attorneys' fees
and costs checks mailed to Class Counsel by the Settlement Claims
Administrator three (3) days after the Effective Date.

(D)     The Court will retain jurisdiction over the case following the entry of the
Judgment for Dismissal until thirty (30) days after the end of the Acceptance
Period.  The Settlement Claims Administrator will notify Class Counsel to
notify the Court of the expiration of the Acceptance Period.

## 3.    SETTLEMENT TERMS

### 3.1    Settlement Amount.

(A)    Defendants agrees to pay a gross total Settlement Amount of Fifteen Million Six Hundred Twenty-Five Thousand and No/100ths Dollars ($15,625,000.00), which shall fully resolve and satisfy any claim for attorneys' fees and costs approved by the Court, any and all amounts to be paid to Class Members, any Court-approved Service Awards to Named Plaintiffs as more fully set forth herein, and the Settlement Claims Administrator's fees and costs. Other than the employer payroll taxes described in Section 3.5(C), Defendants will not be required to pay more than the gross total of Fifteen Million Six Hundred Twenty-Five Thousand and No/100ths Dollars ($15,625,000.00) under the terms of this Agreement.

(B)    By no later than ten (10) days after the date of Preliminary Approval, Defendants shall deposit the gross total Settlement Amount into an interest-bearing escrow account established by the Settlement Claims Administrator, with interest (at market rates) accruing and payable to Defendants. The Settlement Claims Administrator will act as escrow agent and will have the authority to make periodic interest payments to Defendants in accordance with this paragraph and to release the Settlement Amount from escrow immediately for purposes of administering the settlement reflected in this Agreement immediately following the Effective Date.

(C)    Class Members will have 90 days from the date of mailing to cash their Settlement Checks (the "Acceptance Period"). Class Members will be informed of the Acceptance Period in the Notices and on the Settlement Checks. The Settlement Claims Administrator shall notify the Parties in writing of the beginning of the Acceptance Period.

(D)    The Settlement Claims Administrator shall set aside $60,000.00 of the QSF to cover any correctable errors or omissions, and satisfy any claim for relief allowed pursuant to Fed. R. Civ. P. 60(b)(1) or 60(d). If $60,000 is not sufficient to cover any correctable errors or omissions, and satisfy any claim for relief allowed pursuant to Fed. R. Civ. P. 60(b)(1) or 60(d), any additional amounts shall come from the amount remaining due to FLSA Class Members' uncashed checks. Any amount remaining 180 days after the Final Approval Order and after any correctable errors or omissions are covered will be redistributed among the Rule 23 Class Members and Opt-in Plaintiffs who have timely cashed their checks or, if the amount remaining is small enough that a redistribution is not sensible in the discretion of the Class Counsel, the unclaimed will be donated to the Charity under the *cy pres* doctrine.

(E)    If a Class Member does not timely cash his or her check within the Acceptance Period, the following procedures will apply:

(1)     The Settlement Award or portion thereof attributable to Rule 23 claims pursuant to Paragraph 3.4(B)(a)-(d) below and Service Award checks shall be redistributed among the Rule 23 Class Members who have timely cashed their checks or, if the amount remaining is small enough that a redistribution is not sensible in the discretion of the Class Counsel, the unclaimed will be donated to the Charity under the *cy pres* doctrine.

(2)     The Settlement Award or portion thereof attributable to FLSA claims pursuant to Paragraphs 3.4(B)(e)-(f) below shall revert to Defendants, and shall be deducted from the Net Settlement Fund and no other Class Member will have any claim to that Settlement Award or portion thereof.

(F)     The Settlement Award as calculated pursuant to Paragraph 3.4 below otherwise attributable to any Class Member who timely opts out pursuant to this Agreement will revert to Defendants and will be deducted from the Net Settlement Fund and no other Class Member will have any claim to that Settlement Award.

