IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHARON YUZARY, JON RACOW, HENRY HU, MINA DIMETRY, TERON HAUGHTON, DANIEL HAUER, BILLY TZEWA MUI, CALVIN MAZLUMYAN, and KIM LEBLEU, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HSBC BANK USA, N.A.; HSBC USA, INC.; and HSBC NORTH AMERICA HOLDINGS, INC.<br><br>Defendants. | No. 12 Civ. 3693 (PGG)<br><br>USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #:_____<br>DATE FILED: 10/2/13 |

## [REVISED PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR CERTIFICATION OF THE SETTLEMENT CLASS, FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT, APPROVAL OF THE FLSA SETTLEMENT, AND APPROVAL OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS

Plaintiffs Sharon Yuzary, Jon Racow, Henry Hu, Mina Dimetry, Teron Haughton, Daniel Hauer, Billy Tzewa Mui, Calvin Mazlumyan, and Kim LeBleu ("Plaintiffs") are former Personal Bankers, Branch Relationship Bankers, Premier Relationship Managers, Small Business Specialists, and Business Banking Specialists (collectively, the "Covered Positions") who worked for Defendants HSBC Bank USA, N.A., HSBC USA, Inc., and HSBC North America Holdings, Inc. ("HSBC" or "Defendants"). On February 7, 2012, Plaintiff Mui filed a lawsuit in the United States District Court for the Southern District of New York, *Mui v. HSBC Bank USA, N.A., et al.*, No. 12 Civ. 961 (BSJ) ("*Mui*"), bringing FLSA collective action and Rule 23 class claims under the NYLL. On May 9, 2012, Plaintiff Yuzary filed a class and collective action

overtime lawsuit in the United States District Court for the Southern District of New York, *Yuzary v. HSBC Bank USA, N.A., et al.*, No. 12 Civ. 3693 (PGG) (*"Yuzary"*). On June 8, 2012, Plaintiff Hauer filed a collective action overtime lawsuit in the United States District Court for the Southern District of Florida, *Hauer v. HSBC Bank USA, N.A., et al.*, No. 12 Civ. 61155 (KMW) (*"Hauer"*). On July 23, 2012, this Court consolidated the *Mui*, *Yuzary*, and *Hauer* actions. ECF No. 25. In the consolidated amended complaint, Plaintiffs alleged that HSBC violated the Fair Labor Standards Act ("FLSA") and the wage and hour laws of New York, California, Connecticut, and New Jersey by improperly classifying them as exempt from federal and state overtime requirements and failing to pay them and other employees in Covered Positions overtime wages. ECF No. 48. Plaintiffs sought unpaid overtime wages, attorneys' fees and costs, interest, liquidated damages, and injunctive and declaratory relief. *Id.*

After exchanging informal discovery to enable Plaintiffs to calculate damages and undertaking extensive and vigorous negotiations, the parties reached a settlement totaling $15,625,000. Decl. of Justin M. Swartz in Supp. of Pls.' Mot. for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Swartz Decl.") ¶¶ 12-13, 18-20, 27. The parties reached this settlement after a formal mediation under the supervision of an experienced employment law mediator, Michael Young. *Id.* ¶¶ 18-20. At the mediation, the parties reached agreement on the settlement amount and several other key terms. *Id.* ¶ 20. During the next three months, the parties negotiated the remaining terms of the settlement, which were memorialized in a formal settlement agreement ("Settlement Agreement"). *Id.*

On April 29, 2013, this Court entered an Order preliminarily approving the settlement on behalf of the class set forth therein (the "Class" or the "Class Members"), conditionally

certifying the settlement class, and appointing Outten & Golden LLP; Fitapelli & Schaffer, LLP; Lee Litigation Group, PLLC; and Shavitz Law Group, P.A. as Class Counsel, and authorizing notice to all Class Members. ECF No. 70.

On May 31, 2013, a claims administrator sent Court-approved notices to all Class Members informing them of their rights under the settlement, including the right to opt out or object to the settlement for Class Members in the four states where Rule 23 claims were brought, and of Class Counsel's intention to seek up to one-third of the settlement fund for attorneys' fees, and reimbursement of their out-of-pocket expenses. Swartz Decl., Ex. D (Cudworth Decl.) ¶ 8. After the initial Notices were mailed, Defendants discovered that 62 Class Members had inadvertently been omitted from the data initially provided to the claims administrator and that the data also omitted a number of workweeks for 93 Class Members who had received Notice. *Id.* ¶ 16. New Notices were subsequently mailed to those 62 Class Members who had received no Notice. No Class Members objected to the settlement, seven filed timely opt-out requests, and one filed a late opt-out request. *Id.* ¶¶ 14-15.