## 3.2     Settlement Amounts Payable as Attorneys' Fees and Costs.

(A)     At the Fairness Hearing and Motion for Final Approval, Class Counsel will petition the Court for an award of attorneys' fees of no more than one-third of the Gross Settlement Amount, and, in addition, for reimbursement of their actual litigation costs and expenses to be paid from the QSF.  Defendants will not oppose this application.  After depositing the Settlement Amount with the Settlement Claims Administrator for the QSF, Defendants shall have no additional liability for Class Counsel's attorneys' fees and costs.

(B)     The substance of Class Counsel's application for attorneys' fees and costs is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation.  The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval.

## 3.3     Service Awards to Certain Plaintiffs.

(A)     In return for services rendered to the Class Members, at the Fairness Hearing, Named Plaintiffs Sharon Yuzary, Jon Racow, Henry Hu, Mina Dimetry, Teron Haughton, Daniel Hauer, Billy Tzewa Mui, Calvin Mazlumyan, and Kim LeBleu will each apply to the Court to receive Ten Thousand and No/100ths Dollars ($10,000.00) as a Service Award from the QSF,  Defendants will not oppose such applications.

(B)     Named Plaintiffs who receive Service Awards agree to execute a general release of claims as provided in Paragraph 4.1(C) below.

(C)     The application for Service Awards is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of the Court's ruling on the application for Service Awards will not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval or for Final Judgment and Dismissal.

**3.4     Net Settlement Fund and Allocation to Class Members.**

(A)     The allocation to Class Members for Settlement Checks will be made from the Net Settlement Fund.

(B)     A Class Member's proportionate share of the Net Settlement Fund will be determined by the Settlement Claims Administrator pursuant to the following formula, which is cumulative:

(1)     Each New York Class Member shall be assigned four points for each week worked in a Covered Position in New York between February 7, 2006 and April 8, 2011 and five points for each week worked in a Covered Position in New York between April 9, 2011 and February 15, 2013.

(2)     Each California Class Member shall be assigned six points for each week worked in a Covered Position in California between May 9, 2008 and February 15, 2013.

(3)     Each Connecticut Class Member shall be assigned three points for each week worked in a Covered Position in Connecticut between May 9, 2010 and February 15, 2013.

(4)     Each New Jersey Class Member shall be assigned three points for each week worked in a Covered Position in New Jersey between May 9, 2010 and February 15, 2013.

(5)     Each FLSA Class Member shall be assigned three points for each week worked in a Covered Position in any State other than New York, California, Connecticut, and New Jersey between May 9, 2009 and February 15, 2013 or in Connecticut or New Jersey between May 9, 2009 and May 8, 2010.

(6)     Each FLSA Class Member who opted into the Litigation on or before the date of this Agreement shall be assigned one point for each week worked in a Covered Position between the date three years before the date on which they opted into the Litigation or the *Mui* or *Hauer* cases, and February 15, 2013.

(7)     To calculate each Class Member's proportionate share:

(i)      Add all points for Class Members together to obtain the "Total Denominator;"

(ii)     Divide the number of points for each Qualified Class Member by the Denominator to obtain each Class Member's "Portion of the Net Settlement Fund."

(8)     Multiply each Class Member's Portion of the Net Settlement Fund by the Net Settlement Fund to determine each Class Member's "Settlement Award."

(C)     The calculation of all work weeks pursuant to this Paragraph 3.4 shall be based on Defendants' business records.

**3.5**     **Tax Characterization.**

(A)     For tax purposes, 50% of payments to Class Members pursuant to Section 3.4 shall be treated as back wages and 50% of such payments shall be treated as interest and/or liquidated damages.

(B)     Payments treated as back wages pursuant to Section 3.5(A) shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and social security number on an IRS Form W-2. Payments treated as interest and/or liquidated damages pursuant to Section 3.5(A) shall be made without withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and social security number on an IRS Form 1099. Payments of attorneys' fees and costs pursuant to Section 3.2 shall be made without withholding and reported to the IRS and the payee under the payee's name and taxpayer identification number, which each such payee shall provide for this purpose, on an IRS Form 1099. Any service payment pursuant to Section 3.3 shall be made without withholding and reported to the IRS and the payee under the payee's name and social security number on an IRS Form 1099.