On July 16, 2013, Plaintiffs filed a Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Motion for Final Approval"). That same day, Plaintiffs also filed Motions for Approval of Attorneys' Fees and Reimbursement of Expenses ("Motion for Attorneys' Fees") and for Service Awards ("Motion for Service Awards"). Defendants took no position with respect to any of these motions and did not object to the requests for attorneys' fees, costs, or service payments.

The Court held a fairness hearing on July 25, 2013. No Class Member objected to the settlement at the hearing.

Having considered the Motion for Final Approval, the Motion for Attorneys' Fees and Reimbursement of Expenses, the Motion for Service Awards, and the supporting declarations, the oral argument presented at the July 25, 2013 fairness hearing, and the complete record in this matter, for the reasons set forth therein and stated on the record at the July 25, 2013 fairness hearing, and for good cause shown,

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

**CERTIFICATION OF THE SETTLEMENT CLASS**

1. The Court certifies the following sub-classes under Federal Rule of Civil Procedure 23(e), for settlement purposes, which consist of individuals who worked in Covered Positions for at least fifteen (15) days in any state who fit within the definitions set forth in subparagraphs (A) through (D) below (the "State Sub-Classes") (the "Rule 23 Class Members"):

   A. all individuals who were employed in Covered Positions in the State of New York from February 7, 2006 through November 15, 2012, excluding individuals who signed releases of state law wage and hour claims as evidenced in releases provided by Defendants to Class Counsel on or before the date of the Court's Final Approval Order;

   B. all individuals who were employed in Covered Positions in the State of California from May 9, 2008 through November 15, 2012;

   C. all individuals who were employed in Covered Positions in the State of Connecticut from May 9, 2010 through November 15, 2012; and

   D. all individuals who were employed in Covered Positions in the State of New Jersey from May 9, 2010 through November 15, 2012.

2. Plaintiffs meet all of the requirements for class certification under Federal Rule of Civil Procedure 23(a) and (b)(3).

3. Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(1) because there are approximately 2,203 Rule 23 Class Members and, thus, joinder is impracticable. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("[N]umerosity is presumed at

a level of 40 members.").

4. The proposed class also satisfies Federal Rule of Civil Procedure 23(a)(2), the commonality requirement. Plaintiffs and the Class Members share common issues of fact and law, including whether Defendants misclassified them as exempt employees, failed to pay them overtime wages in violation of state wage and hour laws, and failed to keep accurate records of time worked. *See Beckman v. KeyBank, N.A.*, No. 12 Civ. 7836, 2013 WL 1803736, at *2 (S.D.N.Y. Apr. 29, 2013) (common issues that help to satisfy Rule 23 commonality requirement include whether "Defendant misclassified them as exempt employees, failed to pay them overtime wages in violation of state wage and hour laws, and failed to keep accurate records of time worked"); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 615-16 (S.D.N.Y. 2012) (commonality satisfied where, among other allegations, plaintiffs claimed that defendant had a policy of not paying all class members overtime pay).

5. Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(3), typicality, because Plaintiffs' claims arose from the same factual and legal circumstances that form the bases of the class members' claims. *See Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472, 2013 WL 1209563, at *3 (S.D.N.Y. Nov. 15, 2012) (typicality satisfied where "[p]laintiffs' claims [for overtime pay] arose from the same factual and legal circumstances that form[ed] the bases of the [c]lass [m]embers' claims"); *Morris*, 859 F. Supp. 2d at 616 (same).

6. Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(4) because there is no evidence that the Plaintiffs' and the class members' interests are at odds. *See Beckman*, 2013 WL 1803736, at *3 (finding adequacy requirement met where there was no evidence that plaintiffs' and class members' interests were at odds); *Morris*, 859 F. Supp. 2d at 616 (same).