(C)     Within 10 days after the Final Approval Order, the Settlement Claims Administrator shall inform the Parties of an estimate of all state and federal payroll taxes imposed by applicable law, including the employer's share of the FICA tax and any federal and state unemployment tax due, with respect to the amounts treated as wages pursuant to Section 3.5(A). Defendants shall pay this amount within 10 days from the date the Settlement Claims Administrator so informs the Parties.

(D)     The employee portion of all applicable income and payroll taxes will be the responsibility of the individual Class Member receiving a Settlement Check or Service Award.

(E)     Neither Class Counsel nor Defendants' Counsel intend anything contained herein to constitute legal advice regarding the taxability of any amount paid hereunder, nor will it be relied upon as such.

**3.6     Right of Defendants to Reject Settlement.**

If 7% or more of the Class Members, or a number of Class Members whose Settlement Awards in the aggregate total 7% or more of the total Net Settlement Fund, file timely and valid Opt-out Statements, then Defendants will have the right to rescind the Settlement, and the Settlement and all actions taken in its furtherance will be null and void. Defendants must exercise this right within fourteen (14) days after the Settlement Administrator notifies the number of Opt-out Statements received that meet this threshold. If Defendants exercise their right to rescind the Settlement, Defendants will be responsible for the Settlement Claims Administrator fees incurred through the date of rescission.

**4.     RELEASE**

**4.1     Release of Claims.**

By operation of the entry of the Judgment and Final Approval, and except as to such rights or claims as may be created by this Agreement,

(A)     Each Opt-in Plaintiff fully and finally irrevocably and unconditionally waives, releases, and forever discharges any claim against HSBC Bank USA, N.A., HSBC USA Inc., HSBC North America Holdings Inc., and HSBC Securities (USA) Inc., and their former and present parents and subsidiaries and their officers, directors, employees, partners, shareholders and agents, and any other successors, assigns, or legal representatives (collectively, the "Released Parties") for any and all wage-and-hour claims, rights, and causes of action, whether known or unknown, under any federal, state, or local wage and hour law, including but not limited to the Fair Labor Standards Act, the California Labor Code, the California Business & Professions Code, the Connecticut Wage Payment Law, New York Labor Law, the New Jersey Wage and Hour Law, and all applicable state and local wage-and-hour laws, and including without limitation statutory, constitutional, contractual, and common law claims for wages and any damages, costs, penalties, liquidated damages, punitive damages, interest, attorneys' fees, restitution, or equitable relief to the extent relating to or deriving from a wage-and-hour claim (including claims for overtime wages or any other wages) relating to his or her employment with Defendants as a Personal Banker, Premier Relationship Manager, Branch Relationship Banker, Business Banking Specialist, and/or Small Business Specialist (or a substantially similar position with a comparable title according to Defendants' business records) up to and including February 15, 2013 ("Released Claims").

(B)     Each Class Member who does not timely opt out pursuant to this Agreement irrevocably and unconditionally waives, releases, and forever discharges any claim against the Released Parties from any and all wage-and-hour claims, rights, and causes of action, whether known or unknown, under the California Labor Code, the California Business & Professions Code, the Connecticut Wage Payment Law, New York Labor Law, the New Jersey Wage and Hour Law, including without limitation statutory, constitutional, contractual, and common law claims for wages and any damages, costs, penalties, liquidated damages, punitive damages, interest, attorneys' fees, restitution, or equitable relief to the extent relating to or deriving from a wage-and-hour claim (including claims for overtime wages or any other wages) relating to his or her employment with Defendants as a Personal Banker, Premier Relationship Manager, Branch Relationship Banker, Business Banking Specialist, and/or Small Business Specialist (or a substantially similar position with a comparable title according to Defendants' business records) up to an including February 15, 2013 (the "Released Rule 23 Claims"). The Released Rule 23 Claims relate to Class Members' employment with Defendants in any Covered Position during the New York Class Period, the Connecticut Class Period, the California Class Period and the New Jersey Class Period.