7. In addition, Plaintiffs' Counsel are experienced and adequate to serve as Class

5

Counsel. *See, e.g., Beckman*, 2013 WL 1803736, at *3 (noting that Outten & Golden LLP and Shavitz Law Group, P.A. "have substantial experience prosecuting and settling employment class actions, including wage and hour class actions[,] and are well-versed in wage and hour law and class action law," and finding both firms adequate class counsel) (internal quotation and citation omitted); *Tiro v. Pub. House Invs., LLC*, 288 F.R.D. 272, 275 (S.D.N.Y. 2012) (Fitapelli & Schaffer approved as class counsel); *Han v. AB Gansevoort*, No. 11 Civ. 2423, Docket No. 40 (S.D.N.Y. April 4, 2012) (appointing Kraselnik & Lee, PLLC as class counsel).

8. Plaintiffs also satisfy Rule 23(b)(3). Plaintiffs' common factual allegations and a common legal theory – that Defendants violated federal and state wage and hour laws by misclassifying Plaintiffs as exempt administrative employees and failing to pay them for premium overtime hours – predominate over any factual or legal variations among class members. *See Hernandez*, 2013 WL 1209563, at *3 (common factual allegations and legal theory predominated over variations in wage and hour misclassification case); *Torres v. Gristede's Corp.*, No. 04 Civ. 3316, 2006 WL 2819730, at *16 (S.D.N.Y. Sept. 29, 2006) (plaintiffs "introduced sufficient proof that Defendants engaged in a common practice to deny employees overtime pay," and "[t]his issue predominates over any individual calculations of overtime wages").

9. Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually. *See Beckman*, 2013 WL 1803736, at *3; *Morris*, 859 F. Supp. 2d at 617. Concentrating the litigation in this Court is desirable because the allegedly wrongful conduct occurred within its jurisdiction.

## APPROVAL OF THE SETTLEMENT AGREEMENT

10. The Court hereby grants the Motion for Final Approval and finally approves the settlement as set forth in the Settlement Agreement.

11. Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). To determine procedural fairness, courts examine the negotiating process leading to the settlement. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

12. Courts examine procedural and substantive fairness in light of the "strong judicial policy favoring settlements" of class action suits. *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation and citation omitted); *see also In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007); *Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238, 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005).

13. A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (quoting *Manual for Complex Litigation, Third*, § 30.42 (1995)); *see also D'Amato*, 236 F.3d at 85. "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4; *see also In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761, 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008); *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002).

*Procedural Fairness*

14. The settlement is procedurally fair, reasonable, adequate, and not a product of collusion. *See* Fed. R. Civ. P. 23(e); *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713, 2010 WL 2399328, at *4 (S.D.N.Y. Mar. 3, 2010). The settlement was reached after the parties had conducted a thorough investigation and evaluated the claims and defenses, and after arm's-length negotiations between the parties. Swartz Decl. ¶¶ 6-13, 18-23.

15. Prior to mediation, Plaintiffs and Defendants both retained economic experts to analyze the data and perform damages calculations. Swartz Decl. ¶ 19. On August 22, 2012, the parties attended a 17.5 hour mediation with an experienced employment law mediator. *Id.* ¶ 20. The parties made progress toward a settlement and, during the next three months, exchanged more information and ultimately reached an agreement on all terms, which they memorialized in the Settlement Agreement. *Id.* These arm's-length negotiations involved counsel and a mediator well-versed in wage and hour law, raising a presumption that the settlement achieved meets the requirements of due process. *See Wal-Mart Stores*, 396 F.3d at 116; *McMahon*, 2010 WL 2399328, at *4.

16. In addition, courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere. *See Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472, 2012 WL 5862749, at *2 (S.D.N.Y. Nov. 15, 2012) (endorsing early settlement of wage and hour class action); *Castagna v. Madison Square Garden, L.P.*, No. 09 Civ. 10211, 2011 WL 2208614, at *10 (S.D.N.Y. June 7, 2011) (commending Plaintiffs' attorneys for negotiating early settlement); *In re Interpublic Sec. Litig.*, No. 02 Civ. 6527, 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004) (early settlements should be encouraged when

warranted by the circumstances of the case). The parties here acted responsibly in reaching an early settlement. *See Hernandez*, 2012 WL 5862749, at *2; *In re Interpublic Sec. Litig.*, 2004 WL 2397190, at *12.