(C)     In addition to the Released Claims, all Named Plaintiffs receiving a Service Award agree to release any and all common law contract, tort, or other claims, including but not limited to claims for discrimination, harassment, retaliation, wrongful termination, failure to prevent retaliation or discrimination or harassment, any wage-and-hour claims under both federal and state law, any breach of contract, breach of implied covenant of good faith and fair dealing, fraud, intentional misrepresentation, constructive fraud, intentional infliction of emotional distress, as well as all claims under the Worker Adjustment & Retraining Notification Act, Title VII of the Civil Rights Act of 1964, Sections 1981 and 1983 of the Civil Rights Act of 1866, the Americans with Disabilities Act Amendments Act, the Employee Retirement Income Security Act of 1974, the Family and Medical Leave Act, and any other domestic or foreign laws, regulations or ordinances from the beginning of time through the date of Final Approval ("General Release"). Named Plaintiffs who lived or worked in California in Covered Positions during the California Class Period expressly agree to waive all rights and benefits afforded by section 1542 of the Civil Code of the State of California, and do so understanding the significance of that waiver. Section 1542 provides:

A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

(E)     Except as provided in this Agreement, Class Counsel and Named Plaintiffs, on behalf of the Class Members individually and collectively, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that he, she or

they may have against Defendants for attorneys' fees or costs associated with Class Counsel's representation of the Class Members. Class Counsel further understands and agrees that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees and costs associated with Class Counsel's representation in the Litigation.

4.2     **Effect of Failure to Cash a Settlement Check.** Upon the Effective Date of the settlement, each Class Member shall have released all claims as defined in paragraph 4.1 of the Settlement Agreement, provided, however, that any member of the class who did not affirmatively opt into the FLSA class, and who did not cash his or her Settlement Check shall release only the Released Rule 23 Claims. All funds attributed to FLSA claims pursuant to Paragraphs 3.4(B)(e)-(f) above that are uncashed or unclaimed will revert to Defendants pursuant to Paragraph 3.5(B) above.

4.3     **Non-Admission of Liability.** Defendants have agreed to the terms of settlement herein without in any way acknowledging any fault or liability, and with the understanding that terms have been reached because this settlement will (i) provide substantial benefits to Defendants' shareholders, (ii) avoid the further expense and disruption of Defendants' business due to the pendency and expense of litigation, and (iii) put the claims in the Litigation finally to rest. Nothing in this agreement shall be deemed or used as an admission of liability by Defendants, or as an admission that a class should be certified for any purpose other than settlement purposes.

5.      **INTERPRETATION AND ENFORCEMENT**

5.1     **Cooperation Between the Parties; Further Acts.** The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

5.2     **No Assignment.** Class Counsel and Named Plaintiffs, on behalf of the individual Class Members, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

5.3     **Entire Agreement.** This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

5.4     **Binding Effect.** This Agreement shall be binding upon the Parties and, with respect to the Named Plaintiffs, the Opt-in Plaintiffs, and all Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

5.5     **Waiver of Unknown Claims.** It is the desire of the Parties to fully, finally, and forever settle, compromise, and discharge all Released Claims which were or which could have

been asserted in this Action against the Released Parties, whether known or unknown, liquidated or unliquidated, to the extent relating to or deriving from a wage-and-hour claim (including claims for overtime wages or any other wages) relating to Plaintiffs' employment in Covered Positions up to and including February 15, 2013. Plaintiffs may hereafter discover facts in addition to or different from those which they now know or believe to be true with respect to the subject matter of the Released Claims, but upon the entry of the Judgment, Plaintiffs shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which then exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.