### *Substantive Fairness*

17. The settlement is substantively fair. All of the factors set forth in *Grinnell*, which provides the analytical framework for evaluating the substantive fairness of a class action settlement, weigh in favor of final approval.

18. The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. 495 F.2d at 463.

19. Litigation through trial would be complex, expensive and long. Therefore, the first *Grinnell* factor weighs in favor of final approval.

20. The class's reaction to the settlement was positive. The Notices included an explanation of the allocation formula and an estimate of each Class Member's award. The Rule 23 Notice also informed Rule 23 Class Members of their right to object to or exclude themselves from the Settlement and explained how to do so. No Class Member objected to the settlement, and only eight of the 2,203 Rule 23 Class Members opted out. This favorable response demonstrates that the class approves of the settlement and supports final approval. "The fact that the vast majority of class members neither objected nor opted out is a strong indication of

9

fairness." *See Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011) (approving settlement where seven of 2,025 class member submitted timely objections and two requested exclusion); *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106, at *5 (E.D.N.Y. Jan. 20, 2010) (the fact that no class members objected and two opted out demonstrated favorable response weighing in favor of final approval); *Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008) ("[t]he fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness).

21. The parties have completed enough discovery to recommend settlement. The pertinent question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (internal quotation marks omitted). Here, through an efficient, informal exchange of information, Plaintiffs obtained sufficient discovery to weigh the strengths and weaknesses of their claims and to accurately estimate the damages at issue. The parties' participation in a 17.5 hour mediation allowed them to further explore the claims and defenses. The third *Grinnell* factor weighs in favor of final approval.

22. The risk of establishing liability and damages further weighs in favor of final approval. "Litigation inherently involves risks." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, the primary purpose of settlement is to avoid the uncertainty of a trial on the merits. *See In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007). Here, Plaintiffs faced numerous risks as to both liability and damages, including overcoming Defendants' exemption defenses, proving willfulness in order to obtain a third year of liability and damages, and overcoming Defendants' likely fluctuating

workweek argument, among others. The proposed settlement eliminates this uncertainty. This factor therefore weighs in favor of final approval.

23. The risk of obtaining collective and class certification and maintaining both through trial is also present. Contested collective and class certification motion would likely require extensive discovery and briefing. If the Court did authorize notice to the FLSA collective, Defendants would likely challenge that determination by seeking decertification at a later date, after the close of discovery. If the Court were to grant class certification, Defendants might seek to file an appeal under Federal Rule of Civil Procedure 23(f), the resolution of which would require an additional round of briefing. Settlement eliminates the risk, expense, and delay inherent in the litigation process. The fifth *Grinnell* factor weighs in favor of final approval.

24. Even if Defendants could have withstood a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 178 n.9 (S.D.N.Y. 2000) (alterations and citation omitted)). Accordingly, this factor is neutral and does not preclude the Court from approving the settlement.

25. The substantial amount of the settlement, in light of the best possible recovery and the attendant risks of litigation, weighs in favor of final approval. The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to

completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). These factors also weigh in favor of final approval.

## APPROVAL OF THE FLSA SETTLEMENT

26. The Court hereby approves the FLSA settlement.

27. Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," *McKenna v. Champion Intern. Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984); FLSA collective actions do not implicate the same due process concerns as Rule 23 actions, *McMahon*, 2010 WL 2399328, at *6. Accordingly, the standard for approval of an FLSA settlement is lower than for a class action under Rule 23.

28. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982); *McMahon*, 2010 WL 2399328, at *6. Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Lynn's Food Stores*, 679 F.2d at 1353-54. If the proposed FLSA settlement reflects a reasonable compromise over contested issues, it should be approved. *Id.* at 1354; *McMahon*, 2010 WL 2399328, at *6.

29. In this case, the settlement was the result of arm's-length negotiation involving vigorous back and forth. Swartz Decl. ¶ 23. During the entire process, Plaintiffs and Defendants were represented by counsel experienced in wage and hour law. Accordingly, the Settlement Agreement resolves a *bona fide* dispute under circumstances supporting a finding that is fair and reasonable.