5.6   **Confidentiality.** Named Plaintiffs and Class Counsel agree to keep the negotiations leading up to this Agreement and the amount of individual Class Members' Settlement Awards (together, "Confidential Settlement Issues") confidential and that they hereafter will not disclose Confidential Settlement Issues to any person or persons. Notwithstanding the foregoing, Named Plaintiffs may disclose Confidential Settlement Issues to their attorneys, accountants and immediate families; to the Court and Court personnel, as necessary to seek Court approval of this Settlement; and otherwise as required by court or governmental order, subpoena, or as otherwise directed by law. If required by court or governmental order, subpoena, or otherwise as required by law to disclose Confidential Settlement Issues, Named Plaintiffs will notify Defendants through Defendants' Counsel prior to making such disclosure and permit Defendants a reasonable time to object to such disclosure. Named Plaintiffs and their attorneys shall make no public statement concerning Confidential Settlement Issues other than such statements as they are contained in Court filings necessary to seek approval of this Agreement. If Plaintiffs or their attorneys violate this paragraph, Defendants may rescind the Settlement, rendering it null and void.

5.7   **Arms' Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

5.8   **Captions.** The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

5.9   **Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

5.10   **Blue Penciling.**  If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect.

5.11   **Governing Law.**  This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

5.12   **Stay.**  The Parties agree to stay all proceedings in the Litigation, except such proceedings as may be necessary to implement and complete the Settlement, in abeyance pending the Final Approval hearing to be conducted by the Court.  If the Court does not ultimately grant final approval of the settlement, the tolling of FLSA claims effectuated by Paragraph 6 of the Court's July 20, 2012 Order shall continue through the date that this stay is lifted by Court order.

5.13   **Continuing Jurisdiction.**  The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

5.14   **Waivers, etc. to Be in Writing.**  No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

5.15   **CAFA Notice.**  Defendants shall timely provide notice as required by the Class Action Fairness Act ("CAFA") and provide copies of such to Class Counsel.

5.16   **When Agreement Becomes Effective; Counterparts.**  This Agreement shall become effective upon its execution.  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

5.17   **Signatures of Named Plaintiffs.**  This Agreement is valid and binding upon the signatures of Defendants' authorized representative and at least one Named Plaintiff. Class Counsel shall deliver this Agreement to all Named Plaintiffs for their signatures and shall deliver copies of their signature pages to Defendants' Counsel within three business days of this Agreement becoming valid and binding pursuant to this Paragraph, or as soon thereafter as practicable.

**5.18    Facsimile and Email Signatures.**  Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party.  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

**WE AGREE TO THESE TERMS,**

DATED: 11-26, 2012          **HSBC BANK USA, N.A.:**

By: _____

Its: _EVP – Performance & Reward_

DATED: 11-26, 2012          **HSBC USA, INC.:**

By: _____

Its: _EVP – Performance & Reward_

DATED: 11-26, 2012          **HSBC NORTH AMERICA HOLDINGS, INC.:**

By: _____

Its: _EVP – Performance & Reward_

DATED: _____, 2012          **SHARON YUZARY**

_____

DATED: _____, 2012          **JON RACOW**

_____

**5.18    Facsimile and Email Signatures.** Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party. Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

## WE AGREE TO THESE TERMS,

DATED: _____, 2012          **HSBC BANK USA, N.A.:**

By: _____

Its: _____

DATED: _____, 2012          **HSBC USA, INC.:**

By: _____

Its: _____

DATED: _____, 2012          **HSBC NORTH AMERICA HOLDINGS, INC.:**

By: _____

Its: _____

DATED: 11/26, 2012          **SHARON YUZARY**

_____

DATED: _____, 2012          **JON RACOW**

_____

**5.18** **Facsimile and Email Signatures.** Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party. Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