## DISSEMINATION OF NOTICE

30. Pursuant to the Preliminary Approval Order, the Rule 23 and FLSA Notices were

sent by first-class mail to each respective Class Member at his or her last known address (with re-mailing of returned Notices for which new addresses could be located). The Court finds that the Rule 23 and FLSA Notices fairly and adequately advised Class Members of the terms of the settlement, as well as the right of Rule 23 Class Member to opt out of or to object to the settlement, and to appear at the fairness hearing conducted on July 25, 2013. Class Members were provided with the best notice practicable under the circumstances.

31. On August 1, 2013, additional Notices were sent to the 62 Class Members who were inadvertently excluded from the data sent to the Claims Administrator.

32. The second notice period ended on September 3, 2013. No Class Members included in this second mailing opted out or objected.

33. The addition of the 62 Class Members who had inadvertently been omitted from the original mailing and the corrected workweeks for the 93 Class Members who were entitled to higher settlement amounts caused a shortfall in the Settlement Fund because the original Notices advised Class Members that they would receive no less than the amount that had been printed on their Notice. To absorb some of the shortfall, Class Counsel voluntarily reduced their fee request from one-third to 31.7% of the Settlement Fund. An additional $45,000 will be used from the errors and omissions fund, and HSBC agreed to pay the remaining balance.

34. The Court further finds that the Notices and their distribution comported with all constitutional requirements, including those of due process.

35. The Court confirms Kurtzman Carson Consultants, LLC as the claims administrator.

## AWARD OF FEES AND COSTS TO CLASS COUNSEL AND AWARD OF SERVICE AWARDS TO PLAINTIFFS

36. On April 29, 2013, the Court appointed Outten & Golden LLP; Fitapelli &

Schaffer, LLP; Lee Litigation Group, PLLC; and Shavitz Law Group, P.A. as Class Counsel because they met all of the requirements of Federal Rule of Civil Procedure 23(g). *See Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 165 (S.D.N.Y. 2008) (Rule 23(g) requires the court to consider "the work counsel has done in identifying or investigating potential claims in the action, . . . counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, . . . counsel's knowledge of the applicable law, and . . . the resources counsel will commit to representing the class.") (internal quotation marks omitted).

37. Class Counsel are experienced employment lawyers with good reputations among the employment law bar. *See Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *12 (S.D.N.Y. Apr. 16, 2012) (noting Outten & Golden LLP's reputation as a "respected labor and employment firm" and that attorneys had "prosecuted and favorably settled many employment law class actions, including wage and hour class actions"); *Palacio v. E*TRADE Fin. Corp.*, No. 10 Civ. 4030, 2012 WL 1058409, at *2 (S.D.N.Y. Mar. 12, 2012) (appointing Outten & Golden LLP and Shavitz Law Group, P.A. as Class Counsel based on their experience in "numerous wage and hour class and collective actions"); *Tiro v. Pub. House Investments, LLC*, 288 F.R.D. 272, 280 (S.D.N.Y. 2012) (appointing Fitapelli & Schaffer, LLP as class counsel because "counsel is qualified to represent the classes").

38. The work that Class Counsel has performed in litigating and settling this case demonstrates their commitment to the class and to representing the class's interests. Class Counsel have committed substantial resources to prosecuting this case.

39. The Court hereby grants Plaintiffs' Motion for Attorneys' Fees and awards Class Counsel $4,953,125, which is 31.7% of the settlement fund.

40. The trend in this Circuit is to use the percentage of the fund method to

compensate attorneys in common fund cases like this one. *McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *Sewell*, 2012 WL 1320124, at *10; *Beckman*, 2013 WL 1803736, at *8.

41. Although the Court has discretion to award attorneys' fees based on the lodestar method or the percentage-of-recovery method, *McDaniel*, 595 F.3d at 417, in wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award, *Beckman*, 2013 WL 1803736, at *8; *McMahon*, 2010 WL 2399328, at *7. Fee awards in wage and hour cases are meant to "encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." *Sand v. Greenberg*, No. 08 Civ. 7840, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010). The FLSA and state wage and hour statutes are remedial statutes, the purposes of which are served by adequately compensating attorneys who protect wage and hour rights. *McMahon*, 2010 WL 2399328, at *7; *Sand*, 2010 WL 69359, at *3.

42. Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys general," attorneys who fill the private attorney general role must be adequately compensated for their efforts. *McMahon*, 2010 WL 2399328, at *7; *Sand*, 2010 WL 69359, at *3. If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk. *Willix v. Healthfirst Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *6 (E.D.N.Y. Feb. 18, 2011); *Sand*, 2010 WL 69359, at *3 ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected.").