**WE AGREE TO THESE TERMS,**

DATED: _____, 2012      **HSBC BANK USA, N.A.:**

By: _____

Its: _____

DATED: _____, 2012      **HSBC USA, INC.:**

By: _____

Its: _____

DATED: _____, 2012      **HSBC NORTH AMERICA HOLDINGS, INC.:**

By: _____

Its: _____

DATED: _____, 2012      **SHARON YUZARY**

_____

DATED: _____, 2012      **JON RACOW**

_____

DATED:  Nov 22, 2012       **HENRY HU**

_____

DATED: _____, 2012       **MINA DIMETRY**

_____

DATED: _____, 2012       **TERON HAUGHTON**

_____

DATED: _____, 2012       **DANIEL HAUER**

_____

DATED: _____, 2012       **BILLY TZEWA MUI**

_____

DATED: _____, 2012       **CALVIN MAZLUMYAN**

_____

DATED: _____, 2012       **KIM LEBLEU**

_____

LEGAL_US_E # 101410392.1

DATED: _____, 2012          **HENRY HU**

_____

DATED: November 26, 2012     **MINA DIMETRY**

_____

DATED: _____, 2012          **TERON HAUGHTON**

_____

DATED: _____, 2012          **DANIEL HAUER**

_____

DATED: _____, 2012          **BILLY TZEWA MUI**

_____

DATED: _____, 2012          **CALVIN MAZLUMYAN**

_____

DATED: _____, 2012          **KIM LEBLEU**

_____

LEGAL_US_E # 101410392.1

DATED: _____, 2012            **HENRY HU**

_____

DATED: _____, 2012            **MINA DIMETRY**

_____

DATED: 11/25/, 2012            **TERON HAUGHTON**

_____

DATED: _____, 2012            **DANIEL HAUER**

_____

DATED: _____, 2012            **BILLY TZEWA MUI**

_____

DATED: _____, 2012            **CALVIN MAZLUMYAN**

_____

DATED: _____, 2012            **KIM LEBLEU**

_____

LEGAL_US_E # 101410392.1

DATED: _____, 2012          **HENRY HU**

_____

DATED: _____, 2012          **MINA DIMETRY**

_____

DATED: _____, 2012          **TERON HAUGHTON**

_____

DATED: Nov 25th, 2012          **DANIEL HAUER**

_____

DATED: _____, 2012          **BILLY TZEWA MUI**

_____

DATED: _____, 2012          **CALVIN MAZLUMYAN**

_____

DATED: _____, 2012          **KIM LEBLEU**

_____

DATED: _____, 2012      **HENRY HU**

_____

DATED: _____, 2012      **MINA DIMETRY**

_____

DATED: _____, 2012      **TERON HAUGHTON**

_____

DATED: _____, 2012      **DANIEL HAUER**

_____

DATED: _____, 2012      **BILLY TZEWA MUI**

_____

DATED: _____, 2012      **CALVIN MAZLUMYAN**

_____

DATED: _____, 2012      **KIM LEBLEU**

_____

LEGAL_US_E # 101410392.1

DATED: _____, 2012          HENRY HU

_____

DATED: _____, 2012          MINA DIMETRY

_____

DATED: _____, 2012          TERON HAUGHTON

_____

DATED: _____, 2012          DANIEL HAUER

_____

DATED: _____, 2012          BILLY TZEWA MUI

_____

DATED: 11/22, 2012           CALVIN MAZLUMYAN

_____

DATED: _____, 2012          KIM LEBLEU

_____

DATED: _____, 2012          **HENRY HU**

DATED: _____, 2012          **MINA DIMETRY**

DATED: _____, 2012          **TERON HAUGHTON**

DATED: _____, 2012          **DANIEL HAUER**

DATED: _____, 2012          **BILLY TZEWA MUI**

DATED: _____, 2012          **CALVIN MAZLUMYAN**

DATED: _11-26_, 2012         **KIM LEBLEU**

LEGAL_US_E # 101410392.1

- 23-