41. Class Counsel's request for 31.7% of the Fund is reasonable and "consistent with the norms of class litigation in this circuit." *McMahon*, 2010 WL 2399328, at *7.

42. Although *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany* does not address a common fund fee petition, it supports class counsel's request for one-third of the fund because "'reasonable, paying client[s]' . . . typically pay one-third of their recoveries under private retainer agreements." *McMahon*, 2010 WL 2399328, at *8 (internal citation and quotations omitted).

43. In addition, in Plaintiffs' retainer agreements with Class Counsel, Plaintiffs agreed that Class Counsel could apply to the Court for up to 33% of a class-wide recovery and that they would pay Class Counsel 33% of any individual recovery. Decl. of Justin M. Swartz in Supp. of Pls.' Mot. for Approval of Attys' Fees and Reimbursement of Expenses and Pls.' Mot. for Approval of Service Awards ("Swartz Fees & Service Awards Decl.") ¶ 11. This also provides support for Class Counsel's request for 31.7% of the fund.

44. No Class Member objected to Class Counsel's request for one-third of the fund, which also provides support for Class Counsel's fee request of 31.7%.

45. All of the factors in *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 48-49 (2d Cir. 2000) weigh in favor of the requested fee award.

46. Applying the lodestar method as a "cross check," *see id.* at 50, the Court finds that the fee that Class Counsel seeks is reasonable. "Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers." *Beckman*, 2013 WL 1803736, at *13; *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052-54 (9th Cir. 2002) (listing nationwide class action settlements where multiplier ranged up to 8.5 times); *Sewell*, 2012 WL 1320124, at *13 ("Courts commonly award lodestar multipliers between two and six."); *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002) (a "multiplier of 2.09 is at the lower end of the range of multipliers

awarded by courts within the Second Circuit"); s*ee, e.g., Steiner v. Am. B'casting Co., Inc.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) (multiplier of 6.85 "falls well within the range of multipliers that courts have allowed); *Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, No. 11 Civ. 520, 2012 WL 651640, at *4 (S.D.N.Y. Feb. 24, 2012) (granting attorneys' fees equal to 6.8 times lodestar); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 184-86 (W.D.N.Y. 2011) (awarding multiplier of 5.3 in wage and hour class action); *Buccellato v. AT&T Operations, Inc.*, No. 10 Civ. 463, 2011 WL 3348055, at *2 (N.D. Cal. Jun. 30, 2011) (awarding multiplier of 4.3 in wage and hour class action); *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, No. 05 Civ. 11148, 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009) (awarding multiplier of 8.3); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 803 (S.D. Tex. 2008) (awarding multipler of 5.2); *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007) (awarding multiplier of six times); *In re Rite Aid Sec. Litig.*, 362 F. Supp. 2d 587 (E.D. Pa. 2005) (awarding multiplier of seven times); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) ("modest multiplier" of 4.65 in wage and hour class action was "fair and reasonable"); *In re RJR Nabisco, Inc. Sec. Litig.*, No. 88 Civ. 7905, 1992 WL 210138, at *5 (S.D.N.Y. Aug. 24, 1992) (awarding multiplier of 6); *Cosgrove v. Sullivan*, 759 F. Supp. 166, 167 n. 1 (S.D.N.Y. 1991) (awarding multiplier of 8.74).

47. Here, the lodestar sought by Class Counsel, approximately 7.6 times, falls within the range granted by courts and equals the 31.7% being sought. While this multiplier is near the higher end of the range of multipliers that courts have allowed, this should not result in penalizing plaintiffs' counsel for achieving an early settlement, particular where, as here, the settlement amount is substantial. *See Wal-Mart Stores*, 396 F.3d at 121 ("[T]he lodestar create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their

17

hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits."); *Vizcaino*, 290 F.3d at 1050 n. 5 (noting that "the lodestar method does not reward early settlement" and that "class counsel should [not] necessarily receive a lesser fee for settling a case quickly"); *Savoie v. Merchants Bank*, 166 F.3d 456, 461 (2d Cir. 1999) ("[T]he percentage-of-the-fund method also removes disincentives to prompt settlement, because plaintiffs' counsel, whose fee does not increase with delay, have no reason to drag their feet.").

48. The lodestar multiplier Class Counsel seeks is also reasonable because it will diminish over time. *Parker v. Jekyll & Hyde Entm't Holdings, LLC*, No. 08 Civ. 7670, 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010) ("[A]s class counsel is likely to expend significant effort in the future implementing the complex procedure agreed upon for collecting and distributing the settlement funds, the multiplier will diminish over time"). "[W]here 'class counsel will be required to spend significant additional time on this litigation in connection with implementing and monitoring the settlement, the multiplier will actually be significantly lower' because the award includes not only time spent prior to the award, but after in enforcing the settlement." *Sewell*, 2012 WL 1320124, at *13 (quoting *Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207, 2010 WL 3119374, at *6 (S.D.N.Y. Aug. 6, 2010)). In wage and hour cases, Class Counsel is often called upon to perform work after the final approval hearing, including answering class member questions, answering questions from the claims administrator, and negotiating and sometimes litigating disagreements with defendants about administering the settlement and distributing the fund. *See* Swartz Fees & Service Awards Decl. ¶ 12. "The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward, also supports their fee request." *See McMahon*, 2010 WL 2399328, at *8.

49. The Court also awards Class Counsel reimbursement of their litigation expenses in the amount of $33,155.56. Courts typically allow counsel to recover their reasonable out-of-pocket expenses. *See In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003). Here, Class Counsel's unreimbursed expenses, including court and process server fees, postage and courier fees, transportation, working meals, photocopies, electronic research, expert fees, and Plaintiffs' share of the mediator's fees, are reasonable and were incidental and necessary to the representation of the class.

50. The attorneys' fees and the amount in reimbursement of litigation costs and expenses shall be paid from the settlement fund.

51. The Court finds reasonable service awards of $10,000 each to named Plaintiffs Sharon Yuzary, Jon Racow, Henry Hu, Mina Dimetry, Teron Haughton, Daniel Hauer, Billy Tzewa Mui, Calvin Mazlumyan, and Kim LeBleu. These amounts shall be paid from the settlement fund.

52. Service awards are common in class action cases and serve to "compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff[s]." *McMahon*, 2011 4599822, at *9. Service awards fulfill the important purpose of compensating plaintiffs for the time they spend and the risks they take. *Massiah v. MetroPlus Health Plan, Inc.*, No. 11 Civ. 5669, 2012 WL 5874655, at *8 (E.D.N.Y. Nov. 20, 2012).

53. The "Effective Date" of the settlement shall be 5 days after the date of this Order if no party appeals this Order. If a party appeals this Order, the "Effective Date" of the settlement shall be the day after all appeals are finally resolved. This Order shall constitute a judgment for purposes of Rule 58 of the Federal Rules of Civil Procedure.

54. Within 3 days of time to appeal this Order has expired, the claims administrator shall distribute the funds in the settlement account by making the following payments in the order below:

    A. Paying Class Counsel 31.7% of the fund ($4,953,125);

    B. Reimbursing Class Counsel for $33,155.56 in litigation costs and expenses;

    C. Paying service awards of $10,000 each to named Plaintiffs Sharon Yuzary, Jon Racow, Henry Hu, Mina Dimetry, Teron Haughton, Daniel Hauer, Billy Tzewa Mui, Calvin Mazlumyan, and Kim LeBleu;

    D. Paying the remainder of the fund to class members in accordance with the allocation plan described in the Settlement Agreement.

55. The Court retains jurisdiction over this action for the purpose of enforcing the Settlement Agreement and overseeing the distribution of settlement funds. The parties shall abide by all terms of the Settlement Agreement, which are incorporated herein, and this Order.

56. Upon the Effective Date, this litigation shall be dismissed with prejudice, and all Rule 23 Class Members who have not excluded themselves from the settlement and all FLSA Class Members who have opted in to the lawsuit shall be permanently enjoined from pursuing and/or seeking to reopen claims that have been released pursuant to the settlement.

*[Handwritten: Plaintiffs' pending motions (Dkt. Nos. 73, 79, and 81) are granted. The Clerk of Court is respectfully requested to terminate these motions and to close this case.]*

It is so ORDERED this 2nd day of October, 2013.

                                                *Paul Gardephe*
                                        Honorable Paul G. Gardephe
                                        United States District Judge